IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FILED/REC'D

2023 MAR 20 P 2: 34

Victoria Schiller,                          )
                                            )
                    Plaintiff,              )
                                            )
    vs.                                     )
                                            )
                                            )
The State of Wisconsin,                     )   Case No. _____ **23  CV  177  JDP**
                                            )
        and                                 )
                                            )
The various State of Wisconsin              )
agents, employees, and officers             )
named herein: Sheila Reiff, Carlos          )
Esqueda, Jamie Hustad, Eileen               )
Kilbane, District Secretary, Benjamin       )
Manthei, Jamie Donnelly, Jo Welsh,          )
and Theresa Groves, Rose Vine,              )
Barbara Bushey,                             )
                                            )
        and                                 )
                                            )
Anthony Menting,                            )
                                            )
        and                                 )
                                            )
Lisa Friedrich,                             )
                                            )
        and                                 )
                                            )
Shane Falk,                                 )
                                            )
        and                                 )
                                            )
Shelly Anday,                               )
                                            )
        and                                 )
                                            )
Theodore Gurman,                            )
                                            )
                                            )
                                            )
                    Defendants.             )
                                            )
                                            )
                                            )
                                            )
                                            )

## **COMPLAINT**

COMES NOW the Plaintiff, Victoria Schiller, and her claims and causes of action against the defendants: State of Wisconsin, various officials and employees of the State of Wisconsin, Lisa Friedrich, Shane Falk, Shelly Anday, Anthony Menting, and Theodore Gurman states and alleges as follows:

Preliminary Statement

Introduction

1. This is an action to redress acts and events surrounding the procurement of the Wisconsin court of appeals opinion rendered March 25, 2019 under 42 U.S.C. § 1983, and as may arise within causes of actions under 42 U.S.C. § 1985 and 42 U.S.C. § 1986.

2. Intrinsically intertwined with this claim is a general challenge to the constitutionality of Wis. Stat. § 809.82(e) "Notwithstanding par. (a), the time for filing a motion for reconsideration under s. 809.24 may not be enlarged." based on its application by a State final policymaker. The supreme appeals court clerk adopted the policy of calculation of time from written date of rendering, without consideration necessary aspects of issuance of notice multiple times.

3. During the course of litigation of Dane Cty. circuit court case 2015FA788., and Wis. court of appeals case 2019AP2419, plaintiff was deprived of property and the right to custody and society of her one minor child and suffered injuries as the result of violations of the U.S. Const. 14th amendment: substantive and/or procedural Due Process rights, violation of the Equal-

2

Protection clause, conspiracy to violate civil rights, misuse of the inherent power of the courts, violations of 18 U.S. Code § 1018, violations of Wis. Const. art. 1. §§ 5 and 9, and violations of Wisconsin Statutes herein.

4. The violations of due process in child related matters occurred as part of a conspiracy to violate civil rights, the conspiracy gives rise to additional causes of action of action under 42 U.S.C. § 1985 and 42 U.S.C. § 1986, as well as separate cause of action under: Wis. Stat. § 893.53 Action For Injury To Character or Other Rights., Wis. Stat. § 893.54 action injury to the person., and Wis. Stat. § 893.57 Intentional Torts: Invasion of Privacy, Tortious Interference, Tort of Bad Faith, and Wis. Stat. §947.013(1m)(b) Harassment and Wis. Stat. § 946.12 Misconduct in Public Office.  Wis. Stat. § 946.12 Misconduct in Public Office, has extended onto private parties under the color of law in *State v. Tronca*, 84 Wis. 2d 68, 267 N.W.2d 216 (1978), the extension of the law similarly applies to the private parties in this case.

5. This case had standing according to the standard of the case *Lowe v. E. Letsinger,* 772 F.2d.at 312 (finding the clerk[s] to be liable for their failures to perform a non-discretionary administrative act.) "[A] deprivation resulting from a mistake in established state procedures is not "random and unauthorized." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S. Ct. 1148 (1982).  The government employee non-discretionary ministrative tasks of improper notice, filing, and transmittal offends due process, and are separately prohibited by as criminal statutes as a class I felony according to Wis. Stat. § 946.12, misconduct in public office and/or a class H felony according to and/or Wis. Stat. § 946.72, tampering with public records and notices.  The case of, *Anderson v. Creighton* held "clearly established contours of the law are not enough to have

a qualified immunity defense granted because the court must consider the information the [defendant] possessed at the time. […] the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that clause (no matter how unclear it may be that a particular action is a violation) violates a clearly established right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)., therefore the contours of Wis. Stat. § 809.82(e), does not eliminate the need for consideration of the particular circumstances of filing and notice. On many occasions State of Wisconsin employees negligently and/or intentionally damaged records and failed to perform non-discretionary ministerial tasks.

6. Wisconsin utilized the contours of Wis. Stat. § 809.82(e), unconstitutionally in its application based upon the date written on the Opinion/Decision in Wis. Ct. App. case 2019AP2419. A decision/opinion is a filing to which parties have the right to respond. The procedures are clearly established in Wis. Stat. § 801.14:

> "Service and filing of pleadings and other papers. (1) Every order required by its terms to be served, every pleading unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, undertaking, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in s. 801.11." (Wis. Stat. § 801.14)

Wis. Stat. § 801.15(5), says the tolling of time must be based on service of notice. "The date stamped on the judgment did not control as to the date of actual filing." *Matter of Estate of Ristau*, 144 Wis. 2d 421, 424 N.W.2d 203 (1988). Wis. Stat. § 809.801(6) establishes within the context of the eFile system proper service and filing of a judgment includes entry of the judgement into the eFile system, and Wis. Stat. § 809.801(4)(a) says issuance of notice to the

eFile user's email address records the entry and completes the filing.    Strict compliance with the procedures for providing notice of entry of judgment and tolling time for response is required and to meet the uniformity requirements of the court of appeals.  The policy of the clerk using the contours of Wis. Stat. § 809.82(e) to deny Schiller her right to respond was a violation of the due process clause because it was an arbitrary denial of a remedy for wrongs.  . The unconstitutionality is similar to the findings of *Estate of Makos v. Masons Health Care Fund*, 211 Wis. 2d 41  43-45  (Wis. 1997)   and *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 225 N.W.2d 454 (1975).  In *Kallas* the court found "the statute deprives a plaintiff of a remedy for a wrong that is recognized by the laws of the state," it was "therefore also unconstitutional under art. I, sec. 9, of the Wisconsin Constitution." *Id.* at 384.  Wis. Stat. § 809.82(e) as applied to the instance of the failure to provide notice denies litigants a right to remedy court error similar to the findings to the challenges of statutes in *Kallas* and *Makos*.

7. Plaintiff may receive relief according to *Monell's* holding, "A private party may obtain relief against a municipality under 1983 when the allegedly unconstitutional municipal action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or when the alleged constitutional violation results from municipal "custom." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). The necessity of the court's consideration of remedy for this claim may be compared to the reasoning in the case of *St. Louis v. Praprotnik*, 485 U.S. 112, 171-74 (1988):

> "Every act of a high official constitutes a kind of "statement" about how similar decisions will be carried out; the assumption is that the same decision would have been made, and would again be made, across a class of cases. Lower officials do not control others in the

same way. Since their actions do not dictate the responses of various subordinates, those actions lack the potential of controlling governmental decision making[.]" It is important to "hold a municipality liable for the decisions of its high officials in large part because those decisions, by definition, could be applied across a class of cases."

*St. Louis v. Praprotnik*, 485 U.S. 112, 171-74 (1988).

8. This Court has permitted a municipality to be held liable for the unconstitutional actions of its agents when those agents enforced a rule of general applicability in *Monell v. Department of Social Services*, 436 U.S. 658, 690, 91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)); agents were of sufficiently high stature and acted through a formal process (*Owen v. City of Independence*, 445 U.S. 622, 623 (1980)); or were authorized to establish policy in the particular area of city government in which the tort was committed (*Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986)). According to precedents in *Monell*, *Owen*, and *Pembaur*, the State of Wisconsin should be held liable.

9. Plaintiff seeks redress from Wisconsin under the equal protection clause as a class of one, as in in *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995). Esmail suggests the animosity in that case was the result of a vindictive campaign by the mayor. Schiller's battles were created by the vindictiveness of her ex-husband, previously nicknamed in college the unofficial mayor of Madison. Schiller's ex-husband, Gurman, had an interest in destroying Schiller's reputation to protect himself with the creation of a plausible deniability defense for both the criminal allegations levied against him and those misdeeds which might levied if exposed. The risk of exposure was muted by blocking sympathy from insiders at the corporation with an attack on Schiller's character. Hand in hand with the corporation Gurman and conspirators persisted in

the dissemination of rumor and illusion using various public relations efforts and court filings in order to damage Schiller's reputation.

10. For claims which may arise herein, Plaintiff seeks redress for the actions of the private party defendants according to *Adickes v S.H. Kress and Co.*, 398 U.S. 144 (1970), (holding: "The involvement of [state employees], whether or not his actions were lawful or authorized in the alleged conspiracy would plainly provide the state action needed to show a direct violation of petitioners' 14th amendment rights entitling her to relief under 42 U.S.C. § 1983, and private persons involved in such a conspiracy are acting "under color" of law and can be liable under § 1983. Pp. 150-152."), and *United States v. Price,* 383 U.S. 787, 794 (1966). According to the case of *Dennis v. Sparks* a "Historically at common law, judicial immunity does not insulate from damages liability those private persons who corruptly conspire with a judge. Nor has the doctrine of judicial immunity been considered historically as excusing a judge from responding as a witness when his co-conspirators are sued, even though a charge of conspiracy and judicial corruption will be aired and decided." *Dennis v. Sparks*, 449 U.S. 24 (1980) at 25 (citing *Gravel v. United States*, 408 U.S. 606 (1972)).

11. Plaintiff alleges that the defendant Anday, Falk, and Friedrich knew of the child abuse but failed to report it, and alleges the failure is a violation of due process and/or equal protection of the Constitution. In a proceeding on custody and placement, abuse of the child is a required factor for the court's consideration. The duty to report child abuse is a non-discretionary ministrative task. Although the determination that a child is being abused involves

discretionary acts, once that determination is made, a duty bound individual such as a guardian ad litem must act.

12. Generally, plaintiff; seeks equitable, injunctive, declaratory relief, as well as, liabilities of actual, compensatory, and punitive damages according to the standards in *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 [1983], (Holding that a showing of maliciousness is not required for "recovery of punitive damages). "A jury may be permitted to assess punitive damages in a 42 U.S.C. § 1983 action when a defendants conduct involves reckless or a callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent." *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 [1983]., according their availability for a 42 U.S.C. § 1983 claim, and for claims within according to 42 U.S.C. § 1985 and 42 U.S.C. § 1986 and as may arise 42 U.S.C. § 1988, according federal supremacy not limited by the common laws which prescribe terms for the redress and context of the claims.

Declaratory, and/or Injunctive Relief

13. For a ruling on damages and for the district court to enforce and decide the contractual

obligation. The Wisconsin court of appeals decision from January 24, 2023, found the March

25, 2019 opinion to be a fraudulent and void judgement. The finding occurred upon the appeals

court's assumption of jurisdiction and grant of the motion to extend time based upon the specific

offer of the certiorari "an appellate court's jurisdiction over a cause ceases [s] upon remittitur

in absence of inadvertence, fraud or void judgment" *State ex Rel. Fuentes v. Court of Appeals,*

225 Wis. 2d 446, 452-53, 593 N.w.2d 48 (1999). "The inadvertence exception applies to the

act of remitting the record itself, which must be inadvertently done." *State ex rel. Fuentes v.*

*Court of Appeals,* 225 Wis. 2d 446, 593 N.W.2d 48 (1999), 98-1534. The remittitur was

intentional according to the many prior responses of the court of appeals in 2021.

Extension of time was a discretionary decision of the court of appeals formed by applying

set of facts to the standards of law as they pertained to a motion for time under Wis. Stat. §

809.82(2)(a). The facts were considered to establish a decision on good cause for a time

extension, and the conclusion was that good cause exists. In *State v. Quackenbush*, 692 NW 2d

340 (2004) at 618, the court explains, "The appellate rules in WIS. STAT. ch. 809 provide this

court with the authority to enlarge most times prescribed by those rules, including all times

provided in WIS. STAT. RULE 809.30. The enlargement rule, WIS. STAT. RULE

809.82(2)(a), provides in relevant part that, except as provided elsewhere, "the court upon its

own motion or upon good cause shown by motion, may enlarge or reduce the time prescribed

by these rules or court order for doing any act, or waive or permit an act to be done after the

expiration of the prescribed time." The court of appeals adopted as a general principle, in *State*

*v. Quackenbush*, 692 NW 2d 340, "the judges of this court generally consider a number of factors in deciding whether to grant an extension. The longer the extension that is sought, the greater the showing that is generally required to satisfy us that there is good cause for granting it." The court extended the 20 day limit and allowed for the request 643 after the date of March 25, 2021.    Schiller showed, among other things, that the opinion was entered contrary to due process rights, and "Judgments entered contrary to due process are void." *Neylan v. Vorwald*, 124 Wis. 2d 85, citing *Wengerd v. Rinehart*, 114 Wis.2d 575, 587, citing *United States v. McDonald*, 86 F.R.D. 204, 208(N.D. Ill. 1980), and *DeCesare-Engler Productions, Inc. v. Mainman Ltd.*, 81 F.R.D. 703,704 (W.D. Pa. 1979).

Schiller's motion suggested the opinion did not belong in the cannon of common law because it was lawless, poorly reasoned, and seems contradictory to existing precedent. Schiller presented use of the procedural mechanism of Wis. Stat. § 809.23(4)(c) to address the question of the authenticity of the poorly reasoned opinion.   Additional matters were presented as questionable circumstances surrounding the formation of the judgement.  Those matters were considered on its merits by Judges Blanchard, Kloppenburg, and Graham, and they were unpersuaded that the opinion should be: withdrawn, reauthored (better reasoned), and recommended for publication.   The certiorari of *Neylan v. Vorwald*, 124 Wis. 2d 85 at 97-98, prevents the court from validating a void judgment, with the court's acceptance of *State Ex Rel Fuentes v. Court of Appeals* only invalidation was possible because "a void judgment cannot be validated by consent, ratification, waiver, or estoppel." *Neylan v. Vorwald*, 124 Wis. 2d 85 at 97-98. The January 24, 2023 decision's probative result is the inauthenticity, fraud or void. When a court does not expressly make a finding necessary to its decision, it may be assumed that the court made that finding." *State v. Long,* 190 Wis 2d 386, 398 (Wis. Ct. App. 1994).

1983 Complaint. Prepared by Plaintiff.

Gurman has had his opportunity to refute the claim of a fraud or void, and neglected to argue against, the fraud or void.  The doctrine of judicial estoppel states that "a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him." 28 AM. Jur.2d, Estoppel and Waiver § 68 (1968 and Supp. 1982).  Estoppel by silence or inaction exists here. The rule is that if a person had means of knowledge of his rights and material facts, yet remained inactive for a considerable time and abstained from impeaching the claims, the claims are now unimpeachable. 28 Am.Jur.2d Estopple and Waiver § 57.  The instances brought to the court of appeals as evidence of a fraud or void judgement were accepted as fraud or void judgment and material support for the good cause necessary to grant the extension of time.  Gurman has acquiesced to the instances and acts as fraud or void judgement through silence; accordingly, all such prior defenses are foreclosed. Gurman made no argument against the motion, and therefore has no argument to make against matters that led to the invalid judgment.

14. In addition to the declaratory relief, this claim seeks the injunctive relief of a ruling to establish a policy of calculating time for reconsideration and review without consideration of date of issuance of notice or address to which the court issued notice violates the U.S. Const. 14th Amend. Due Process Clause.  Wis. Stat. § 809.82(e) as applied by the supreme appeals court clerk, their policy, is unconstitutional.

15. For a ruling on to establish the various ministrative acts of court staff, and as it exists in a pattern, were part of a deliberate and malicious effort to reach a result in favor of one specific party, violates the Due Process Clause and the Equal Protection Clause.  Various acts further

detailed herein include acts such as the circuit court's order restricting Schiller's filing to one page, which inflicted injury upon the court's enforcement of that restriction on June 2, 2020, clearly abridging Schiller's rights to file motions.

16. For a ruling on the invalidity of the past custody and placement decree's from the ordered binding arbitration, that plaintiff was intitled to custody for times relevant to the complaint, if breach of duties occurred, and to what extent plaintiff is owed damages for those.  The matter was heard in ordered binding arbitration in a hearing held without subject matter jurisdiction. The orders leading to the hearing were in violation Wis. Const. art. 1. § 5, and Wis. Const. art. 1. § 9.  The orders modifying the alternative dispute resolution clause were ultra vires and offends due process.  The court must enforce arbitration clauses as written and enforcement must be according to the states statutory provisions of Wis. Ch. 788,  alternative dispute resolution, as entitlements provided to all state of Wisconsin residents.  Enforceability of arbitration clauses relies on parties statement of choice of law, proceedings must comply with Wis. Ch. 822, the state's adaptation of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and the U.S. Constitution requires subject matter jurisdiction for a hearing on any matter.

Actual Monetary Losses

17. A portion of the actual monetary loss resulting from the deprivation of property without due process of law stems from the court's lawless deprivation of corporate documents pertaining to the dates and details of the exchanges of corporate stocks and assets of, Tegria Services

Group-US, Inc.,1 (FKA Bluetree Network, Inc.),2 a former Wisconsin corporation which sold to Lind Holdings in February of 2020.    The actual monetary loss from deprivation of documents is in the amount $5,000,000.00.

In 2019 Gurman claimed a sale occurred.   Wisconsin DFI records of entity B072776 BlueTree Network Inc. show the company filed documents purporting their merger with an entity Project Hashtag.[3] The name Project Hashtag is unregistered as an actual business entity which is indicative of project hashtag being the internal corporate title of the merger or fiction. This title, Project Hashtag, was title of documents of an offer of to purchase sent by Gurman to Schiller in the year 2015.   In 2015 Gurman claimed to have turned down the offer because

---

[1]
DE SOS, 4569264, Tegria Insights Group Holdings, Inc., 01-01-2021.;
DE SOS, 4569051, Tegria Insights Group, Inc., 01-01-2021.;
DE SOS, 5951011, Tegria Products Group, Inc., 05-26-2021.;
DE SOS, 7700185, Tegria RMC Group, Inc., 12-20-2019.;
DE SOS, 5532898, Tegria RCM Group- US, Inc., 03-16-2021.;
DE SOS, 7763110, Tegria Services Group, Inc., 12-20-2019.;
**DE SOS, 4522153, Tegria Services Group -US, Inc., 12-22-2020.;**
DE SOS, 7453426, BlueTree Network Inc., 06-03-2019, (foreign registration state WI).;
DE SOS, 7453426, Tegria Services Group - US, Inc., (name change).;
DE SOS, 7445447, Tegria Holdings LLC., 06-01-2019. (name change to Grady Blocker LLC. effective 11-30-2020).;
DE SOS, 7445443, Lind Holdings LLC., 06-01-2019.

[2]
Wis. Dep't of Fin. Inst., B072776, Bluetree Network, Inc., 06-08-2012. (registered).;
Wis. Dep't Of Fin. Inst., B072776, Bluetree Network, Inc., 07-02-2019. (Project Hashtag, merger - survivor).;
Wis. Dep't Of Fin. Inst., B072776, Bluetree Network, Inc., 06-08-2012. (Providence Services Group – Us, Inc., name change).;
Wis. Dep't Of Fin. Inst., B072776, Providence Services Group – Us, Inc., 10-29-2020. (Tegria, name change).;
Wis. Dep't Of Fin. Inst., B072776, Tegria Services Group – Us, Inc., 12-22-2020. (certificate of conversion from type 01 to unl fgn).;
Wis. Dep't Of Fin. Inst., T088730, Tegria Services Group – Us, Inc., 01-14-2021. (foreign organization date 12-22-2020).

[3] Wisconsin Department of Financial Institutions, B072776 BLUETREE - PROJECT HASHTAG MERGER; Merger Effective July 1, 2019;

it was not enough money.  Gurman's email attachments of the offer's digital files were labeled 'Project Hashtag.'[4]

18. The actual monetary loss from the deprivation of the amount equal to half of the proceeds sale of securities, purported to have occurred in the year of 2019-2021 is unknown without





1983 Complaint. Prepared by Plaintiff.

documents of sale, but Schiller may be owed as much as the totality of the exchanges contained on the U.S. Securities and Exchange Commission site Edgar is $22,620,480,[5] divided by half, equaling $11,310,240, minus the amount already received by Schiller, $624,403.02, which thusly equals $10,685,836.98.

19. The actual monetary loss from the conspiracy to deprive Victoria of her contractual owed property without a sale having occurred would equal the full extent of the structural settlement as amortized in the amount of $1,937,527.21[6] minus $1,145,000.00, equaling $792,527.21.

20. The actual monetary loss from the judicial threat not to bring up fraud results in the loss of an the expedient recovery of prior liquidated stock sales in the amount of $378,861.13.

On July 31, 2019, in ex parte communications, Judge Peter C. Anderson threatened if Schiller were to bring up fraud, he would take excessive fees and legal costs.[7] The judge was preventing Schiller from raising the fact that as of May 23, 2019, Gurman admitted to misrepresenting the sale and claimed to have divvied up the stock sale proceeds with Reggie Luedke, and had sent Schiller an email with this confession.[8] Schiller did not bring up fraud.

Gurman had misrepresented the prior stock sales over which Schiller maintains she has the contractual right to conduct further discovery on the topics according to the contractual clause, VII. Full Disclosure and Reliance:

---

[5] Id.
[6] Cir. Ct. R. 206. Exhibit 31 Amortization Schedule, March 7, 2018.
[7] Circuit Court Record Document July 31, 2019, Transcript at page 17
[8] Gurman, Theodore. " FWD: Regent Tsunami Practice Thursday 5/23" <TGurms@gmail.com., E-mail to Victoria,< vlschiller808@gmail.com >
Date: May 23, 2019s

> "After consulting with their respective attorneys, the parties have elected not to secure any forma valuations of BlueTree Network, Inc. and knowingly waive their respective rights to engage in further discovery beyond information provided on the financial disclosure statements and information regarding prior stock sales."[9]

Gurman's untruthful and incomplete disclosures regarding prior stock sales were topics ripe for discovery, but court refused to allow Victoria to discover evidence on checks or other receipt of payment received for the prior stock sales. Undisclosed to Victoria in the terms of the sales offer from Oct. 15, 2015 and acceptance documents from the January closing, BlueTree Network Inc. had approved prior sales of shares to various buyers in the quantities of 025,532, 191,584, 025,532, 030,000, 029,787, 020,000, shares,[10] total 322,435 shares, equivalent proceeds of $378,861.13.

In 2014 Gurman claimed to have received $50,000 dollars from his mother to purchase his separate residence. The amount left in the hidden or shelled property would be $338,861.13. In 2015, Gurman had claimed he was only able to sell 205,212 shares, approximately $241,124.00 of the specific offer of his October 2015 specific offer of securities sales offered up to 640,000, $752,000.00.[11] These securities were exempt, therefore the sales and all concurrent sales would have needed to be treated as all one sale. The offer and acceptance documents describe the sale as specific to Gurman, and describe the total sold as 234,999. Gurman claimed to Schiller that one investor dropped out, so he could only sell 205,212.[12] The balance of ownership described within showed no changes to the founder's balances, which would reflect earlier sales, a hitchhike, or divvying up of the sale.

---

[9] Cir. Ct. R.  134 at 9. Partial Marital Settlement Agreement Regarding Custody and Placement, June 12, 2017.
[10] Pre-Sale Ownership Chart, Post-Sale Ownership Chart
[11] Sale of Securities Specific Offer
[12] Sale of Securities Sale Summary

1983 Complaint. Prepared by Plaintiff.

Evidence points to entities Breathe for Change, Inc., WI DFI #B081970 and B4C, LLC., WI DFI # B091300 involvement in this fraud.   The registered founders are Michael Fenchel and Llana Nankin, close friends of Gurman's.  In May of 2017 Breathe for Change, Inc. filed a 2016's 1952 checklist, as a charitable organization.  Form 1952 shows a deposit purported to be a contribution of $151,430 dollars.  Without a doubt some of that money was paid to Gurman as a paycheck.

In the fall of 2016 Gurman claimed he was forced to reduce his role in BlueTree Network as President of BlueTree Network in May, prior to forming the contract on property, this announcement occurred with the claim that Gurman had resigned his job entirely in August of 2016.  In the fall of 2016 up to the point of the divorce in 2017 Gurman claimed to be working for Breathe for Change Inc..  Gurman's "financial disclosure from April 13, 2017 lists his monthly income as $2,018.00; a significant reduction from his previously disclosed earnings of $28,975.00."[13]   The difference between Gurman's 2016 salary before the change in employment and Gurman's former rate of earned income is approximately equal to the donation of $151,430 dollars.  BlueTree Network's public relations efforts applauded the company for charitable giving, but in this case it is likely that that charitable donation was made with the intent to defraud.  The 2019 tax warrants are indicative of the possibility that mistakes in the companies designations of expenses on their form 1959 were discovered.  The tax warrant shows Llana Nankin and Breathe for Change Inc. had a past due tax bill of $4,800 with interest and penalty's equaling $7,075.01, judgment satisfied June, 12, 2020.

Breathe for Change Inc. (FKA B4C LLC.) WI DFI # B091300., articles of incorporation. were drafted by Kent Schlienger, an attorney at Neider and Boucher S.C., the same attorney the

---

[13] Cir. Ct. R. 192 at 7

formed BlueTree Network, Inc.  BlueTree Network's 2016 audit from Baker Tilly claims a 1%

ownership in the company of Breathe for Change.  Breathe for Change establishes classes of

stock as common stock, series seed stock, and filament games preferred stock.  The series seed

stock original issue price is defined as $2.67824 per share, and 126,014 shares are designated

as seed stock, which equals $337,495.74.  The terms in the certificate of incorporation of the

stock restrictions reserve the amount of $337,495.74, without risk and payable to the

stockholders out of the assets of the corporation upon any voluntary or involuntary liquidation

event, in other words functions as a shell holding precisely the amount of money missing from

the prior sales as seed stock.[14]  Schiller's property according to page four of the Partial Marital

Settlement Agreement Regarding Custody and Placement:

> "4. Cash from Sale of Stock. Shares of BlueTree Network, Inc. were sold. We have
> each taken an advance property distribution for the sale proceeds and the remaining
> proceeds are being held in trust with our business attorney. We agree that $54,000 of
> the funds held by the business attorney shall be paid to the US Treasury and Wisconsin
> Department of Revenue no later than May 28, 2016 as an estimated tax for 2016. **The
> remaining stock proceeds after payment of the estimated taxes shall be
> distributed to VICTORIA.**"[15]

Schiller had requested these terms be added to the agreement as a show of good will.  Gurman

agreed, and since Gurman was dishonest these hidden proceeds, and all other hidden proceeds

are Schiller's.  The stipulation Gurman had requested Schiller sign purporting the amount of

the sale was based on his untruthful representations, and the stipulation was waived on page

nine of the Partial Marital Settlement Agreement Regarding Custody and Placement:

> "VI. ENTIRE AGREEMENT This agreement represents our entire agreement regarding
> the agreement's subject matter. All of our agreements, covenants, and representations,
> express or implied. regarding the subject matter of this agreement are contained in this
> agreement. No other agreements, covenants or representations, express or implied, oral or
> written, have been made by either of us to the other regarding the subject matter of this
> agreement. All prior and contemporaneous conversations, negotiations, possible and

---

[14] Delaware S.O.S. Articles of Incorporation, 08-01-2018.
[15] Cir. Ct. R.  134 at 4. Partial Marital Settlement Agreement Regarding Custody and Placement, June 12, 2017.

alleged agreements and representations and covenants regarding this Agreement's subject matter are waived, merged in, and superseded by this agreement."[16]

21. Actual monetary loss from the conspiracy includes the above and includes the mandated fees caused and generated by the guardian ad litem's failure to perform the non-discretionary ministerial duty to report child abuse, as failure to report resulted in Gurman's pursuit of his claim, and the assessment of mandated court costs and fees to the Schiller in the amount of $149,999.02, as contained in GAL Falk Ltr. to Judge Anderson Re Proposed Order to Disburse Funds from Atty Trust;[17] plus the sum of $2,028.92 from Notice and Entry of Final Order;[18] plus the sum of $10,850.78 from Order on Fee Request,[19] is $162,878.72. The proximate cause for these fees was the conspiracy to violate civil rights, which occurred with the intent to deny Schiller the contractual promise of documents of sale and cover up Gurman's abuse of the child.

22. The actual monetary loss from the lawlessly imposed supervision for visitation occurred at the rate of 80 dollars a hour, 50% paid by Schiller for one visit a week, for three years, is $12,480.

Nominal, Punitive, and/or Compensatory Damages

23. In addition to the aforementioned actual monetary losses, Schiller seeks punitive and compensatory damages for her and her child's losses. The conspirators intentionally inflicted emotional distress in their tactical misuse of the legal process. The defendants caused illnesses, stalked, harassed, caused to be poisoned, and destroyed reputation achieve their plots. Schiller

---

[16] Cir. Ct. R. 134 at 9. Partial Marital Settlement Agreement Regarding Custody and Placement, June 12, 2017.
[17] Cir. Ct. R. 545. GAL Falk Ltr. to Judge Anderson Re Proposed Order to Disburse Funds from Atty Trust, June 9, 2020.
[18] Cir. Ct. R. 644. Notice and Entry of Final Order, Oct. 14, 2020.
[19] Cir. Ct. R. 635. Order on Fee Request, Sept. 3, 2020.

lost the enjoyment of her family and all the future enjoyment that extends from bond between

mother and child. The child was made ill, the child was frightened, the child wanted to come

home, the employees of the state of Wisconsin in conspiracy with private parties took from the

child, years of a nurturing, caring, supportive, relationship with his mother, so certain

defendants could make money. The sociological, psychological, educational impact of such a

loss during developmental years is proven statistically to impact the child. These violative

actions have a generational impact and societal impact. They defendants inflicted a civil rights

conspiracy which creates bitterness, distrust, and resentment, affecting the emotional bonds the

child forms throughout his lifetime. Schiller seeks in punitive damages from the defendants in

the amount of $5,000,000.00.

24. Schiller seeks the award of double the amount of actual damages as punitive and compensatory

damages.

25. Schiller seeks the dignitary remedy of nominal damages to redress the past injuries of the

clerk's policy. A number of lower federal courts have approved the award of nominal damages

under § 1983 where deprivations of constitutional rights are not shown to have caused actual

injury. E.g., *Thompson v. Burke*, 556 F.2d 231, 240 (CA3 1977); *United States ex rel. Tyrrell*

*v. Speaker*, 535 F.2d, at 829-830; *Magnett v. Pelletier*, 488 F.2d 33, 35 (CA1 1973); *Basista v.*

*Weir*, 340 F.2d, at 87; *Bell v. Gayle*, 384 F. Supp. 1022, 1026-1027 (ND Tex. 1974); *United*

*States ex rel. Myers v. Sielaff*, 381 F. Supp. 840, 844 (ED Pa. 1974); *Berry v. Macon County*

*Bd. of Ed.*, 380 F. Supp. 1244, 1248 (MD Ala. 1971).

Legal Fees

26. Generally, Schiller seeks as redress for her injuries, the monetary compensation for the cost of

the undertaking, according to the standards established in *Wilson v. Garcia, 471 U.S. 261, 105*

*S. Ct. 1938, 85 L. Ed. 2d 254 [1985],* to include reasonable attorney's fees under the Civil

Rights Attorney's Fees Awards Act of 1976, which, as codified in 42 U.S.C. § 1988, provides,

"[i]n any action or proceeding to enforce a provision of [certain specified civil rights statutes],

the court, in its discretion, may allow the prevailing party... a reasonable attorney's fee as part

of the costs." 42 U.S.C. § 1988 (b) (2012). The most important of the statutes specified in 42

U.S.C.§ 1988 is 42 U.S.C. § 1983, which authorizes suit against every person who violates

constitutional rights under the color of state law. *Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct.

1938, 85 L. Ed. 2d 254 [1985]. Schiller requests fees be assessed according to the proposition,

"plaintiff's victory on a procedural due process claim warranted a substantial fee based on the

determination that the municipality violated plaintiffs constitutional rights represented a

significant legal conclusion serving an important public purpose." *City of Riverside v. Rivera,*

*477 U.S. 561 (1986).*   Relying on this proposition, several circuit courts have held that a

substantial fee may be awarded even when the plaintiff obtains only nominal damages.[20]

---

[20] *See, e.g., Zinna v. Congrove*, 680 F.3d 1236, 1237 (10th Cir. 2012) (rejecting the broad low award, low fee principle in a case in which a plaintiff received $1,791 in compensatory damages); *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1058 (9th Cir. 2010) (awarding more than $136,000 in attorney 's fees and costs to a plaintiff who received nominal damages following a fatal shooting). *Diaz Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 125 (1st Cir. 2004) (holding, that the plaintiff's victory on a procedural due process claim warranted a substantial fee based on the determination that the municipality violated plaintiffs constitutional rights represented a significant legal conclusion serving an important public purpose); *Murray v. City of Onawa*, 323 F.3d 616, 617 (8th Cir. 2003) (awarding attorney's fees to a plaintiff who recovered nominal damages from a city that failed to protect her from sexual harassment); *O'Connor v. Huard*, 117 F.3d 12,17 (1st Cir. 1997) (awarding attorney's fees to a pretrial detainee who recovered nominal damages from the defendant who denied her medical care). *Cf. Barber v. T. D. Williamson, Inc.*, 254 F.3d 1223, 1225 (10th Cir .2001) (remanding to the district court to consider awarding attorney's fees to a Title VII plaintiff who proved he was a victim of a hostile work environment but was awarded only nominal damages).

"[W]here the district court properly has weighed [the three] factors, the resulting award [of attorney's fees] is not an abuse of its discretion." *Cummings*, 402 F.3d at 947." *Mahach-Watkins v. Depee,* 593 F.3d 1054, 1060, 1061 (9th Cir. 2010.  Having devoted time, materials, energy and having faced influential opponents in this struggle, having suffered needlessly to undo injustice, compensation according to this proposition is just, and is an important deterrent against similar offenses, a fee award is an important incentive for the David's who would take on such a Goliath, to preserve and protect the rights of others.

Parties

27. That at all times material here in, Schiller was a resident and citizen of Madison, WI.

28. That at current the Attorney General of the State of Wisconsin is Josh Kaul, 17 W Main Street, Madison, WI 53705. Department of Justice, Attn. Service of Action. PO Box 7857 Madison WI 53705-7857, Attn. Service of Copy of Action, Wis. Stat. § 893.825 PO Box 7857 Madison WI 53705-7857

29. That at times material here in, appeals/supreme court clerk Sheila Reiff, Jamie Hustad, and Benjamin Manthei, were employed by the State of Wisconsin at office of the supreme appeals court clerk's at 110 E. Main Street, Madison, WI 53701-1688, Ph: (608) 266-1880, Fax: (608) 267-0640, Clerk@wicourts.gov.

30. That at times material here in, district 4 appeals court staff, Roberta Bushey, Rose Vine,  and District 4 Secretary, were employed by the State of Wisconsin.

31. That at times material here in, Carlo Esqueda, Eileen Kilbane, Jo Walsh, Jamie Donnelly, and Theresa Groves were employed by the State of Wisconsin, at Dane County Circuit Court, 215 Hamilton St., Madison WI 53703, Ph.: (608) 266-4311, Fax: (608) 267-8859.

32. That at times material here in, defendant Anthony Menting was employee of Wisconsin based Stafford and Rosenbaum LLP., 222 West Washington Avenue, Suite 900, P.O. Box 1784, Madison, WI, 53701-1784. Phone 608-256-0226.

33. That at times material here in, defendant Theodore Gurman, was resident and citizen of Wisconsin and resides at 4730 LaFayette Drive, Madison, WI, 53705-4865, Ph.: 608-347-5794.

34. That at times material here in, defendant Lisa Friedrich of Wisconsin based Musial and Friedrich S.C., 211 South Patterson Street, Suite 320, Madison, WI 53703, Ph.: 608-807-1044, Fax: 608-258-4667, was appointed as guardian ad litem for the child by Wisconsin to conduct legal work in Dane county. circuit court case no. 2015FA788.

35. That at times material here in, defendant Shane Falk was employee of Wisconsin based The Law Office of Shane W. Falk, 2960 Triverton Pike Dr., Suite 203, Madison, WI  53711, ph: 608-285-5810, ext. 302, fx:  608-230-5872, cell:  608-609-0006, and of Boushea, Segall & Kliminski at Law, 2945 Triverton Pike Dr., Suite 101, Madison, WI 53711, ph.: 608-221-0079,

fax: 608-221-7335, was appointed as guardian ad litem for Schiller, by Wisconsin to conduct

legal work in Dane County. circuit court case no. 2015FA788, and Wis. court of appeals case

no. 2019AP2419.

36. That at times material here in, defendant Shelly Anday was employee of the State of Wisconsin

Dane County circuit court Family Court Services, and/or employee and owner of Wisconsin

based Family Court Consulting Services, LLC., 6702 Stonefield Rd, Ste 100, Middleton, WI

53562-3875, Ph.: 715-820-0793, and conducted work at order of the court for the binding

arbitration process of Dane Cty. circuit court case 2015FA788.

Jurisdiction and Venue

37. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

38. This action does not seek for the district to decide matters custody or any other adjustment of

family status. This is expressly not a case in which the parties seek declaration of present or

future rights as to custody and placement as in the case of *Wasserman v. Wasserman* 671F.2d

832 (4th Cir. 1982) which maintained the federal jurisdiction , the issue here is for a ruling on

the validity of the past custody and placement decree's alternative dispute resolution clause, if

plaintiff was intitled to custody for times relevant to the complaint, if breach of duties occurred,

and to what extent plaintiff is owed damages for those, as observed in *Cole v. Cole*, 633 F.2d

1983, 1087-89 (4th Circ. 1980) (holding, "A district court may not simply avoid all diversity

cases by having intrafamily aspects, rather it must consider the exact nature of the rights

asserted or of the breeches alleged... So long as diversity jurisdiction endures, federal courts cannot shirk the inconvenience of sometimes trading in wares from the foul rag and bone shop of the heart."). *See also Keating v Keating*, 542 F2d 910 (4ᵗʰ Cir. 1976) and *Bennett v. Bennett* 682 F.2d 1039 (D.C. Cir. 1982).

39. Wis. Stat. § 806.07(2) "This section does not limit the power of a court to entertain an independent action to relieve a party from judgement, order, or proceeding, or to set aside a judgment for fraud on the court." The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related claims under state law. Under 28 U.S.C. § 1441, the Court has jurisdiction to join and consolidate violations of law which arise

40. The venue is proper in this judicial district under 28 U.S.C. § 1391 because the events giving rise to this civil action occurred in this judicial district, and the defendants reside within and/or at times material here in were employed by the state of Wisconsin, and the court has jurisdiction over the individual's employed by the business entities with offices in Wisconsin and are registered to business in Wisconsin.

41. Plaintiff's claims against the defendants are timely commences pursuant to 42 U.S.C § 1983 and Wis. Stat. § 893.83. For the purpose of this claim the calculation is taken from the date of March 25, 2021, although "[t]he statute of limitations for a civil rights conspiracy claim runs from the last overt act in furtherance of the conspiracy." *Fiswick v. United States*, 329 U.S. 211,

216, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946), and the last overt act, law violation, occurred on

June 30, 2021.

42. This action is additionally served in accordance with Wis. Stat. § 893.825, as containing a

challenge to the official policy of the State of Wisconsin based on the contours of Wis. Stat. §

809.82(e).

**Count 1 – Defendant the municipality of the State of Wisconsin, and on behalf of its agents and employees in their official capacity.**

Plaintiff realleges paragraphs 1 through 42 and alleges as set forth at length and in detail herein:

43. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the

intentional and/or negligent acts of the State of Wisconsin, its agents, employees and officers

in violation of the U.S. Const. 14th amendment as occurred at times independently and at times

in conspiracy with each other and/or private parties as alleged in one or more of the particulars

set forth in 1-289 herein:

44. The proceedings occur with a variety of administrative errors.  These are not harmless, some

of the administrative errors had an drastic impact on the substance of the proceedings, others

errors are indicative of a pattern resulting from misuse and manipulation of legal process; in

that because the proceedings were conducted maliciously and/or otherwise rigged, the rigor and

care required for the administration of true justice is missing from this case.

45. Details on the transaction and documentation of sale were withheld.[21]  According to Menting

and Gurman, on July 1 of 2019, the closing agent for a sale of securities in Bluetree Network

---

[21] Anthony Menting, amenting@staffordlaw.com, *FW: Bluetree Network, Inc. - **Grady Blocker** LLC Payment Update.* sent to Shane Falk, Shari Blanke, Lisa Friedrich, Wed, Aug 21, 2019, 1:57 PM.

1983 Complaint. Prepared by Plaintiff..

Inc. sent the amount owed to Schiller to an ITOLA account at the law firm of Stafford and Rosenbaum LLP.[22]   According to Menting the wire received by Stafford and Rosenbaum LLP was designated as having been sent to pay Schiller (Tory).[23]   A letter from Simon purported the gross of the sale of securities in the amount of $4,172,692.88, and letter purports a redemption of stock options in the amount of $95,740.07.   The letter states that BlueTree Network

---

**"Here is verification of payment. I deleted sections of the email to prevent Tory from contacting the closing agent."**

[22] Anthony Menting, amenting@staffordlaw.com, *RE: Schiller/Gurman*, sent to Shane Falk, Shari Blanke, Lisa Friedrich, Wed, Aug 21, 2019, 1:52 PM.

"OK – the press release announcing that BlueTree was being sold was released June 27. **The closing agent wired money to Stafford to pay Tory after closing.**   The funds were received by us on July 1.  We notified Tory of the sale on July 2.  She was provided documentation confirming the sale at the deposition on July 8.

**Ted was also paid via wire transfer.  I will send that verification next.**   I am hopeful that we can now move onto payment, lien waiver – release of collateral, and the satisfaction of judgment as to the payment.  I ask that you or Tory provide a proposal as to how to accomplish payment and the execution of documents."



bluetree
N E T W O R K

rooted in knowledge ◊ focused on growth

July 9, 2019

Ted Gurman
525 Edward St.
Madison, WI 53711

Please see stock and stock option details listed below:

- # of shares sold
  2,770,788

- Proceeds on shares sold
  $4,172,692.88        Gross
  $579,452.88          Automatic Loan Payoff
  $3,593,239.30        Net Payout (Gross less Automatic Loan Payoff)

- # of stock options exercised and sold
  45,000

- Gross proceeds on stock options
  $95,740.07

Note: the buyer has retained 5% of total purchase funds in escrow. Some or all of that may eventually be released to shareholders as additional proceeds. If and when any additional funds are released, it will be communicated in a similar fashion.

Dan Simons
Bluetree Network, Inc.

[23]

1983 Complaint. Prepared by Plaintiff.

automatically deducted $579,452.88 from the net proceeds. The amount sent to scurity holders of Gurman's stock was in the amount of $2,293,199.30.[24] Falk purports to have expended and/or distributed $189,999.02 from the sale proceeds,[25] and in May of 2020, Schiller received a payment of $624,403.02.   The unaccounted for amount is $581,378.73, It is reasonable to conclude that $581,378.73 is the amount paid to the members of this conspiracy along with the court's excessive mandated fees.

$4,172,692.88 gross sale of securities

$+$     $0,095,740.07 exercised options

$4,268,432.95  total to be accounted for

$4,268,432.95  total to be accounted for

$-$     minus 'loan' proceeds withheld by Bluetree Network
$0,579,452.88 = (3,688,980.07)

$-$     minus wire to Gurman
$2,293,199.30 = (1,395,780.77)

$-$     minus Falk and Friedrich's Mandatory Fees
$0,189,999.02 = (1,205,781.75)

$-$     minus amount sent to Schiller
$0,624,403.02 = (581,378.73)

$0,581,378.73 amount paid to corruption/conspiracy

---

[24] Anthony Menting, amenting@staffordlaw.com, *FW: Bluetree Network, Inc. - Grady Blocker LLC Payment Update.*
Sent to Shane Falk, Shari Blanke, Lisa Friedrich, Wed, Aug 21, 2019, 1:57 PM.

"Forwarded Message
From: Customer Support Date: Mon, Jul 1, 2019 at 7:18 PM
Subject: Bluetree Network, Inc. - Payment Update
To: <tgurms@gmail.com>

7/1/2019 Dear Theodore Gurman, A payment is now being made to the Bluetree Network, Inc. securityholders. Your payment of $2,293,199.30 has been processed via the Wire Instructions you provided. Thank you, Client Services Team"

[25] Victoria Schiller, GAL Fee Spread Sheet, June 12, 2022.

1983 Complaint. Prepared by Plaintiff.

46. On May 7, 2022, Schiller requested copies of public records pursuant to Wis. Stat. § 19.31

from Wis. Ct. of App. District 4:

> "18) [S]tate records of electronic communications regarding the docketing, remittance, and
> transmission of the record and judgements such as those from/to CCAP and from/to the
> courts e-file system and docket logs, and the notification of the parties in 'VICTORIA
> LYNN SCHILLER F/K/A/ VICTORIA LYNN GURMAN, JOINT-PETITIONER-
> APPELLANT, V. THEODORE HOWARD GURMAN, JOINT-PETITIONER-
> RESPONDENT,' APPEAL NO 2019AP2419, Cir. Ct. no 2015FA788."[26]

Wisconsin Court of Appeals, District 4, Presiding Judge Brian Blanchard, responded: "We

have removed drafts, notes, preliminary computations, and like materials that fall outside the

definition of "record" as set forth in Wis. Stat. § 19.32."[27] Materials outside of the definition

of record according to the definition of Wis. Stat. § 19.32 would include materials prepared by

the originator in the name of a person for whom the originator is working, and those materials

prepared for personal use. Presiding Judge Blanchard continues his explanation by saying, "[t]o

the extend such records may or may not exist, records that involve court's deliberative processes

or opinion drafting are withheld from release. The public is not entitled access to a court's

deliberative processes and legal work-product."[28] Therefore, the enclosed emails were NOT a

part of the court's drafting process, otherwise they would have been withheld. It is clear that

during the transmission of the opinion and the staff attorneys made changes to the opinion. The

acts represented by the six pages of emails show the opinion in Wis. Ct. App. case 2019AP2419

was altered and/or is inauthentic.

---

[26] Presiding Judge Blanchard Wis. Ct. of App. District 4, 'Letter in response to portions of three emails submitted as public records request to the District 4 Court of Appeals dated May 7, 2022,' written Sept. 9, 2022, at Request No. 18, at pg. 5 of 28.
[27] Presiding Judge Brian W. Blanchard, Wis. Ct. of App. District 4, 'Letter in response to portions of three emails submitted as public records request to the District 4 Court of Appeals dated May 7, 2022,' written Sept. 9, 2022, at Request No. 18, at pg. 21 of 28.
[28] Presiding Judge Brian W. Blanchard, Wis. Ct. of App. District 4, 'Letter in response to portions of three emails submitted as public records request to the District 4 Court of Appeals dated May 7, 2022,' written Sept. 9, 2022, at Request No. 18, at pg. 21 of 28

47. The nature of the content of the emails are sworn to by virtue of their having been provided with a letter written by Presiding Judge Blanchard, a custodian of the record.   The response was an official act of his office, so was undertaken under oath as a duty and trust therein, according to the parameters of Wis. Stat. § 19.01(3).  As required by the process of a records request response, according to *Hempel*, 2005 WI 120, ¶ 62., Judge Blanchard has undergone a fact based analysis of these records.  The email's enclosed are public records because Wis. Stat. § 19.356(2)(a) recognizes two ways in which records have already been made public: 1) a previous release of the same records under the public records law; and 2) records that are made public at a public hearing or proceeding, or are otherwise already publicly available. *Chvala*, 204 Wis. 2d ¶ 91.

48. During the extended course of post-divorce litigation the court staff impacted the proceedings through improper filing, storage, and handling of documents / records, various instances described in detail herein and as will be shown in evidence and discovery.

49. In response to the August 13, 2019 motion to modify custody and placement the court usurped its power by ordering on August 26, 2019 arbitration without mediation which violated Wis. Stat. § 802.12 (2)(b) as well as the Alternative Dispute Resolution Clause in the Partial Marital Settlement Agreement Regarding Custody and Placement.[29] [30] The court's enforcement of a clause without adherence to the terms violates the legal standards expressed in, *American Express Co. v. Italian Colors Rest*. 133 S. Ct. 2314, requiring arbitration clauses to be enforced as written.  The stipulation's alternative dispute resolution terms, with the clause for arbitration after the mandatory mediation is not enforceable after it was entered as the final judgment of

---

[29] Cir. Ct. R. 134. Partial Marital Settlement Agreement Regarding Custody and Placement, June 12, 2017.
[30] Wis. Stat. § 767.451 (5m) FACTORS TO CONSIDER. (a) Subject to pars. (b) and (c), in all actions to modify legal custody or physical placement orders, the court shall consider the factors under s. 767.41 (5) (am), subject to s. 767.41 (5) (bm), and shall make its determination in a manner consistent with s. 767.41.

divorce, according to Wis. Stat. § 788.01: because "grounds as exist at law or in equity for the revocation of any contract." those grounds being the requirement of Wis. Stat. § 822.22 in which the Wisconsin circuit court maintains exclusive and continuing subject matter jurisdiction on the custody and placement matters. All proceedings relating to the custody of children shall comply with the requirements of ch. 822. Wis. Stat. § 767.01(2m). The hearing in binding arbitration did not occur with subject matter jurisdiction. The circuit court's jurisdiction is granted Wis. Const. art. VII, § 8, "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction." In *Matter of Guardianship of Eberhardy,* circuit court's is said to be "a constitutional court with plenary jurisdiction. They do not depend solely on statute for their power." Plenary meaning: full, complete, covering all matters usually referring to an order, hearing or trial.[31] The hearing and order from the binding arbitration was conducted outside the circuit court in violation of the Wisconsin Constitution grant of subject matter jurisdiction to the circuit court in Wis. Const. art. VII, § 8. Wis. Stat. § 802.12(3)(d) says; parties and a guardian ad litem may agree to binding arbitration, but this provision is not without its limitations. Wis. Stat. § 801.04, limits the applicability of this consent. Arbitrators must have subject matter jurisdiction to hear and/or decide the subject matter, and Wis. Stat. § 822.22 limits jurisdictional transferability of the subject matter of custody and placement in instances in which the state circuit court has already entered the existing child custody decision. Schiller was entitled to a proper hearing on the modification of custody and placement before being deprived of the care and custody of her child, and the

---

[31] *Plenary*, Black's Law Dictionary (10th ed. 2014).

orders for the binding of the award violated this right of due process. The U.S. Supreme Court

has held that the states may not terminate parental rights without due process of law because

"the companionship, care, custody and management of [one's] children" is an important interest

that "undeniably warrants protection," *Stanley v. Illinois*, 405 U.S. 645, 650–51, 92 S. Ct. 1208,

31 L.Ed.2d 551 (1972)."[32]

50. The attorneys appointed as guardian ad litem are officers of the court. ""The primary duty of

the courts as the judicial branch of our government is the proper and efficient administration of

justice. Members of the legal profession by their admission to the bar become an important

part of that process and this relationship is characterized by the statement that members of the

bar are officers of the court. . . . The practice of the law in the broad sense, both in and out of

the courts, is such a necessary part of and is so inexorably connected with the exercise of the

judicial power that this court should continue to exercise its supervisory control of the practice

of the law." (Emphasis supplied.) *In re Integration of Bar* (1958), 5 Wis.2d 618, 622, 93 N.W.2d

601." *Herro, McAndrews Porter v. Gerhardt*, 62 Wis. 2d 179, 184 (Wis. 1974).

51. The state appointed Friedrich as guardian ad litem for the child. Friedrich was obligated by the

responsibilities set forth by Wis. Stat. § 767.407(4) to advocate for the best interests of a minor

child as to paternity, legal custody, physical placement, and support. It is in the child's best

interests for the court to consider the required factors in any modification, therefore it is

Friedrich's responsibility to ensure the court receives the information required for proper

consideration of all required factors for the modification. Those mandatory factors are

described in detail by Wis. Stat. § 767.41(5)(am), and includes "11. Whether any of the

following has a criminal record or whether there is evidence that any of the following has

---

[32] *Jesus F. v. Washoe Cnty. Dep't of Soc. Servs.* (In re Parental Rights M.F.), 371 P.3d 995, 998 (Nev. 2016)

engaged in abuse, as defined in s. 813.122(1)(a), of the child or any other child or neglected the

child or any other child: a. A party." [33]  In Wis. Stat. § 813.122(a) "ABUSE" has the meaning

given in s. 48.02(1)(b)."  The Wis. Stat. § 48.02(1)(b) definition of abuse includes sexual

intercourse or sexual contact under s. 948.02.  Gurman was perpetrator of abuse under 948.02

in Madison Police Dep't case 2016-270509, and the child was victim.  The Madison Police

Dep't case 2016-270509. Case Report Summary, states as "Incident Type: Sexual Assault of a

Child" and under 'Offenses' lists: "1, state, 11d, 948.02(1)(E) 1st DEGREE SEXUAL ASSULT

– CONTACT WITH PERSON UNDER 13."[34]  The court appointees had the duty to report

this history of child abuse.  The guardian ad litem's obligation is non-discretionary and failure

to report abuse has been found to be a non-discretionary ministerial duty in *Baumgardt v.*

*Wausau School Dist. Bd. of Education*, 475 F. Supp. 2d 800, 809-10 (W.D. Wis. 207).  The

guardian ad litem, Friedrich had a non-discretionary minstrel duty to present information and

evidence from the history of the abuse of the child because "it is the duty of a guardian ad litem

to communicate with the court as a lawyer for a party and to present information by presenting

evidence." *Hollister v. Hollister*, 173 Wis. 2d 413, 496 N.W. 2d 642 (Ct. App. 1992).  The

guardian ad litem neglected to perform this duty.

    The father's motion to modify custody was made pursuant to Wis. Stat. § 767.451.  Two

years had passed, and parties had substantially equal custody and placement.  No actual change

in circumstances had occurred, therefore modification occurs under Wis. Stat. s. 767.451(2)(b)

where "there is a rebuttable presumption that having substantially equal periods of physical

---

[33] Wis. Stat. § 767.451(5m) FACTORS TO CONSIDER. (a) Subject to pars. (b) and (c), in all actions to modify legal custody or physical placement orders, the court shall consider the factors under s. 767.41 (5) (am), subject to s. 767.41 (5) (bm), and shall make its determination in a manner consistent with s. 767.41. (b) In determining the best interest of the child under this section, in addition to the factor under s. 767.41 (5) (am) 11.
[34] Madison Police Department case 2016-270509. Case Report Summary.

placement is in the best interest of the child."[35] Friedrich, the guardian ad litem was intentionally derelict in her duty to present information and evidence from the incidents in Madison Police Dep't case 2016-270509 and Dane Cty. Soc. Servs. Report Case 8429681, and caused the modification to custody and placement to occur without consideration of the required factors; therefore, Friedrich violated Schiller's right to due process because the law requires the court to consider instances of abuse in order to make a modification to custody and placement. The judicial officer's concealment of the existing evidences and history of abuse additionally and/or separately violates Wis. Stat. § 946.12(1).

52. In an effort to defray the general costs of compensating guardian ad litem the State of Wisconsin altered a full and final contractual property agreement in this specific case to take disparately during the courts of litigation compensation for its agents and officers and for those guardian ad litem with whom it regularly contracts, Friedrich and Falk. By overcompensating the people and entities that provide family court services during the courts of litigation in Dane Cty. Cir. Ct. case 2015FA788 the court offset the costs of from litigation in cases in which the same State employees, agents, and officers would provide services at lessor rates.

> "In *Herro, McAndrews Porter v. Gerhardt* (1974), 62 Wis.2d 179 214 N.W.2d 401. The court first resolved what it perceived to be a conflict in the cases on the standard to be applied on appellate review. The court announced that henceforth on appeal an independent review as to the reasonableness of an attorney's fee would be performed. The court then reiterated the factors it had previously announced should be considered in determining the reasonable value of an attorney's services (p. 184):
>
> > "'. . . amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and

---

[35] Wis. Stat. § 767.451(2)(b) In any case in which par. (a) does not apply and in which the parties have substantially equal periods of physical placement pursuant to a court order, a court, upon petition, motion, or order to show cause of a party, may modify the order based on the appropriate standard under sub. (1). However, under sub. (1) (b) 2., there is a rebuttable presumption that having substantially equal periods of physical placement is in the best interest of the child..

the standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services.'" (Citing *Touchett v. E Z Paintr Corp.* (1961), 14 Wis.2d 479, 488, 111 N.W.2d 419.)

On the second last factor delineated, the court noted that the "ability of a client to pay" should be taken into consideration only if a client is unable to pay a reasonable fee because of lack of means, citing Code of Professional Responsibility, *Ethical Considerations*, 43 Wis.2d vii, xviii, and *Hennen v. Hennen* (1972), 53 Wis.2d 600, 193 N.W.2d 717."

*Theuerkauf v. Schnellbaecher*, 64 Wis. 2d 79, 93-94 (Wis. 1974).

53. In the context of family law custody and placement modification, the character and importance of the litigation, the property affected (the child), the skill of the attorney needed to serve as a guardian ad litem does not fluctuate between cases based upon the income of the parents or wealth available for the court to take. Schiller's child is of equal importance to that of any other child, and the skill needed to serve as a guardian ad litem is not dependent upon the socio-economic status of the parties in the case, the skill of any one guardian ad does not very from case to case. Ability of a client to pay is intended to be a point of consideration only if the client is unable to pay.

54. Friedrich and Falk's legal services provided on appointment by Wisconsin were disadvantageous. The value of their legal services was in the negative. Value of legal services is the exception to the general rule on leaving assessed fees undisturbed, in this situation the circuit court's assessed fees needs to be undone, and reversed.

55. The guardian ad litem forced unconstitutional proceedings was negligent or intentionally irresponsible, so the court as regulator of the industry and must deter the unconstitutional actions of judicial officers by imposing penalty and refunding fees to the harmed litigants. Schiller opposed the guardian ad litem representation and fees based upon the ineffectiveness of the appointees. Schiller's resistance began almost immediately after Schiller met with the

guardian ad litem because at this meeting Falk leveraged the child in an effort to persuade Schiller not to pursue the contractual dispute. Falk then argued against Schiller's best interest. Schiller opposed the mandated representation and forced processes, but the court refused to stop the unwanted bombardment. The court wouldn't even slow down the assail.

56. The guardian ad litem was to assist with the communication to the court and the properly apply the law to the issues raised by Schiller, which Falk would not do. Instead, Falk and Judge Anderson insulted Schiller for points of argument that did not properly apply the law.[36] *See generally* Transcript May 27, 2019.

57. The orders directing excessive and unnecessary payments into the private side business of FCS social workers Shelly Anday and/or Lisa Rondini are like the Dane County Circuit Court playing the role of an unconstitutional Robin Hood. Wisconsin's orders to binding arbitration with reserve judge Sumi, the ordered participation of Falk as guardian ad litem for a pro se litigant, and the ordered participation of Friedrich as guardian ad litem for the child cost Schiller far more than the actual cost of their forced fees because the illegal orders cost Schiller her right to custody and care of her only child, caused Schiller emotional harm, and contributed to the loss of property which at issue in the pending appeal.

58. The State of Wisconsin, Menting, Gurman, Falk and/or Friedrich caused the violation of Schiller's right to equal treatment under the law. Parties previous agreement had provided the Schiller the entitlement to equal placement and joint custody. Other similarly situated parents are subject to modifications under Wis. Stat. § 767.4510(2)(b), and in order to change to the status quo of equal placement and joint custody have a proper hearing where an impartial and judge having subject matter jurisdiction considerers of all mandatory factors. In 2015FA788

---

[36] Cir. Ct. R. ___. Transcript May 27, 2019.

1983 Complaint. Prepared by Plaintiff.

the bound custody and placement order occurred without the procedure afforded to similarly

situated parents, therefore the change to placement was a violation of Equal Protection.

59. This conspiracy to violate civil rights utilized the purposeful infliction of emotional distress.

The motions and actions of the court appointees were tactically timed during the financial

dispute to use the emotional distress to impact the appeal and vice versa . The defendants joined

together in regularly objecting to extensions of time and denying Schiller's scheduling requests.

The defendants joined together in chorus falsely claiming: there was an emergency which

necessitated the removal of the child from his home and chorused a false claim that Schiller had

stipulated to the arbitration process and had stipulated to using the private professionals. The

court ordered the arbitration process in 2019 Schiller had not agreed by stipulation. The false

claim is indisputable because stipulations occur in writing, and such a stipulation would be

found in the court file according to Wisconsin Stat. § 807.05. The onslaught of filings and

mutually chorused false claims inflicted upon Schiller were harassment as defined by Wis. Stat.

§ 946.72(1m)(b).

60. Leading to and during the implementation of this scheme Schiller was physically assaulted,

her home was vandalized, she was stalked, terrorized, as well as harassed. In pursuit of this

endeavor Schiller sustained bodily injury from the plagues of bugs and the vector born illness

carried by bugs, and sustained bodily injury from the poison used to create an illusion which

would seem to justify the story behind the modification of custody and placement. These

injuries are separately and additionally actionable under Wis. Stat. § 893.54 injury to the person.

61. Gurman, Menting, and guardian ad litem were required by Wis. Stat. § 822.29, to submit to

the court record of any other proceeding concerning the custody and placement of the child in

their affidavit and/or sworn testimony. The omission of information from investigation

proceedings that took place under Wis. Stat. § 48.981 in 2016 was a violation of a clear, ministrative, non-discretionary duty.  The defendants omitted the facts contained within:

    a.  No Contact Order, prohibiting the father from contact with the child.[37]

    b.  Dane Cty. Department of Soc. Servs. Case 8429681.[38]

    c.  Stipulation.[39]

    d.  Stipulation and Amended Order.[40]

    e.  Partial Marital Settlement Agreement Regarding Custody and Placement.[41]

    f.  Temporary Order.[42]

    g.  Amend. Temp. Order Regarding Custody and Placement; Order Regarding Arbitration and Placement Study.[43]

which enabled the adjudication of the modification of custody and placement absent its history and void of context, in violation of due process.

62. On Aug. 13, 2019 Gurman file a motion to modify custody and placement.[44] [45]  Wis. Stat. § 767.001(1)(i) "allows all actions to modify a judgment in an action affecting marriage to be commenced in any court having jurisdiction under s. 767.01." 68 Atty. Gen. 106.  Schiller was denied her right under Wis. Const. art. 1. § 5. Trial by jury; verdict in civil cases. [As amended Nov. 1922] The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time

---

[37] Cir. Ct. R. 262 at 7. Letter Requesting the Ct. Review of; The Social Services Report Number 8429681, The Contents Of The Safe Harbor Interview From Aug. 4, 2016, MPD Case 2016-270509, Sun Prairie Incident Report.
[38] Wis. Ct. of App. R.__ Objection, Jan. 12, 2023.
[39] Cir. Ct. R. 044. Stipulation Case, Sept. 9, 2016.
[40] Cir. Ct. R. 048. Stipulation and Amended Order, Sept. 21, 2016.
[41] Cir. Ct. R. 109. Partial Marital Settlement Agreement Regarding Custody and Placement, April 29, 2017.
[42] Cir. Ct. R. 320. Temporary Order Regarding Custody and Placement; Order Regarding Arbitration and Placement Study, Sept. 9, 2019.
[43] Cir. Ct. R. 332. Amend. Temp. Order Regarding Cust. and Placement; Order Regarding Arbi. and Placement Study, Sept. 26, 2019.
[44] Cir. Ct. R. 278. Jt. Pet. Husband's Motion to Modify Legal Cust. and Phy. Placement, for Temp. Order, and Pet. To Reappoint Guardian ad Litem, Aug. 13, 2019.
[45] Cir. Ct. R. 279. Aff. Of Gurman In Supp. Of Motion to Modify Legal Cust. and Placement, Aug. 13, 2019.

1983 Complaint. Prepared by Plaintiff.

to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five–sixths, with orders for binding arbitration.

63. Violation of Wis. Const. art. 1. § 9.  Remedy for wrongs. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws, for orders to binding arbitration, orders for use of private services with mandated court costs, entirely controlled by a guardian ad litem.

64. In conspiracy, state employees at Dane County circuit court, branch 17, refused hear a denovo on the temporary removal of the child, which is a refusal to hear a injunction.  Wisconsin's common law, Wis. Stat. §.757.24, says "LIABILITY OF JUDICIAL OFFICERS, Circuit judges and circuit and supplemental court commissioners shall be held personally liable to any party injured for any willful violation of the law in granting injunctions and appointing receivers, or for refusing to hear motions to dissolve injunctions and to discharge receivers if the motions are made in accordance with law or such rules as are promulgated by the supreme court."  This law makes the judge liable in this case because, "[i]t is American common law that is determinative." See *Anderson v. Creighton*, 483 U.S. 635, 644 (1987). Where the employee is liable the state is liable.   By using a functional approach, this Court will find the nature of the judge's refusal to hear the de novo on the temporary order and emergency removal of the child from Schiller's custody and home was a deliberate refusal to hear a motion to dissolve an injunction which he knew to be unconstitutional.

65. With the assistance of state employees named here in, violation of 18 U.S. Code § 1018 Dane County circuit court Judge Peter Anderson,

1.) Entered an arbitration award containing statements known to be false.

and/or

2.) Delivered as true results of the December 5, 2019 hearing, the order entered on December 19, 2019 which he himself and/or his assistants and clerks prepared.

Judicial preparation of papers is prohibited by Wis. Stat. §. 757.22, which says: "No judge, while holding office, may be in any manner engaged or act as attorney or counsel; and no judge or his or her clerk or any person employed by the judge in or about his or her office, court commissioner or other judicial officer shall be allowed to give advice to parties litigant in any matter or action pending before the judge or officer, or which the judge has reason to believe will be brought before him or her for decision, or draft or prepare any papers."

66. The state agent or employee's failure to require mandatory documents in Wis. Stat. § 788.14 and the proper filing of those mandatory documents prior to binding an arbitration award is repugnant to the U.S. Constitution's Due Process Clause.

67. Dane county circuit court employee participation, conspiratorial actions, to craft and enter individualized orders with tailor made process and procedure abridged Schillers rights to choose the arbitration processes and for the arbitrator to establish those terms by contract. The circuit court orders with tailor made private processes for arbitration and family study offends the U.S. Constitution's Due Process Clause. The State's employees also failed to intercede as they witnessed the violation of civil rights.

68. Failing to provide notice according to the standards of procedure established by *Wisconsin Court of Appeals Internal Operating Procedures*,

"The clerk shall perform the duties of the office prescribed by law [...]. The clerk files and dockets the decisions and opinions of the court. Upon filing, the clerk, through a district secretary, notifies the parties as to the court's decision and releases the opinions to the parties. The clerk dockets and issues all orders of the court. Other than routine or

delinquency notices or orders, all orders contain the name or names of the deciding judge or judges but are not authored by a judge or judges." [46]

69. The clerk has final policy making authority and is the defendant responsible for case management and provision of notice according to *Wisconsin Court of Appeals Internal Operating Procedures*:

> "The clerk shall perform the duties of the office prescribed by law [.,,]. The clerk is responsible for the constant monitoring and supervision of cases from the time of appeal or commencement of proceedings until ultimate disposition. The clerk dockets and monitors to assure prompt, proper, and timely compliance with the appellate procedure. [...] The clerk has custody of the records and papers of the court and shall not permit any original record or paper to be taken from the custody of employees of the Court of Appeals, except as authorized by the orders or instructions of the Supreme Court, the Chief Justice, the Court of Appeals, its Chief Judge or a Presiding Judge. The clerk files and dockets the decisions and opinions of the court. Upon filing, the clerk, through a district secretary, notifies the parties as to the court's decision and releases the opinions to the parties. The clerk dockets and issues all orders of the court. Other than routine or delinquency notices or orders, all orders contain the name or names of the deciding judge or judges but are not authored by a judge or judges."[47]

The clerk is a final policy maker when it comes to establishing state procedure for: docketing and monitoring appeals and proceedings; record storage, handling and transmittal; taxing costs; filing opinions and decisions; and gathering court statistics according to the *Wisconsin Court of Appeals Internal Operating Procedures*:

> "The chief staff attorney is the legal advisor to the clerk of the court. He or she assists the clerk in establishing procedures for: docketing and monitoring appeals and proceedings; record storage, handling and transmittal; taxing costs; filing opinions and decisions; and gathering court statistics." [48]

---

[46] Wis. Ct. Sys. *Wisconsin Court of Appeals Internal Operating Procedures*, at pg. 2-3, (2009).
[47] Wis. Ct. Sys. *Wisconsin Court of Appeals Internal Operating Procedures*, at pg. 2-3, (2009).
[48] Wis. Ct. Sys. *Wisconsin Court of Appeals Internal Operating Procedures*, at pg. 2-3, (2009).

1983 Complaint. Prepared by Plaintiff.

70. Violation of due process caused by the adoption of a policy of docketing and transmission of deposited documents in 2019AP2419 which does not comply with the *Wisconsin Court of Appeals Internal Operating Procedures:* "[w]hen a party files a motion for reconsideration under Wis. Stat. Rule 809.24(1), the clerk's office shall send a copy of the motion to the judge who wrote the opinion or to the supervising judge. The clerk's office shall also submit the motion to a staff attorney who will be responsible for coordinating the disposition of the motion."[49]

71. Violation of due process caused by the adoption of a policy of docketing and transmission of deposited documents in 2019FA2419 which does not comply with the *Wisconsin Supreme Court Internal Operating Procedures:* "3. Original Action. Upon filing in the office of the clerk, a petition requesting the court to take jurisdiction of an original action is assigned to a commissioner for analysis prior to the court's consideration of the merits of the matter presented. The commissioner orally reports on the matter to the chief justice as soon as practicable, and the chief justice determines a date on which the matter will be considered by the court at conference. The commissioner reports on the matter at that conference." [50]

72. Wisconsin violated Schiller's right to Equal Protection by as a pattern failing to provide proper notice, and failing to follow and abide by many of the Wisconsin Statutes related to civil procedure and the judicial system as listed below as will be demonstrated in discovery and exhibit and detailed herein:

   a.  Wis. Stat. § 751.12(1).
   b.  Wis. Stat. § 753.03.
   c.  Wis. Stat. § 757.22 (1).
   d.  Wis. Stat. § 757.293(1).
   e.  Wis. Stat. § 757.48(1)(b).
   f.  Wis. Stat. § 757.54 (1).

---

[49] Wis. Ct. Sys., *Wisconsin Court of Appeals Internal Operating Procedures*, at 11, (2009).
[50] Wis. Ct. Sys., *Wisconsin Supreme Court Internal Operating Procedures*, at 9-10 (1984).

g.  Wis. Stat. § 788.09.
h.  Wis. Stat. § 788.14(1).
i.  Wis. Stat. § 788.14(2).
j.  Wis. Stat. § 801.02(3).
k.  Wis. Stat. § 801.04.
l.  Wis. Stat. § 801.05(11).
m.  Wis. Stat. § 801.06.
n.  Wis. Stat. § 801.09.
o.  Wis. Stat. § 801.10.
p.  Wis. Stat. § 801.11.
q.  Wis. Stat. § 801.14(1).
r.  Wis. Stat. § 801.14(4).
s.  Wis. Stat. § 801.145(5).
t.  Wis. Stat. § 801.16.
u.  Wis. Stat. § 801.18(4).
v.  Wis. Stat. § 801.18(2)(g).
w.  Wis. Stat. § 802.12(2)(b)
x.  Wis. Stat. § 808.075(4).
y.  Wis. Stat. § 809.801(d).
z.  Wis. Stat. § 813.122.
aa. Wis. Stat. § 814.045(3).
bb. Wis. Stat. § 822.06.
cc. Wis. Stat. § 822.10.
dd. Wis. Stat. § 822.22.
ee. Wis. Stat. § 822.29(1).

73. Failing to exercise reasonable care while implementing electronic court records management,

including, but not limited to, maintaining an accurate history of the case as required by:

ff.  SCR 72.01(11) Family case files. All documents deposited with the clerk of circuit

court in every proceeding commenced under ch. 767, stats.: (a) 40 years after entry

of judgment of divorce, legal separation, annulment, or paternity, or entry of a final

order. (b) 2 years after entry of judgment or entry of a final order for dismissed

divorces, legal separations, annulments, and paternity 314 cases;

gg. SCR 72.01(12) Family court record. A history and index of proceedings: (a) 40

years after entry of judgment of divorce, legal separation, annulment, or paternity,

or entry of a final order. (b) 2 years after entry of judgment or entry of a final order

for dismissed divorces, legal separations, annulments, and paternity cases.

74. Other malicious and intentional and/or acts of negligence as may be determined by discovery
and the evidence.

75. That the Wisconsin is liable and responsible for the intentional and negligent acts of its agents
and employees.

76. That the Wisconsin was party to a conspiracy to violate civil rights.

77. That as a result of the Wisconsin's negligent and/or intentional acts and the acts of the various
employees, agents, and officers herein Schiller has incurred legal expenses, was injured, has
incurred expenses for medical treatment, and will incur further likes expenses in the future, has
suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of
life; and has suffered actual monetary losses

**Official Capacity of Supreme Appeals Court Clerk Sheila Reiff**

Plaintiff realleges paragraphs 1 through 77 as though set forth at length and in detail herein.

78. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the
intentional and/or negligence of Reiff in her official capacity in violation of the U.S. Const. 14th
amendment in one or more of the particulars alleged herein:

79. The lag time between the decision's rendition on March 25, 2021, and the subsequent entry
into the eFile system which generates the issuance notice on April 27, 2021, abruptly ended the
litigation.  The overt violation of law concealed a lawless judgement denied Schiller her right
to point out the errors of the appeals court decision and to seek resolution of those errors.
Therefore, the clerk's failure to provide timely notice as required by law, denied Schiller a due
process right of substantive and procedural fairness, as it was an arbitrary exercise of

government power that effected Schiller's right to be heard and had an impact on the substance of the litigation. The supreme/appeals court clerk Reiff failed to provide proper notice upon rendering of the opinion Wis. Ct. App. case 2019AP2419.

80. On May 5, 2021, Schiller filed a motion for reconsideration and was notified of its entry into the e-file system by email.[51] Two days later, on a Friday, May 7, 2021, Schiller received by email,[52] Order of Court of Appeals, dismissing the motion for reconsideration based on lateness.[53] Cir. Ct. R. 662., May 14, 2021. The date of the week is relevant because the Court of Appeals District 4 release day are Wednesdays, and a Tuesday release is out of step.

81. Order of Court of Appeals Cir. Ct. R. 662., May 14, 2021 is dated as filed at the circuit court as of May 14, 2021, but dated as filed in the appeals court on May, 7, 2021, and dated as rendered on May 7, 2021,[54] and was "filed" when the notice was issued to Schiller on May 7, 2021,[55] because the electronic filing system notice of activity serves as proof of filing. Wis. Stat. § 809.801(4)(c).[56]

82. On May 14, 2021, Schiller filed a letter to the clerk requesting the right of reconsideration, and Schiller relayed the clerk's office employee's explanation of an erroneous release. Schiller received the email, 2019AP002419 Second Motion for Reconsideration for Supreme

---

[51] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Motion for Reconsideration for Supreme Court/Court of Appeals*, sent to VLSchiller808@gmail.com. Wed. May 5, 2021 at 10:08 AM.
[52] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 5-7-2021 Order for Supreme Court/Court of Appeals,* sent to VLSchiller808@gmail.com, Fri. May 7, 2021 at 12:39 PM.
[53] Cir. Ct. R. 662. Order of Court of Appeals, May 14, 2021.
[54] Id.
[55] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 5-7-2021 Order for Supreme Court/Court of Appeals*, sent to VLSchiller808@gmail.com, Fri. May 7, 2021 at 12:39 PM.
[56] Wis. Stat. § 809.801 (4)(c) If the clerk of court accepts a document for filing, it shall be considered filed with the court at the date and time of the original submission, as recorded by the electronic filing system. The electronic filing system shall issue a notice of activity to serve as proof of filing. When personal service or traditional service is not required, the notice of activity shall constitute service on the other users in the case.

1983 Complaint. Prepared by Plaintiff.

Court/Court of Appeals Added to the Case, confirming her letter's upload into the e-File system later that day. [57]

83. On May 18, 2021, a Tuesday, Schiller received the efile email notice, 2019AP002419 5-18-2021 Order for Supreme Court/Court of Appeals.[58] This email contained Order of Court of Appeals, dismissing Schiller's letter and denying Schiller's right to file a motion of reconsideration in the event of clerk error.[59] Cir. Ct. R. 663. This order was dated as filed May 20, 2021, dated rendered on May 18, 2021, and issued May 18, 2021. Cir. Ct. R. 663.[60]

84. On May 24, 2021, Schiller filed a petition for review but received no email notice of its entry. However, on May 26, 2021, The clerk sent, 2019AP002419, Petition for Review Dismissal Order – Late for Supreme Court/Court of appeals.[61] This email contained a link to Order of the Supreme Court. Cir. Ct. R. 664.[62]

85. On June 24, 2021, Schiller filed a petition for supervisory writ. The clerk responded by construing the petition for supervisory writ as "Construed Motion to Reconsider 5/26/2021 Decision on Petition for Review." Schiller was alerted to this misconstruction by eFile notification,[63] and responded by filing a letter stating it was her intention to seek a supervisory writ from the supreme court.[64] [65] This was possible because according to s.809.71 if it is

---

[57] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Notice Second Motion for Reconsideration for Supreme Court/Court of Appeals Added to Case*, sent to VLSchiller808@gmail.com, Fri. May 14, 2021 at 9:46 AM.

[58] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 5-18-2021 Order for Supreme Court/Court of Appeals*, sent to VLSchiller808@gmail.com, Tues. May 18, 2021 at 10:07 AM.

[59] Cir. Ct. R. 663. Order of Court of Appeals, May 20, 2021.

[60] Id.

[61] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Petition for Review Dismissal Order – Late for Supreme Court/Court of appeals*, sent to VLSchiller808@gmail.com, Wed. May 26, 2021 at 4:51 AM.

[62] Cir. Ct. R. 664. Order of the Supreme Court, June 01, 2021.

[63] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Construed Motion to Reconsider 5/26/2021 Decision on Petition for Review for Supreme Court/Court of Appeals [Petition for Supervisory Writ]*, sent to VLSchiller808@gmail.com. Thursday June 24 2021, at 10:11 AM.

[64] App. Ct. R.__ 2019AP002419 Letter on misconstrued filing for Supreme Court/Court of Appeals, June 28, 2021.

[65] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Motion for Miscellaneous Relief – Letter on misconstrued filing for Supreme Court/Court of Appeals*, sent to VLSchiller808@gmail.com, Monday June 28 2021, at 3:21 PM.

1983 Complaint. Prepared by Plaintiff.

impractical to seek the writ in the court of appeals it may be sought in the supreme court.[66] Schiller reviewed the document later that day via her eFile account. Schiller noticed a missing page and deposited a correction with the clerk the next day. Schiller received notice of the correction entry on June 29, 2021, at 3:23 PM.[67]

86. On June 30, 2021, Schiller received, by eFile notification, an Order of the Supreme Court dated June 30, 2021,[68] denying Schiller's right to file original actions, further denying her right to time.[69]

---

[66] Wis. Stat. § 809.71. Rule(1) A person may request the supreme court to exercise its supervisory jurisdiction over a court and the judge presiding therein or other person or body by filing a petition in accordance with s. 809.51. The petition shall be served on each party and proposed respondent, and if applicable, upon the originating court or tribunal, by traditional methods as provided in s. 809.80 (2). A person seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals. A petition in the supreme court shall show why it was impractical to seek the writ in the court of appeals or, if a petition had been filed in the court of appeals, the disposition made and reasons given by the court of appeals.

[67] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Motion for Miscellaneous Relief – Letter on misconstrued filing (amended to include the missing pg. 3) for Supreme Court/Court of appeals*, sent to VLSchiller808@gmail.com, June 29 2021, 3:23 PM.

[68] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Order for Supreme Court/Court of Appeals*, sent to VLSchiller808@gmail.com, Wed. June 30, 2021 at 1:48 PM.



[69] Cir. Ct. R. 666. Order of the Supreme Court, July 2, 2021.

87. The June 30, 2021 order purported as a fact that the Decision/Opinion in Wis. Ct. App. case 2019AP2419 was physically mailed to all parties; however, the June 30, 2021 Order fails to establish the date of its mailing or the destination to which it was mailed. Schiller never received a mailed copy of Decision/Opinion.[70] If it were true the mailing occurred, it would still be a violation of a clearly established right of due process because ALL parties were eFile users. The attorneys are "Mandatory Users"[71] of the eFile system, and Schiller was a "Voluntary User"[72] of the eFile system. "All judicial officers, the clerk of court, and all court staff shall cooperate and assist with the implementation of electronic filing."[73] Wis. Stat. § 809.801(2)(g), therefore the clerk must cooperate with the rules of the electronic filing system.

---

[70] Cir. Ct. R. 659. Ct. of App. Opinion/Decision, March 26, 2021.

[71] Wis. Stat. § 809.801 Rule (Definitions). In this chapter: 19) "Mandatory user" means a user who is subject to s. 809.801 (3)(a). (s. 809.801 (3)(a)) The following individuals shall register for access to the electronic filing system prior to filing documents:1. Licensed Wisconsin attorneys. 2. Attorneys appearing under SCR 10.03 (4). 3. High-volume filing agents."

[72] Wis. Stat. § 809.01 Rule (Definitions). In this chapter: (34), "Voluntary user" means a party not subject to s. 809.801(3)(a) who voluntarily registers to use the electronic filing system under s. 809.801(3)(b)). (s.809.01(34))

[73] Wis. Stat. § 809.801 (2) Effective date; applicability.

(a) At the direction of the supreme court, the director shall implement an electronic filing system for the Wisconsin supreme court and court of appeals. The requirements of this section shall govern the electronic filing of documents in all types of actions and proceedings in the appellate courts.

(b) At the direction of the supreme court, mandatory use of the electronic filing system shall be phased in according to a schedule set by the director until the system has been fully implemented. Information about the transition schedule shall be made readily available to the public in advance of its application.

(c) Subject to the schedule in par. (b), mandatory users shall be required to use the appellate court electronic filing system for all new filings covered by the schedule. Electronic filing shall be required for all new actions and proceedings brought in the court of appeals and the supreme court, and for all new documents submitted in previously filed cases, except as otherwise provided in this section.

(e) Electronic filing is limited to methods specifically approved by the director. The director may enter into an agreement with any state agency to allow electronic filing through a custom data exchange between the court case management system and the agency's automated information system. Parties using a custom data exchange are considered mandatory users and are subject to the requirements of this section.

(f) The procedures in this section shall be interpreted in a manner consistent with existing procedures. This section is not intended to limit the director's approval of new technologies that accomplish the same functions.

(g) All judicial officers, the clerk of court, and all court staff shall cooperate and assist with the implementation of electronic filing.

(h) This section does not apply to documents required by law to be filed with court officials that are not filed in an action before the court. These documents may be filed by traditional methods unless otherwise required.

(k) The procedures under this section are intended to be consistent with the procedures governing electronic filing and service in the circuit courts under s. 801.18. The circuit and appellate court electronic filing and service rules shall be interpreted consistently to the extent practicable.

Schiller's eFile status was confirmed by email on March 30, 2020.[74] This confirmation sets forth the understanding that documents such as notice and decision will occur by email.

> "This email is a notification that the electronic notice preference for Victoria Schiller has changed for 2019AP002419 (Victoria Lynn Schiller v. Theodore Howard Gurman in the Supreme Court/Court of Appeals. This email confirms you have requested to view documents online using the Wisconsin Court eFiling system. New case documents will be delivered to you via email and will also be available at https://acefiling.wicourts.gov. Print and save this page for your records. Do not reply to this email. Mail sent to this email account will not be read."[75]

Schiller registered for eFile access on January 17, 2020 and received confirmation of registration, which states:

> "This e-mail confirms you have successfully registered with the Wisconsin e-Courts system. To activate your account, you are required to enter your account identification number (PIN), the first time you log in. Please record your PIN for future use. Your PIN is required for submitting filings using the eFiling system. It is also required for other eCourts Web sites. Your PIN is: xxxx Your user name is: Vlsch***** To activate your account now, visit https://logon.wicourts.gov/. Alternatively, you will be prompted the next time you login. Wisconsin Court System eCourts Administrator."

The *Wisconsin Electronic Filing System (eFile) User Agreement* states that as a Term & Condition of Use, "(7) I agree to maintain an e-mail address at which the registered user agrees to accept service through the electronic filing system and other notices"[76] [77] Notice of the

---

[74] Wis. Ct. Sys., Clerk@wicourts.gov, *Electronic Party Registration on Case 2019AP002419 in Supreme Court/Court of Appeals,* sent to VLSchiller808@gmail.com. Mon. March 30, 2020 at 4:20 PM.
[75] Id.
[76] Wis. Ct. Sys., *Electronic Filing System User Agreement*, https://www.wicourts.gov/ecourts/efilecircuit/docs/efileagree.pdf
[77] 809.801 Rule (Appellate electronic filing). k) The procedures under this section are intended to be consistent with the procedures governing electronic filing and service in the circuit courts under s. 801.18. The circuit and appellate court electronic filing and service rules shall be interpreted consistently to the extent practicable.

decision is other notice.   The *Appellate eFiling FAQs* states:  "Q. How do I get the court's decision? You will receive the Court of Appeals' decision electronically. No paper copy of the decision will be mailed to you."[78] *The Guide to Wisconsin Appellate Procedure for the Self-Represented Litigant* states:

> "If you choose to participate in eFiling, you will no longer receive paper notices or orders from the court or paper documents from opposing parties. Instead, you will receive an email telling you a new document is available for viewing online. One benefit of participating in eFiling is that you receive immediate notice that something has happened in your case instead of waiting several days for papers to arrive in the mail."[79]

Due Process requires the Appeals/Supreme Court Clerk's office to use the eFile system to send notice when the eFile parties expect and are obligated to receive documents electronically, and notice is a document pursuant to Wis. Stat. §809.01(11).[80]  Notice of entry of judgment is ineffective if it was mailed to an incorrect address. *Nichols v. Conlin*, 198 Wis. 2d 287, 542 N.W.2d 194 (Ct. App. 1995), 95−2776.  Accordingly, Wisconsin's Supreme Appeals Court Clerk's purported physical mailing was not proper notice.

88. Plaintiff's Motion for Reconsideration filed on May 5, 2021 was only sent to user 0089[81] (Unknown Person), but motions for reconsideration are required to be sent the deciding judge according to the *Wisconsin Court of Appeals Internal Operating Procedures*, which says "[w]hen a party files a motion for reconsideration under Wis. Stat. Rule 809.24(1), the clerk's office shall send a copy of the motion to the judge who wrote the opinion or to the supervising judge.  The clerk's office shall also submit the motion to a staff attorney who will be responsible

---

[78] Wis. Ct. Sys., *Appellate eFiling FAQs*, https://www.wicourts.gov/ecourts/efileappellate/faq.htm (follow "How do I get the court's decision" hyperlink or scroll down to "How do I get the court's decision section) (last visited July 21, 2022)
[79] Wis. Ct. Sys., *Guide to Wisconsin Appellate Procedure for the Self-Represented Litigant*, at 8, (July 1, 2021).
[80] Wis. Stat. § 809.01(11), "Document" means a pleading, notice of appeal, petition, writ, form, notice, motion, order, affidavit, exhibit, brief, judgment, opinion, or other filing in an action or proceeding.
[81] Sheila Reiff. Public Records Response AP-9000, 03/2005 Docket Card 2019AP002419, Feb. 9, 2023.

1983 Complaint, Prepared by Plaintiff.

for coordinating the disposition of the motion." *Wisconsin Court of Appeals Internal Operating Procedures*, (2009), at pg. 11.[82] The *Wisconsin Court of Appeals Internal Operating Procedures* are a regulatory body of court procedures. Interpretation of an these official rules or regulations, are like that of a statue, and are a question of law that requires ascertaining the intent by first resorting to plain language. If the language clearly and unambiguously sets fort the intent, then it is the interpreters duty to apply that intent to the facts and circumstances. In this case the motion was required to be sent by the clerk to either: user 8005 (Blanchard), user 8012 (Kloppenburg), or user 8022 (Graham), in order for it to have been sent to the judge that wrote the opinion or was the supervising judge. The failure to follow this procedure resulted in the court of appeals May 7, 2021, Order of Court of Appeals. Cir. Ct. R. 662. [83] dismissing the Schiller's Motion for Reconsideration based on lateness. The order was made and delivered by the actions of the Supreme Appeals Court Clerk, and cannot be said to be that of the judges themselves.

89. Schiller's Motion for Reconsideration/Letter filed May 14, 2021 was also only sent to user 0089,[84] but motions for reconsideration are required to be sent the deciding judge, also in this instance the Motion for Reconsideration/Letter was required to be sent by the clerk to either: user 8005 (Blanchard), user 8012 (Kloppenburg), or user 8022 (Graham), to appropriately reach one of the judges from the panel, as either would be the judge that wrote the opinion or was the supervising judge. This deliberate failure resulted in Order of Court of Appeals, Cir. Ct. Doc. 663, which dismissed Schiller's letter and denied Schiller her right to file a motion of

---

[82] Wis. Ct. Sys., *Wisconsin Court of Appeals Internal Operating Procedures*, at pg. 1.1, (Nov. 30, 2009).
[83] Cir. Ct. R. 662. Order of Court of Appeals, May 14, 2021.
[84] Sheila Reiff. *Public Records Response AP-9000, 03/2005 Docket Card 2019AP002419*, Feb. 9, 2023.

1983 Complaint. Prepared by Plaintiff.

reconsideration in the event of clerk error, and was created by and delivered through the actions

of the Supreme Appeals Court Clerk.

90. The Supreme Appeals Court Clerk submitted Schiller's Petition for Review filed May 24, 2021

to user 9994 (District 4 unassigned), [85] which resulted in Order of the Supreme Court dismissing

as late Schiller's Petition for Review, electronically signed by Supreme Appeals Court Clerk

Reiff, Cir. Ct. Doc. 664.,[86] but petitions for review are by rule submitted to the Supreme Court

this rule may be found in *Wisconsin Supreme Court Internal Operating Procedures:*

> "3. Original Action. Upon filing in the office of the clerk, a petition requesting the court
> to take jurisdiction of an original action is assigned to a commissioner for analysis prior to
> the court's consideration of the merits of the matter presented. The commissioner orally
> reports on the matter to the chief justice as soon as practicable, and the chief justice
> determines a date on which the matter will be considered by the court at conference. The
> commissioner reports on the matter at that conference."

*Supreme Court Internal Operating Procedures*, (1984), at pg. 9-10.

The arbitrary actions of the Supreme Appeals Court Clerk made and delivered as the court's

response to Schiller's petition for review.

91. Schiller's Petition for Supervisory Writ deposited on June 24, 2021 was construed as a Motion

for Reconsideration and submitted to user 8008 at District Four Court of Appeals,[87] resulting

in Order of the Supreme Court Cir. Ct. R. 666. July 2, 2021., denying Schiller's right to file

original actions, further denying her right to time.   This order states: "You are hereby notified

that the Court, by its Clerk and Commissioners, has entered the following order: No.

2019AP2419 Schiller v. Gurman L.C.#2015FA788. On March 25, 2021, the court of appeals

issued its decision in this matter. The clerk of the courts office has confirmed that this decision

---

[85] Sheila Reiff. *Public Records Response AP-9000, 03/2005 Docket Card 2019AP002419*, Feb. 9, 2023.
[86] Cir. Ct. R. 664. Order of the Supreme Court, June 1, 2021.
[87] Sheila Reiff. *Public Records Response AP-9000, 03/2005 Docket Card 2019AP002419*, Feb. 9, 2023.

was physically mailed to all parties. Joint-petitioner-appellant Schiller moved the court of appeals to reconsider its March 25, 2021 decision, but the court denied the motion as untimely. See Orders of May 7 and 18, 2021.' ' On May 24, 2021, Ms. Schiller filed a petition for review in Wis. Ct. App. case 2019AP2419. By order on May 26, 2021, this court dismissed the petition as untimely." Then the clerk returned by physical mail Schiller's check for the filing of an independent action, petition for a supervisory writ. *Supreme Court's Internal Operations Procedures* sets forth:

> "Petition for Supervisory Writ; Petition for Writ of Mandamus, Prohibition, Quo Warranto, Habeas Corpus. The Supreme Court has superintending authority over all actions and proceedings in the circuit courts and the Court of Appeals. It does not ordinarily issue supervisory writs concerning matters pending in circuit courts, as the Court of Appeals also has supervisory authority over all actions and proceedings in those courts. A person may request the Supreme Court to exercise its superintending jurisdiction by filing a petition pursuant to Wis. Stat. § (Rule) 809.71. Petitions for supervisory writ and petitions for writ of mandamus, prohibition, quo warranto, or habeas corpus are processed according to the procedure set forth above for a petition for commencement of an original action, except that if time does not permit consideration by the court, petitions for supervisory writ may be denied ex parte by the chief justice. If it appears from the petition that it should be dismissed on procedural grounds, the chief justice, acting for the court, may deny the petition ex parte" *Supreme Court Internal Operating Procedures,* at pg. 10, (1984).

The internal operating procedures were not followed in responding to Schiller's petition for supervisory writ from the Wisconsin Supreme Court.

92. The deliberate failures of the clerk to follow the procedures in *Wisconsin Court of Appeals Internal Operating Procedures* and *Supreme Court Internal Operating Procedures,* were an infliction of an arbitrary exercise of power by government officials a violation of procedural due process that gives rise to rise to a substantive due process claim'" *Independent Enters. Inc. v. Pittsburgh Water Sewer Auth.*, 103 F.3d 1165, 1179 (3d Cir. 1997) (quoting *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 683 (3d Cir. 1991)).

93. Negligently and/or intentionally the Supreme Appeals Court Clerk Reiff made and delivered as true the official record of Wis. Ct. App. case 2019AP2419 without appellant's appendix, insuring the tampered with records from the court of appeals would be the records used to decide the appeal.[88]

94. Reiff, Supreme Appeals Court Clerk, and or Wisconsin employees under the direct supervision of Reiff, named herein, negligently and/or intentionally concealed the opinion by mis-recording the citation. The docket card for Wis. Ct. App. case 2019AP2419 records entry of citation numbers for the opinion in Wis. Ct. App. case 2019AP2419 as "397 Wis. 2d 243 and 959 N.W.2d 88" with the docketed status of unpublished order.[89] This docket entry is a citation number for App. no. 2020AP5-CR,  Wis. Ct. of App. District 1, *State v. Covington*, 397 Wis. 2d 243 and 959 N.W.2d 88 (Mar. 16, 2021).[90]

95. Reiff is liable and responsible for the intentional and negligent acts which contributed to the conspiracy an concealment of the opinion.

---

[88] Sheila Reiff. *Letter of Public Records Response*. Sent to Schiller. October 25, 2022
[89] Sheila Reiff. Public Records Response AP-9000, 03/2005 Docket Card 2019AP002419, Feb. 9, 2023.
[90] *State v. Covington*. 397 Wis. 2d 243, 959 N.W.2d 88.

96. Reiff may be held liable according to the finding in *Lowe v. E. Letsinger*, 772 F.2d.at 312 (finding the clerk to be liable for their failures to perform a non-discretionary administrative act.).

97. Reiff was party to a conspiracy to violate civil rights.

98. The acts and omissions of Reiff as a government employee are class I felony according to Wis. Stat. § 946.12 misconduct in public office.

99. The acts and omissions of Reiff as a government employee are class H felony according to and/or Wis. Stat. § 946.72 tampering with public records and notices.

100. That as public officer or other person authorized by 4 U.S.C. §101 to make or give a certificate or other writing, and deliver as true such a certificate or writing acts of Reiff were violations of 18 U.S.C. § 1018.

101. That as a result of Reiff's intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of Supreme Appeals Court Deputy Clerk Jamie Hustad**
Plaintiff realleges paragraphs 1 through 101 as though set forth at length and in detail herein.

102. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Hustad in her official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

103. On April 27, 2021, Hustad, CHIEF DEPUTY CLERK, undertook the duties of the Supreme Appeals Court Clerk Reiff, and signed the certification of the Remittitur in 2019AP2419, Cir. Ct. R. 660, causing the remittance of the case before Schiller received notice of opinion.

104. On April 27, 2021, Schiller received an email with notice of remittitur.[91]   This was the first

indication Schiller received of a decision occurring.   Immediately after receiving the email

notice of remittitur, Schiller emailed the clerk and asked for an explanation for the mistake.[92]

[93]However, the email went to an unchecked account, so Schiller called the clerk's office, and a

woman answered.  Schiller asked where she could see the decision. The state employee at the

Appeals/Supreme Court Clerk's Office suggested Schiller could view the decision on the

Appeals Court website.  The same state employee suggested Schiller could write to the clerk's

---

[91] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Remittitur for CA Opinion, SC Bypass, SC Certification for Supreme Court/Court of Appeals*, sent to VLSchiller808@gmail.com, April 27, 2021 at 10:50 AM.
[92] Victoria Schiller, vlschiller808@gmail.com, *RE: Remittitur for CA Opinion, SC Bypass, SC Certification for Supreme Court/Court of Appeals*, sent to Clerk@wicourts.gov, Tuesday April 27, 2021 at 11:54 AM.
[93]



>  Gmail                                      Victoria Schiller <vlschiller808@gmail.com>
>
> **2019AP002419 Remittitur for CA Opinion, SC Bypass, SC Certification for Supreme Court/Court of Appeals**
> 3 messages
>
> **Clerk@wicourts.gov** <Clerk@wicourts.gov>                    Tue, Apr 27, 2021 at 10:50 AM
> To: vlschiller808@gmail.com
>
> Victoria Schiller,
>
> This email is to notify you that the document (Remittitur for CA Opinion, SC Bypass, SC Certification) has been added to case number 2019AP002419 (Victoria Lynn Schiller v. Theodore Howard Gurman) in the Supreme Court/Court of Appeals.
>
> Follow the link below to view the document online.
>
> Remittitur for CA Opinion, SC Bypass, SC Certification
>
> Print and save this page for your records. Do not reply to this email. Mail sent to this email account will not be read.
>
> **victoria schiller** <vlschiller808@gmail.com>                Tue, Apr 27, 2021 at 11:54 AM
> To: Clerk@wicourts.gov
>
> How do I access the explanation for this mistake?
> [Quoted text hidden]

1983 Complaint Prepared by Plaintiff.

office about the error and seek the right to motion for reconsideration. Later that day, Schiller received notice of decision containing a link to the opinion.[94] [95]

105. The email notice specifically names the document issued as 'Opinion/Decision,' additionally, the document Schiller received on that day has no copy mark. The document sent by email on April 27, 2021, was the opinion, Court of Appeals Decision, Cir. Ct. R. 659.[96] The electronic filing system shall issue a notice of activity to serve as proof of filing, and this notice is Schiller's email. According to Wis. Stat. § 809.801(4)(c), the email notice must be considered the proof of filing, and no other proof of filing is permissible.

106. That Hustad is liable and responsible for the intentional and negligent acts which contributed to the conspiracy an concealment of the opinion.

107. That Hustad was party to a conspiracy to violate civil rights.

---

[94] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Opinion/Decision for Supreme Court/Court of Appeals.* sent to VLSchiller808@gmail.com, Tues. Apr. 27 2021 at 12:30 PM.
[95]



**M** Gmail                                                                    Victoria Schiller <vlschiller808@gmail.com>

**2019AP002419 Opinion/Decision for Supreme Court/Court of Appeals**

**Clerk@wicourts.gov** <Clerk@wicourts.gov>                                   Tue, Apr 27, 2021 at 12:30 PM
To: vlschiller808@gmail.com

Victoria Schiller,

This email is to notify you that the document (Opinion/Decision) has been added to case number 2019AP002419 (Victoria Lynn Schiller v. Theodore Howard Gurman) in the Supreme Court/Court of Appeals.

Follow the link below to view the document online.

Opinion/Decision

Print and save this page for your records. Do not reply to this email. Mail sent to this email account will not be read.

[96] Cir. Ct. R. 659. Ct. of App. Decision, March 26, 2021.

108. The acts and omissions of Hustad as a government employee are class I felony according to Wis. Stat. § 946.12 misconduct in public office.

109. The acts and omissions of Hustad as a government employee are class H felony according to and/or Wis. Stat. § 946.72 tampering with public records and notices.

110. That as a result of Hustad's intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of Supreme Appeals Court Assistant Deputy Benjamin Manthei**
Plaintiff realleges paragraphs 1 through 110 as though set forth at length and in detail herein.

111. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of the Manthei in his official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

112. Failing to promptly file Schiller's appeals brief and appendix, deposited on April 14, 2021, and delaying filing until January 7, 2021 and/or January 10, 2021, and sending three various email notifications regarding entry of the brief and appendix.[97] [98] [99] Prompt entry is required by Wis. Stat. § 809.801.

---

[97] Wis. Ct. Sys., *2019AP002419 Brief & Appx of Appellant(s) for Supreme Court/Court of Appeals*, sent to VLSchiller@gmail.com, Thurs. Jan. 7, 2021 at 1:43 PM.
[98] Wis. Ct. Sys., *2019AP002419 Brief of Appellant(s) for Supreme Court/Court of Appeals*, sent to VLSchiller@gmail.com, Sun. Jan. 10, 2021 at 11:54 AM.
[99] Wis. Ct. Sys., *2019AP002419 Appendix to Brief of Appellant(s) for Supreme Court/Court of Appeals*, sent to VLSchiller@gmail.com, Thurs. Jan. 10, 2021 at 11:54 AM.

1983 Complaint. Prepared by Plaintiff.

113. Manthei further demonstrated a pattern of records mismanagement by issuance of three eFile notices for the filing of Schiller's reply brief on July 24, 2020.[100] Delaying e-file notice of the GAL brief until on September 14, 2021.[101] [102]

114. That Manthei is liable and responsible for the acts which contributed to the conspiracy an concealment of the opinion.

115. That Manthei was party to a conspiracy to violate civil rights.

---

[100] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Reply Brief for Supreme Court/Court of Appeals*, sent to VLSchiller808@gmail.com, Fri. July 24 2020 at 10:43 AM. (3 notifications).



[101] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Brief of Guardian ad Litem - Cover Letter for Supreme Court/Court of Appeals*. Sent to VLSchiller808@gmail.com . Sept. 14, 2020 at 8:44 AM.
[102] Wis. Ct. Sys., Clerk@wicourts.gov, *2019AP002419 Brief of Guardian ad Litem for Supreme Court/Court of Appeals*. Sent to VLSchiller808@gmail.com. Sept. 14, 2020 at 8:43 AM.

1983 Complaint. Prepared by Plaintiff.

116. The acts and omissions of Manthei as a government employee are class I felony according to Wis. Stat. § 946.12 misconduct in public office

117. The acts and omissions of Manthei as a government employee are class H felony according to and/or Wis. Stat. § 946.72 tampering with public records and notices.

118. That as a result of the Manthei's intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of District IV District Secretary**

Plaintiff realleges paragraphs 1 through 118 as though set forth at length and in detail herein.

119. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence District IV District Secretary in violation their official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

120. That the District Four District Secretary did not provide notice upon rendering of opinion in 2019AP2419.

121. That District IV District Secretary was party to conspiracy to violate civil rights.

122. That the District IV District Secretary is liable for the intentional and/or negligent acts which contributed to the conspiracy an concealment of the opinion.

123. The acts and omissions of District IV District Secretary as a government employee are class I felony according to Wis. Stat. § 946.12 misconduct in public office.

124. The acts and omissions of District IV District Secretary as a government employee are class H felony according to and/or Wis. Stat. § 946.72 tampering with public records and notices.

125. That as a result of the District IV District Secretary intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of Assistant Roberta Bushey**

Plaintiff realleges paragraphs 1 through 125 as though set forth at length and in detail herein.

126. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Bushey in her official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

127. That Bushey <Roberta.Bushey@WIcourts.gov> transmitted orders Schiller's court matters with instructions to the clerk on modality of issuance with designation for SNAIL MAIL.

128. Bushey <Roberta.Bushey@WIcourts.gov> sent an email with the subject: Releases, on Friday, March 19, 2021 3:05 PM., saying: "I added three new releases to the Opinions folder: 19AP1502-CRNM Schiller SMD 19AP1993 McCray SMD 19AP2419 Schiller PC Let me know if you see any issues. No rush. Have a great weekend. Thanks, Bobbi"

129. Bushey received an email with the subject: RE: Releases, from Rose Vine <Rose.Vine@WICOURTS.GOV> on Monday, March 22, 2021 10:07:18 AM.  With the opinion in 2019AP2419 attached.

130. That Bushey was member to a conspiracy to violate civil rights.

131. The acts and omissions of Bushey as a government employee are class I felony according to Wis. Stat. § 946.12 misconduct in public office.

132. The acts and omissions of Bushey as a government employee are class H felony according to and/or Wis. Stat. § 946.72 tampering with public records and notices.

133. That as a result of the Bushey intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of Assistant Rose Vine**

Plaintiff realleges paragraphs 1 through 133 as though set forth at length and in detail herein.

134. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Vine in her official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

135. Outside of the drafting process, on March 22, 2022, at 10:07:19 AM Vine sent an email RE: Releases to Bushey indicating Vine had not looked at the opinion in 2019AP2419.[103]

136. On March 22, 2022, at 10:26:04 AM, Vine sent an email RE: Releases with the attachment "2019AP2419 track changes.docx" to Bushey, with a message to Bushey, showing that Vine had made changes to the final opinion.

137. Vine then circulated the revised opinion to Bushey.

138. That at times material herein Vine was employed as Judge Blanchard's Judicial Assistant and Bushey was employed as Judge Graham's Judicial Assistant .

139. That Vine was member to a conspiracy to violate civil rights.

---

[103] Rose Vine, Rose.Vine@wicourts.gov, *RE: Releases*, sent to: Roberta Bushey, Roberta.Bushey@wicourts.gov, Monday, March 22, 2021 10:07:18 AM.

1983 Complaint. Prepared by Plaintiff .

140. The acts and omissions of Vine as a government employee are class I felony according to Wis. Stat. § 946.12 misconduct in public office

141. The acts and omissions of Vine as a government employee are class H felony according to and/or Wis. Stat. § 946.72 tampering with public records and notices.

142. That as a result of Vine's intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of Dane Cty. Cir. Ct. clerk Carlo Esqueda**

Plaintiff realleges paragraphs 1 through 142 as though set forth at length and in detail herein.

143. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Esqueda in violation of 42 U.S.C. § 1983, and/or 42 U.S.C. §§ 1985, 1986 in one or more of the particulars alleged herein:

144. Esqueda, The Dane Cty. Cir. Ct. clerk, removed the corporate parties from the case and WCCA index.[104] Esqueda concedes this fact in an email to Schiller:

---

[104] Carlo Esqueda, Carlo.Esqueda@wicourts.gov, *Re:[E]Re: Clarification on Prior Email*, sent to VLSchiller808@gmail.com, May 31, 2022, 3:13 PM.

"Thank you for clarifying. BlueTree and Schwach were not parties to this case insofar as the initiating documents listed only you and your ex-spouse as litigants. The case record shows that Schwach/BlueTree was served a "Request for Interrogatories" on or about January 23, 2018. The Court received a Notice of Appearance for two attorneys (Hanus and Johnson) representing Schwach and BlueTree on 2/16/2018 to litigate their request to the court to quash the "Request for Interrogatories." Schwach and BlueTree were added to the case as "Other" parties for the express purpose that they would receive notices of any proceedings that related to their motion to quash. The Court placed a stay on the matter that was resolved at the hearing of 4/18/2018. The Court granted Schwach's/BlueTree's motion to quash. Once that occurred, the parties ceased to be involved in the case, but they continued to receive notices of hearings even though the proceedings did not involve them because they were listed as those "Other" parties.
The record indicates that the matter was resolved on 6/18/2020. Notice of Hearing went out for a proceeding scheduled for 7/3/2020 that still included distribution to Hanus and Johnson. Finally realizing that these attorneys (and the parties they had represented) were no longer germane to the case, the

""Thank you for clarifying. BlueTree and Schwach were not parties to this case insofar as the initiating documents listed only you and your ex-spouse as litigants. The case record shows that Schwach/BlueTree was served a "Request for Interrogatories" on or about January 23, 2018. The Court received a Notice of Appearance for two attorneys (Hanus and Johnson) representing Schwach and BlueTree on 2/16/2018 to litigate their request to the court to quash the "Request for Interrogatories." Schwach and BlueTree were added to the case as "Other" parties for the express purpose that they would receive notices of any proceedings that related to their motion to quash. The Court placed a stay on the matter that was resolved at the hearing of 4/18/2018. The Court granted Schwach's/BlueTree's motion to quash. Once that occurred, the parties ceased to be involved in the case, but they continued to receive notices of hearings even though the proceedings did not involve them because they were listed as those "Other" parties.

The record indicates that the matter was resolved on 6/18/2020. Notice of Hearing went out for a proceeding scheduled for 7/3/2020 that still included distribution to Hanus and Johnson. Finally realizing that these attorneys (and the parties they had represented) were no longer germane to the case, the Branch 17 Court Clerk removed them from the case on that same date so that they would no longer receive notices. Electronic Notice Status Change documents were mailed to you on or about June 18, 2020, noting that attorneys Hanus and Johnson were no longer electronic notice parties."

145. Hanus and Johnson were e-file representatives of 'other' parties, their notices are sent only by e-file notification, and they removed themselves on June 18, 2020.[105] [106] Removal of the parties was not needed to impact the e-file notifications. Attorney's that no longer receive notices on a case simply show as withdrawn. For example, the child is still listed as a party to the case, but his guardian ad litem no longer receives notifications or documents.[107] Esqueda's email is indicative of his mischief having occurred which led to and/or occurred during the removal of the corporate parties.

---

Branch 17 Court Clerk removed them from the case on that same date so that they would no longer receive notices. Electronic Notice Status Change documents were mailed to you on or about June 18, 2020, noting that attorneys Hanus and Johnson were no longer electronic notice parties."

[105] Cir. Ct. R. 554. Notice Of E-File Removal D. Hanus, June 18, 2020.
[106] Cir. Ct. R. 555. Notice Of E-File Removal A. Johnson, June 18, 2020.
[107] Cir. Ct. R. 641. Notice of E-File Removal L. Friedrich, Oct. 06, 2020.

1983 Complaint. Prepared by Plaintiff.

146. The corporation was added to the case in 2018. Schiller argued on appeal; the corporate entities were people outside of the case, they made no claims, and Schiller's future interactions with them should not have been ordered.

147. The Cir. Ct. Clerks' addition of the parties of the case in 2018 and in 2020 gave the corporate parties unbridled access to sealed court documents, and this gave them an unfair advantage. The addition of the corporate entities as "other parties" improperly allowed the corporate parties to take advantage of Schiller and Gurman. The corporate parties had access to files with real-time notifications when they should not have had this ease of access. Once added to the case, parties cannot be removed because according to SCR 72.01(12), WCCA must contain an accurate history of the case, a history of the case includes the corporate names.[108]

148. The concealment of the corporate involvement, in this case, was improper. The lack of record searchable by the business' name, Tegria Services Group Inc. (FKA Bluetree Network Inc.), and/or Jeremy Schwach impedes corporate due diligence, and since a sale of the securities was occurring concurrent with litigation in Dane. Cty. Cir. Ct. case 2015FA788, it is logical to assume that during negotiations the corporate parties would have made a diligent effort to discover liabilities as the result of legal conflicts. The impediment to corporate due diligence continues.

---

[108] SCR 72.01 Retention of original record.
SCR 72.01(11) SCR 72.01(11) Family case files. All documents deposited with the clerk of circuit court in every proceeding commenced under ch. 767, stats.: (a) 40 years after entry of judgment of divorce, legal separation, annulment, or paternity, or entry of a final order. (b) 2 years after entry of judgment or entry of a final order for dismissed divorces, legal separations, annulments, and paternity 314 cases.
SCR 72.01(12) Family court record. A history and index of proceedings: (a) 40 years after entry of judgment of divorce, legal separation, annulment, or paternity, or entry of a final order. (b) 2 years after entry of judgment or entry of a final order for dismissed divorces, legal separations, annulments, and paternity cases.

149. Dane Cty. Cir. Ct. clerk's office concealed and damaged records in Schiller's filings which had an effect on her ability to support her arguments on appeal. The most obvious and impactful records damage is the tampering with Cir. Ct. R. 192. The exhibits were tampered with exhibits were removed. According to Wis. Stat. § 946.72, tampering with public records and notices, "s.946.72(1), Whoever with intent to injure or defraud destroys, damages, removes or conceals any public record is guilty of a Class H felony. s.946.72(2) Whoever intentionally damages, alters, removes or conceals any public notice, posted as authorized by law, before the expiration of the time for which the notice was posted, is guilty of a Class B misdemeanor."

150. Cir. Ct. R. 192 contained information on corporate transfer of some software agreements in the exhibits removed by the Dane Cty. clerk's office.

151. Cir. Ct. R. 192 was essential to Schiller's argument for a finding of contempt as a matter of fact. The court of appeals would have had to rely on the transmittal of the record because the Appeals Court clerk's office omitted the appellant's appendix.

152. Cir. Ct. R. 204 shows that the records did in fact exist. At scheduling conference Judge Anderson indicated he had reviewed the contents of the filing and had been unable to read the small faded text of the amortization charts. Schiller then enlarged and resubmitted with Cir. Ct. R. 204. Had there been any other obvious eFile document upload mistakes that occurred upon the circuit court clerks upload of the document, then Schiller would have resolved the upload errors by resubmission as she did with the exhibits submitted with Cir. Ct. R. 204. The mess of exhibits that are currently on the record were not in existence in 2018. Cir. Ct. R. 192 was redacted in 2020, and Cir. Ct. R. 192 was tampered with.

153. On February 9 2023, The Dane Cty. Cir. Ct. clerk's office has assessed fees in violation of Wis. Stat. §19.35 for searches that did not produce records. The requests were for oaths of

office and not part of a ch. 814 civil case.[109]  The amount exceeded actual cost of records

production by $115.00.

154. The other Dane Cty. court case released on March 25, 2021 was Caroll v. Sarko, Wis. Ct.

App. 2020AP001047.[110] The Dane Cty. circuit court official record for 2019SC004635 Carroll

v. Sarko does not contain the court of appeals opinion/decision from March 25, 2021

Opinion/Decision,[111] although the opinion in Wis. Ct. App. 2020AP001047 was a reversal and

required further action in circuit court. Wis. Ct. of App. Statistical Report for March of 2021

records 15 civil opinions released that month,[112] and 9 were Dane County cases.

155. The entry of Court of Appeals Decision, Cir. Ct. R. 659., with a hand file stamp of March 26,

2021[113] facilitated the illusion of proper transmittal and to hint at proper notice.

156. That Esqueda is liable and responsible for the intentional and negligent acts

157. That Esqueda may be held liable according to the finding in *Lowe v. E. Letsinger*, 772 F.2d at

312 (finding the clerk to be liable for their failures to perform a non-discretionary administrative

act.).

158. That Esqueda was party to a conspiracy to violate civil rights.

159. That as public officer or other person authorized by 4 U.S.C. §101 to make or give a certificate

or other writing, and deliver as true such a certificate or writing acts of Esqueda were violations

---

[109] Renee Ramirez, Renee.Ramirex@wicourts.gov, *Oath Documents*. Sent to: vlschiller808@gmail.com, Thu, February 2023 at 10:29 AM. (attached: Schiller inv.pdf).
[110] Wis. Ct. Sys., *WCCAP Case Summary 2020AP001047*, Carroll v. Sarko, at pg. 2, https://wccap.wicourts.gov/caseDetail.do?caseNo=2020AP001047&casheld=548F7E69C6052C5F3EF71D62530F1 083&recordCount=1&offset=0. (Last Visited 02/18/2023)
[111] Wis. Ct. Sys. *CCAP Case Summary 2019SC004635*, Caroll v. Sarko, at pg. 6, https://wcca.wicourts.gov/caseDetail.html?caseNo=2019SC004635&countyNo=13&index=0#records, (Last Visited 02/18/2023).
[112] Wis. Ct. Sys., Wis. Ct. of App. Monthly Statistical Report March 2021, https://wistatedocuments.org/digital/search, (enter in advanced search field 'Wisconsin court of appeals,' navigate to march 2021, select march 2021 statistical report document, download).
[113] Cir. Ct. R. 659. Ct. of App. Decision, March 26, 2021.

of 18 U.S.C. § 1018, 18 U.S.C. § 1018 – Official certificates or writings, Whoever, being a

public officer or other person authorized by any law of the United States to make or give

certificate or other writing, knowingly makes and delivers as true such a certificate or writing

containing any statement which he knows to be false, in a case where the punishment thereof

is not elsewhere expressly provided by law, shall be fined under this title or imprisoned not

more than one year or both.

160. The acts and omissions of Esqueda as a government employee are class I felony according to

Wis. Stat. § 946.12 misconduct in public office

161. The acts and omissions of Esqueda as a government employee are class H felony according

to and/or Wis. Stat. § 946.72 tampering with public records and notices.

162. That as a result of Esqueda's intentional and negligent acts Schiller has incurred legal

expenses, was injured, has incurred expenses for medical treatment, and will incur further likes

expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered

loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of Dane County Circuit Court Deputy Clerk Eileen Kilbane**

Plaintiff realleges paragraphs 1 through 162 as though set forth at length and in detail herein.

163. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the

intentional and/or negligence of Kilbane her official capacity in violation of U.S. Const. 14th

amendment in one or more of the particulars alleged herein:

164. That Schiller's Affidavit in Support of a Finding of Contempt, Cir. Ct. R. 192., Feb. 26 2018.,

was negligently and/or intentionally damaged by Eileen Kilbane. In 2018 the court held a series

of scheduling and telephone conferences. During these pre-hearing meetings at the status

conference on January 5, 2018,[114] the court requested that Schiller clarify her motions for

enforcement of the marital settlement property agreement by writing better explanations.

Further in-depth explanations were submitted. *See Generally* Cir. Ct. Rs. 186[115] 187[116] 192[117]

204[118] Then at the status conference on March 1, 2018,[119] the court asked Schiller to resubmit

the amortization charts because the scan was not legible.[120] Schiller agreed and re-submitted

Letter with Re-Submission of the Court Requested exhibits 30-34 from Victoria's Motion and

Motion for Clarification of Judgement and Affidavit in Support Clarification of Judgement Cir.

Ct. Rs 204[121] 205[122] 206[123] 207[124] 208[125] 209.[126]An additional status conference was held on

March 19, 2018.[127] The court issued Notice of Hearing on April 18, 2018. Cir. Ct. R. 213.[128]

At that time the court had not indicated any disarray in the electronic file of the document

uploaded by the clerk, but the current version of the document is damaged.

165. Kilbane communicated with the court of appeals to transmit conspiratorial messages by way

of email sent on March 2, 2021 to Manthei and Donnelly.[129] These communications reflect

---

[114] Cir. Ct. R. 166. Notice of Hearing Status Conference prior to De Novo Scheduled for 01-05-2019, Dec. 19, 2017.
[115] Cir. Ct. R. 186. Victoria's Motion for Dismissal of Theodore's request for a finding of contribution to his legal fees and expenses and affidavit in support of dismissal. Feb. 21, 2018.  A Quit Claim deed is not needed prior to listing a home for sale, Feb. 21, 2018.
[116] Cir. Ct. R. 187. Victoria's Motion and Motion for Clarification of Judgement and Affidavit, Feb. 20, 2018.
[117] Cir. Ct. R. 192. Victoria's Affidavit in support of a finding of contempt, Feb. 26, 2018.
[118] Cir. Ct. R. 204. Letter with Re-Submission of the Court Requested exhibits 30-34 from Victoria's Motion and Motion for Clarification of Judgement and Affidavit in Support Clarification of Judgement, March 7, 2018.
[119] Cir. Ct. R. 183. Notice of Hearing scheduled for 03-01-2018.  Feb. 20, 2018.
[120] Cir. Ct. R. 187. Victoria's Motion and Motion for Clarification of Judgement and Affidavit, Feb. 20, 2018.
[121] Cir. Ct. R. 204. Letter with Re-Submission of the Court Requested exhibits 30-34 from Victoria's Motion and Motion for Clarification of Judgement and Affidavit in Support Clarification of Judgement, March 7, 2018.
[122] Cir. Ct. R. 205. Exhibit 30 cash settlement payment summary, March 7, 2018.
[123] Cir. Ct. R. 206. Exhibit 31 amortization schedule, March 7, 2018.
[124] Cir. Ct. R. 207. Exhibit 32 amortization schedule, March 7, 2018.
[125] Cir. Ct. R. 208. Exhibit 33 payments received towards cash settlement payment, March 7, 2018.
[126] Cir. Ct. R. 209. Exhibit 34 current unapplied funds nonconforming payments. March 7, 2018.
[127] Cir. Ct. R. 197. Notice of hearing scheduled for 03-19-2018, March 1, 2018.
[128] Cir. Ct. R. 213. Notice of hearing on 04-18-2018, March 19, 2018.
[129] Eileen Kilbane. Eileen.Kilbane@wicourts.gov, *2019AP2419 Schiller v Gurman*. Sent To: Jamie Donnelly Jamie.Donnelly@wicourts.gov  and Benjamin Manthei Benjamin.Manthei@wicourts.gov, Mon. March 2, 2020. 7:51 AM.

1983 Complaint. Prepared by Plaintiff.

Kilbane's having been affected by Gurman's malicious and vindictive public relations campaign. The public relations efforts resulted in many similar instances of inflicted indirect harassment along with many inflictions of injury to the person. Motions to extend time serve the purpose of extending the date to file the record. Such motion was filed on March 3, 2020 by user 0329 (Esqueda, Carlo).[130] That the phrasing "have a good one" in Eileen's email served the purpose of relay to the supreme appeals court clerk's office that circuit court employees had taken a side in the case. It served to generate a gang mentality, and further served to mock Schiller.

166. Kilbane is liable and responsible for the intentional and negligent acts.

167. Kilbane may be held liable according to the finding in *Lowe v. E. Letsinger*, 772 F.2d.at 312. (finding the clerk to be liable for their failures to perform a non-discretionary administrative act.).

168. That Kilbane was party to the conspiracy to violate civil rights.

169. That as a result of Kilbane's intentional and/or negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.


**Official Capacity of Dane County Circuit Court Branch 17 Clerk Jamie Donnelly**

Plaintiff realleges paragraphs 1 through 169 as though set forth at length and in detail herein.

---

"Good Morning, There was a Motion to supplement the record filed on 02/28 (Not that it was forwarded to me.........argh). So just a heads up - the record may not be sent today. Have a good one   Eileen."

[130] Sheila Reiff. *Public Records Response AP-9000, 03/2005 Docket Card 2019AP002419*, Feb. 9, 2023.

170. That the injuries and damages sustained by Plaintiff were caused, in whole or in part, by the intentional and/or negligence of Donnelly her official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

171. Donnelly conspired to have made entries unto CCAP in a manner to that intentionally smeared Schiller.

172. Donnelly conspired to use CCAP to communicated with persons party to the conspiracy.

173. Donnelly made entries unto CCAP intentionally to exposed private information of Schiller.

174. Donnelly conspired to schedule and/or scheduled hearings with disregard for the length of time necessary for the party to respond.

175. Donnelly conspired to schedule and/or scheduled hearings and/or notified parties of hearings on binding an arbitration award though binding an arbitration award not permissible pending appeal according to Wis. Stat. § 808.075.

176. Donnelly conspired to have corporate entities added as "other parties" to Dane Cty. Cir. Ct. case 2015FA788 and conspired to give corporate entities electronic access to the circuit court files in Dane Cty. Cir. Ct. case 2015FA788.

177. Donnelly damaged documents and destroyed exhibits filed by Schiller. The submission of a specimen of bugs was destroyed.

178. Donnelly accepted documents for filing in Dane Cty. case 2015FA788 without adherence to Wisconsin statutes on submission of an award in binding arbitration documents submitted for the binding do not include the contracts for arbitration or complete transcript as required by Wis. Stat. § 788.14.

179. That Donnelly may be held liable according to the finding in *Lowe v. E. Letsinger*, 772 F.2d.at 312. (finding the clerk to be liable for their failures to perform a non-discretionary administrative act.).

180. Donnelly was party to the conspiracy to violate civil rights.

181. Donnelly did not intervene to prevent violation of civil rights.

182. That as a result of Donnelly's intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

### Official Capacity of Dane Cty. Cir. Ct Branch 17 Clerk Jo Welsh

Plaintiff realleges paragraphs 1 through 182 as though set forth at length and in detail herein.

183. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Welsh in her official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

184. On June 2, 2020, Welsh entered the rejection of, Objection. Cir. Ct. R. 536.[131] with the reason of because the filing was more than one page in length.

185. Welsh conspired to made entries unto CCAP in a manner to that intentionally smeared Schiller and/or overexposed private information,[132]

186. Welsh used CCAP to communicate with persons party to the conspiracy.

---

[131] Cir. Ct. R. 536. Objection, June 2, 2020.
[132] Wis. Ct. Sys., CCAP Case Summary 2015FA788,
https://wcca.wicourts.gov/caseDetail.html?cseNo+2015FA00788&countNo+13&index+)#records (Last visited 05-27-2022).

§ 1983 Complaint Prepared by Plaintiff.

187. Welsh conspired to make entries unto CCAP intentionally to exposed private information of Schiller.[133]

188. Welsh conspired to schedule and/or scheduled hearings with disregard for the length of time required by law for response.

189. Welsh conspired to schedule and/or scheduled hearings on matters not permissible pending appeal.

190. Welsh gave corporate entities electronic access to the circuit court files in Dane Cty. Cir. Ct. case 2015FA788.

191. Welsh may be held liable according to the finding in *Lowe v. E. Letsinger*, 772 F.2d.at 312 (finding the clerk to be liable for their failures to perform a non-discretionary administrative act.).

192. Welsh was party to the conspiracy to violate Plaintiff's civil rights.

193. Welsh did not intervene to prevent violation of Plaintiff's civil rights.

194. That as a result of the Welsh's intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Official Capacity of Dane County Circuit Court Branch 17 Court Reporter Theresa Groves**

Plaintiff realleges paragraphs 1 through 196 as though set forth at length and in detail herein.

---

[133] Wis. Ct. Sys., CCAP Case Summary 2015FA788,
https://wcca.wicourts.gov/caseDetail.html?cseNo+2015FA00788&countNo+13&index+)#records (Last visited 05-27-2022).

195. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Groves in her official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

196. Groves made entries unto CCAP in a manner to that intentionally smeared Schiller and unnecessarily reveled private information such as the amounts of money. *See generally* Wis. Ct. Sys., *CCAP Case Summary 2015FA788.*[134]

197. Groves made adjustments to the July 31, 2019 Transcript at the request of conspirator, Judge Anderson. In ex parte communications, Judge Anderson said if Schiller were to bring up fraud, he would take excessive fees and legal costs. Cir. Ct. R. 424. at 17:22 – 17:25.[135] The Judge's question posed was rhetorical, Judge Anderson's tone was that of a threat. Schiller cried. Though the transcript records the judge as saying a he would take a quarter of a million dollars, but the judge said half a million dollars. Changes to this transcript are not unlikely because the redacted version of the July 31 2019 Transcript was to be a redaction of the ex parte portions, but the current version of the July 31 2019 Transcript includes the removal of the portions of the hearing which occurred after ex parte concluded. When the adverse parties returned to the courtroom, Judge Peter Anderson announced his opinion on Schiller's mental health, and un-motioned for and unheard matter. The events which transpired violated the standards of Judicial Ethics in SCR 60.04. The statements which should exist on the transcript were indicative of how he would decide the case. The judge's ex parte communication had an effect on the substance of the proceeding. This violates SCR 60.04(g). This instructed Menting and Gurman

---

[134] Wis. Ct. Sys., CCAP Case Summary 2015FA788,
https://wcca.wicourts.gov/caseDetail.html?cseNo=2015FA00788&countNo=13&index+)#records (Last visited 05-27-2022).
[135] Cir. Ct. R. 424. at 17:22 – 17:25. July 31, 2019 Transcript with Ex Parte. Feb. 14, 2020.

1983 Complaint. Prepared by Plaintiff.

on how to proceed. Further hearing of the matters were delayed. The judge explained his

reason for the delay in the July 31, 2019 Transcript as because there was no opportunity for

profit. Cir. Ct. R. 423 at 34:18. [136]

198. Groves used CCAP to communicate with persons party to the conspiracy.

199. Groves made entries unto CCAP intentionally to exposed private information of Schiller. [137]

200. That Groves may be held liable according to the finding in *Lowe v. E. Letsinger*, 772 F.2d.at

312 (finding the clerk to be liable for their failures to perform a non-discretionary administrative

act.).

201. Groves was party to the conspiracy to violate Plaintiff's civil rights.

202. Groves did not intervene to prevent violation of Plaintiff's civil rights.

203. That as a result of the Groves' intentional and negligent acts Schiller has incurred legal

expenses, was injured, has incurred expenses for medical treatment, and will incur further likes

expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered

loss of her enjoyment of life; and has suffered actual monetary losses.


**Count Two – Defendant Anthony Menting**

Plaintiff realleges paragraphs 1 through 203 as though set forth at length and in detail herein.

204. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the

intentional and/or negligence of Menting in his personal capacity in violation of U.S. Const.

14th amendment in one or more of the particulars alleged herein:

---

[136] Cir. Ct. R. 423 at 34 July 31, 2019 Transcript, Feb. 14, 2020.
[137] Wis. Ct. Sys., CCAP Case Summary 2015FA788, at pg, 18 of 78,
https://wcca.wicourts.gov/caseDetail.html?cseNo+2015FA00788&countNo+13&index+)#records, (Last visited 05-27-2022).

205. Menting, Gurman, and guardian ad litem were required by Wis. Stat. § 822.29 to submit to the court record of any other proceeding concerning the custody and placement of the child in affidavit and/or sworn testimony, and failed to do so. The omission of information from: the protective order prohibiting the father from contact with the child issued Aug. 4, 2016, as part of child protective services investigation Dane Cty. Soc. Servs. Case 8429681;[138] Stipulation, Cir. Ct. R. 044.;[139] Stipulation and Amended Order. Cir. Ct. R. 048.;[140] Partial Marital Settlement Agreement Regarding Cust. and Placement, Cir. Ct. R. 109.,[141] Temporary Order, Cir. Ct. R. 320.;[142] Amended Temporary Order Regarding Arbitration and Placement Study. Cir. Ct. R. 332., [143] enabled the adjudication of the modification of custody and placement void of context.

206. Though not permitted pending appeal in Wis. Stat. § 808.075, the defendants: Menting, Gurman, Falk, and Friedrich participated in and sought a binding an arbitration award on custody and placement timed for tactical and as harassment by the definition of Wis. Stat. § 947.013(1m)(b).

207. Defendants Menting, Gurman, Falk, Friedrich filed frivolous motions and proceeded in unconstitutional proceedings in a scheme to generate excessive fees. Schemes to generate excessive fees offends the Due Process Clause. The Fifth Circuit. found such schemes to violate the Due Process Clause in *Cain v. White*, 937 F.3d 446 (5th Cir. 2019). (holding that Orleans

---

[138] Wis. Ct. of App. R. __ Objection at 35-47. Jan. 12, 2023. (Dane Cty. Soc. Servs. Case 8429681 Master file).
[139] Cir. Ct. R. 044. Stipulation Case, Sept. 9, 2016.
[140] Cir. Ct. R. 048. Stipulation and Amended Orde, Sept. 21, 2016.
[141] Cir. Ct. R. 109. Partial Marital Settlement Agreement Regarding Custody and Placement, April 24, 2017.
[142] Cir. Ct. R. 320. Temporary Order Regarding Custody and Placement; Order Regarding Arbitration and Placement Study, Sept. 9, 2019.
[143] Cir. Ct. R. 332. Amend. Temp. Order Regarding Cust. and Placement; Order Regarding Arbi. and Placement Study, Sept. 26, 2019.

Parish judges violated the Due Process Clause through an unconstitutional practice for collecting criminal fines and fees.).

208. On July 31, 2019, Menting and Gurman claimed they were unable to pay Schiller the proceeds owed to her according to the contract because the dentist bill and therapy bill had not been determined in court. This was an absurd claim, and shows they intended to use the money tactically and as leverage. The judge accepted the absurd claim without question as if it was part of a mutual plan. The bills were for a few hundred dollars. Menting claimed: "The priority would be for the Court to determine the amount that Ms. Schiller is owed under the cash settlement payment so we can issue a check to her and extinguish any lien rights. Unfortunately, we are unable to determine the amount due and owing unless you address the prior issues, which are the attorney fees and requests and the amount owed for the child's counselor and dentist."[144] July 31, 2021 Transcript Cir. Ct. R. 423 at 2-3.. Further hearing of the matters were delayed.

209. Menting, Gurman, Friedrich, and Falk planned to force arbitration despite the fact that mediation is required. Falk knew the proper requirements and says:

"Finally, as for your placement and custody motion, please note that the PMSA requires the parties to do mediation first, then arbitration if mediation does not resolve the issues. I will be reminding the Court of this requirement and seek a cancelation of the upcoming hearing before Commissioner Floeter on that basis. In the meantime, can we agree to a joint request for a referral to FCS for mediation to get that process started? Also, can we start discussing an arbitrator for the dispute if it does not resolve in mediation? I will need time to discuss this all with Victoria before finalizing or agreeing on an arbitrator."[145]

Shane Falk, shanefalk@gmail.com, *Re: Schiller/Gurman*, Sent to: amenting@staffordlaw.com, , *Re: Schiller/Gurman* , Monday, August 19, 2019 2:30 PM

In response Menting says, "As you can see by Tory's filings, I was not expecting any cooperation from her on any of the issues. Also, Tory appeared to be suffering more recently, and I believe that a court filing was necessary to see if immediate changes to placement were

---

[144] Cir. Ct. R. 423 at 2-3. July 31, 2019 Transcript, Feb. 14, 2020.
[145] Shane Falk, shanewfalk@gmail.com, *Subject. Re: Schiller/Gurman*, Sent To Menting, amenting@staffordlaw.com, Monday, August 19, 2019 2:30 PM.

1983 Complaint. Prepared by Plaintiff.

necessary for Benny's best interests. If arbitration is pursued, we still require an order to address the mandates of the local court rule re: FCS and GAL. I propose we get the GAL's input on these issues soon."[146]

> Anthony Menting amenting@staffordlaw.com, Re: Schiller / Gurman, Sent to: shanewfalk@gmail.com, sblanke@staffordlaw.com. Monday, August 19, 2019 3:05 PM.

Falk: "Please find attached the letter I mentioned in my email to you, with respect to mediation/arbitration and the request that Comm Floeter cancel Monday's hearing. I did e-file this tonight."

> Shane Falk, shanefalk@gmail.com, Re: Schiller/Gurman, Sent to: amenting@staffordlaw.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com, Tuesday, August 20, 2019 11:32 PM.

The letter from Falk puts up a weak resistance with a request to cancel the hearing.[147]

Correspondence from Falk Cir. Ct. R. 282., Aug. 20, 2019. Menting states, "While the language in the MSA does indeed require mediation and arbitration, we believe that it does not prevent temporary orders."[148] Correspondence from Menting Cir. Ct. R. 283., Aug. 21, 2019.

> Anthony Menting replies. "We need to discuss arbitrators."

> Anthony Menting, amenting@staffordlaw.com, Re: Schiller / Gurman, Sent to: shanewfalk@gmail.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com. Wednesday, August 21, 2019 12:29 PM.

The arguments in the Correspondences are without legal grounds. Arbitration is a process in which fees are created, whereas mediation is a process that would not involve Friedrich and Falk.

Falk: "I am copying GAL Friedrich on this email now that she is also involved. I am hoping we can have a three-way phone conference to discuss how to proceed with this case; however, please note that I am in Court in Janesville all afternoon Wed, in client meetings all Thursday

---

[146] Shane Falk, shanewfalk@gmail.com, RE: Schiller/Gurman. Tuesday, To: Menting amenting@staffordlaw.com, Shari L. Blanke, sblanke@staffordlaw.com; 'Lisa Friedrich, lisa@musialandfriedrich,com, Tuesday. Monday, August 19, 2019 3:05 PM.
[147] Cir. Ct. R. 282. *Correspondence from Falk*, Aug. 20, 2019.
[148] Cir. Ct. R. 283. *Correspondence from Menting*, Aug. 21, 2019.

1983 Complaint. Prepared by Plaintiff.

morning, and observing parents at FCS Friday morning. That doesn't leave us much time to fit something in before Monday."[149]

Shane Falk, shanewfalk@gmail.com, RE: Schiller/Gurman. Tuesday, To: Menting amenting@staffordlaw.com, Shari L. Blanke, sblanke@staffordlaw.com; 'Lisa Friedrich, lisa@musialandfriedrich.com, Tuesday. August 20, 2019 11:32 PM.

Menting: "We need Lisa to let us know when she is prepared for this call, as I believe she meets with both parents this week. It looks like Thursday afternoon would work."[150]

Anthony Menting amenting@staffordlaw.com, Re: Schiller / Gurman, Sent to: shanewfalk@gmail.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com. Wednesday, August 21, 2019 12:29 PM.

Correspondence from Friedrich offers. "Under the circumstances and recent allegations, I also believe that mediation should be waived."[151]  While planning arbitration the three agree to meet, and seem to reach an understanding that there is a need for the involvement of Friedrich which occurs only in litigation or arbitration.  Falk agreed to provide for the release of the securities, though the need to release the encumbrance on the securities only existed because Gurman and the corporation were breaking the contractual agreement.  Though not required if terms are met, Falk offers to make a recommendation and appeases Menting, on Monday, August 19, 2019 2:30 PM. And says:

"Second, the MSA does NOT require Victoria to sign any "General Release" of all known and unknown claims.  I will NOT advise her to sign such a comprehensive release.  I will recommend (and I believe today she agreed) she would sign a release of the stock as collateral, but that is the extent of anything that she should need to sign.  Nothing more."[152]

---

[149] Shane Falk, shanewfalk@gmail.com, RE: Schiller/Gurman. Tuesday, To: Anthony J. Menting amenting@staffordlaw.com, Shari L. Blanke, sblanke@staffordlaw.com; 'Lisa Friedrich, lisa@musialandfriedrich.com, Tuesday. August 20, 2019 11:32 PM.

[150] Anthony Menting, amenting@staffordlaw.com, RE: Schiller/Gurman, Sent To:shanewfalk@gmail.com Cc: Shari L. Blanke sblanke@staffordlaw.com Wednesday, August 21, 2019 12:29 PM.

[151] Cir. Ct. R. 284. Correspondence from Friedrich., Aug. 22, 2019.

[152] Shane Falk, shanefalk@gmail.com, Re: Schiller/Gurman, Sent to: amenting@staffordlaw.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com, Tuesday, August 20, 2019 11:32 PM. (Falk, forwarded Re: Schiller / Gurman chain to Schiller).

Falk, shanefalk@gmail.com, *Re: Schiller/Gurman,* Sent to: amenting@staffordlaw.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com, Tuesday, August 20, 2019 11:32 PM.

In response Menting says,

"Understood. We need her to release any and all lien rights in the shares, as well as to satisfy the judgment to reflect full receipt of the Cash Settlement Payment."[153]

Menting, amenting@staffordlaw.com, *Re: Schiller / Gurman,* Sent to: shanewfalk@gmail.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com, August 19, 2019 3:05 PM.

Within the context of the hearings that understanding seems to be cooperation between Falk

and Menting to do what Menting wants regardless of the best interest of Schiller.

Falk, "I recognize that you believe the press release indicates that the stock was sold, please just provide me with "written documentation" of the date(s) and amount(s) of the payment to Mr. Gurman (for my records and because it was required.)"[154]

Falk, shanefalk@gmail.com, *Re: Schiller/Gurman,* Sent to: amenting@staffordlaw.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com Monday, August 19, 2019 2:30 PM.

Menting responds, "The 7/9/19 letter from Blue Tree confirms the shares sold. I acknowledge that the letter does not provide the exact closing date of the sale transaction. However, we know it occurred no later than July 9. You also have the press release verifying sale. Ted does not have anything else to provide you."[155]

Menting, amenting@staffordlaw.com, *Re: Schiller / Gurman,* Sent to: shanewfalk@gmail.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.comRe: Schiller/Gurman, Wednesday, August 21, 2019 12:29 PM.

210. Arbitration proceedings occured without summons or filing of documents.

---

[153] Anthony Menting, amenting@staffordlaw.com, *Re: Schiller / Gurman,* Sent to: shanewfalk@gmail.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com, Monday, August 19, 2019 3:05 PM. (Falk, forwarded *Re: Schiller / Gurman* chain to Schiller).

[154] Shane Falk, shanefalk@gmail.com, *Re: Schiller/Gurman,* Sent to: amenting@staffordlaw.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com, Monday, August 19, 2019 2:30 PM. (Falk, forwarded *Re: Schiller / Gurman* chain to Schiller).

[155] Menting, amenting@staffordlaw.com, *Re: Schiller / Gurman,* Sent to: shanewfalk@gmail.com, sblanke@staffordlaw.com; lisa@musialandfriedrich.com, Wednesday, August 21, 2019 12:29 PM. (Falk, forwarded *Re: Schiller / Gurman* chain to Schiller).

211. Defendants Menting, Gurman, Falk, Friedrich forced the corruptly procured binding arbitration process to transfer custody of the child to Gurman regardless of Gurman's sexual abuse of the child, so as to have the custody modification heard without context and without the evidence of abuse in Soc. Servs. Report Case 8429681, the recording of the safe harbor interview from August 4, 2016, the Madison Police Dep't case 2016-270509, and the Sun Prairie Police Incident SP1600014645.

212. On August 13, 2019, Menting filed Gurman's motion to litigate custody pursuant to Wis. Stat. § 767.451, for temporary emergency removal, and request for the appointment of a specific guardian ad litem,[156] [157] Cir. Ct. R. 278. and Cir. Ct. R. 279. indicating Menting had conspired with Friedrich stating, "Counsel has contacted Atty. Friedrich and requests the court schedule the temporary order hearing 30 days from her reappointment so there is sufficient time for the Guardian ad Litem to complete an initial investigation.," The Dane County court house rules state only that, "Both parties may request a specific guardian ad litem by mutual agreement."[158] Appointments based on the request of one party would clearly lead to corrupt proceedings as occurred in this case. This guardian ad litem had been removed from the case by stipulation terms: "VI. GUARDIAN AD LITEM. "The Guardian ad Litem is discharged as of the date of divorce." Cir. Ct. R. 113 at 5.[159] Cir. Ct. R. 278 was a motion to violate the agreement which had removed Friedrich as Guardian ad Litem in seeking the specific reappointment of Friedrich.[160]

---

[156] Cir. Ct. R. 278. Jt. Pet. Husband's Motion to Modify Legal Cust. and Phy. Placement, for Temp. Order, and Pet. To Reappoint Guardian ad Litem, Aug. 13, 2019.
[157] Cir. Ct. R. 279. Aff. of Gurman In Supp. of Motion to Modify Legal Cust. and Placement, Aug. 13, 2019.
[158] Wis. Ct. Sys. Dane Cty. Court House Rules. at 409.
[159] Cir. Ct. R. 113 at 5. Partial Marital Settlement Agreement Regarding Custody and Placement, April 27, 2017.
[160] Cir. Ct. R. 278. Jt. Pet. Husband's Motion to Modify Legal Cust. and Phy. Placement, for Temp. Order, and Pet. To Reappoint Guardian ad Litem, Aug. 13, 2019.

213. In pursuit of conspiracy and scheme to generate excessive fees, the day after the August 26,

2019 hearing on temporary removal, Menting filed his proposed order reflecting the selection

of Arbitrator Judge Sumi on August 27, 2019.[161]

> "1. The divorce judgment requires any custody and placement disputes to be resolved by arbitration. The parties and Guardians ad Litem stipulated that Hon. Maryann Sumi, retired, will act as arbitrator of any disputes regarding custody and placement. The parties and Guardians ad Litem shall contact Judge Sumi forthwith to determine her availability for this matter and scheduling. The parties and Guardians ad Litem shall return to court for an alternative arbitrator if Judge Sumi is unable to act.
> 2. Arbitration will be conducted pursuant to the rules and procedures set forth by Judge Sumi, Wis. Stat. chs. 767 and 788, and Wis. Stat. sec. 802.12. Any discovery disputes, requests for amended temporary orders, scheduling orders and any other matters necessary to bring this case to a conclusion will also be submitted to binding arbitration with Judge Sumi. Any Order entered by the arbitrator will be filed with the court for confirmation
> 3. The parties and Guardians ad Litem stated that mediation should be waived. Mediation is waived." Cir. Ct. R. 293.

and on that same day, without mutual stipulation or agreement, Menting sent an email to

confirm the Arbitrator Judge Sumi.[162] The only stipulation with terms for arbitration was in the

custody and placement stipulation, filed April 24, 2017, which became part of the original

divorce agreement.[163] This violated the stipulation:

> "H, Dispute Resolution Procedure. In the event any dispute or disagreement arises regarding the terms of legal custody or physical placement as set forth herein, the parents agree to seek the services of a mutually-agreed upon mediator for resolution of the conflict. Absent an emergency related to the child's safety, neither party shall seek or institute proceedings for modification of this custody arrangement by litigation without first having sought and attempted to resolve their conflicts through mandatory mediation. Should mediation fail, the parties agree to both parents agree to submit their dispute to arbitration by a mutually agreeable arbitrator, who shall have the authority to make decisions which are binding unless not confirmed by the Court." Cir. Ct. R. 109.[164]

---

[161] Cir. Ct. R. 293. Prop. Temp. Order Regarding Custody and Placement Order Regarding Arb., Aug. 27, 2019.
[162] Cir. Ct. R. 321. at 11-17. Summary of Pending Matters, Sept. 09, 2019.
[163] Cir. Ct. R. 109. Partial Marital Settlement Agreement Regarding Custody and Placement, April 24, 2017.
[164] Cir. Ct. R. 109. Partial Marital Settlement Agreement Regarding Custody and Placement, April 24, 2017.

There was no agreement or contract to arbitrate with Judge Sumi or any other arbitrator. Schiller sought a denovo in Cir. Ct. R. 299.[165] and objected in Cir. Ct. R. 312.[166] Schiller specifically requested a date for hearing the denovo in Cir. Ct. R. 315.[167] Commissioner Floater entered the proposed order as final order of the court on Sept. 09, 2019. Cir. Ct. R. 320.

214. Menting, Gurman, Friedrich, and Falk persisted at their plot for binding arbitration without mediation, despite the fact that arbitrator Judge Sumi did not have subject matter jurisdiction required to hear and decide this matter. The modification in 2019 was not an instance in which the arbitrator could obtain subject matter jurisdiction because the state court had entered a 2017 decision pursuant to Wis. Stat. § 822.21, and jurisdiction to modify was not available under Wis. Stat. § 822.23 because neither parties or child had changed their residency status.

215. Menting, Gurman, Friedrich, and Falk dictated the terms of the private study with the coordinator of their choosing, Anday by inserting the selection into the proposed order Cir. Ct. R. 293.[168]

216. Aug. 28, 2019 a hearing was scheduled for and conducted on September 10, 2019, hearing, the Judge refused to hear the matter of the de novo and instructed the parties to handle the issue of mediation outside of court.[169] Matters heard were requests for money, and Gurman and Menting's Cir. Ct. R. 291.,[170] Falk's Cir. Ct. R. 294.,[171] Friedrich's Cir. Ct. R. 296.[172] The requests were without legal reasoning or grounds. Friedrich further requested to base all new

---

[165] Cir. Ct. R. 299. Victoria Schiller's Notice of Motion An Motion For A De Novo Hearing on the Decisions Made At The August. 26 Hearing, Aug. 30, 2019.
[166] Cir. Ct. R. 312. Objection to the Temp. Order. Sept 4, 2019.
[167] Cir. Ct. R. 315. Request for the Court to Set a Denovo Hearing on the Temporary Order, Sept. 4, 2019.
[168] Cir. Ct. R. 293. Prop. Temp. Order Regarding Custody and Placement Order Regarding Arb., Aug. 27, 2019.
[169] Cir. Ct. R. 405. Sept. 10, 2019 Transcript, Jan. 06, 2020.
[170] Cir. Ct. R. 291. Jt. Pet. Husband's Mot. Regarding Financial Issues, Aug. 27, 2019.
[171] Cir. Ct. R. 294. Correspondence from Falk re Cash Settlement and Contempt, Aug. 27, 2019.
[172] Cir. Ct. R. 296. Correspondence from Friedrich re trust account money, Aug. 29, 2019.

expert opinions on the report of Waldron and to distribute that report to anyone asked to formed

support for the previous report.[173] "I am writing to request that as Guardian ad Litem for the

minor child, that I be allowed to release Dr. Waldron's report to my experts, as well as to Ms.

Shelly Anday, who is doing the current study. Further release would be only pursuant to Court

Order." Cir. Ct. R. 297.

217. The results of the Sept. 10, 2019 hearing were titled 'Order For Private Custody and

Placement Study' and contained terms such as: A. Additional fees may be charged by the

Evaluator to the party making allegations of physical or sexual abuse of a party or child, serious

addiction issues or major mental health concerns. These additional fees will be charged by the

Evaluator to investigate these matters at a rate of $150.00 per hour. If the Evaluator determines

it necessary, she may require an additional retainer from the requesting party."    In the

conspiracy's effort to protect Anday from the planned negligence the orders says. "The

evaluator is hereby designated as a court appointed expert within the meaning of Section 907.06

Wis. Stats.; and as such, shall be granted quasi-judicial immunity and indemnified against any

claims of negligence in the conduct of the study"  If such a designation is possible then that

designation results in an avalanche of other requirements.   Provision of the report to the

opponent would be required according to the laws of Wis. Stat. § 907.07, but the court ordered

the Anday report shall NOT be provided to Schiller.  Anday primary served as a hearsay conduit

for anonymous claims. Wis. Stat. § 907.02, "This section does not give license to the proponent

of an expert to use the experts solely as a conduit for the hearsay opinions of others." *Walworth*

*County v. Therese B.*, 203 WI App 223, 267 Wis. 2d 310, 671 N.W.2d 377, 03-0967.    The

Anday report does not rely on statistics or claims supported by facts, the report bases subjective

---

[173] Cir. Ct. R. 297. Request for Report, Aug. 29, 2019.

1983 Complaint. Prepared by Plaintiff.

upon subjective and hides the sources instead of verifying claims and statements within. Anday's report was not formed, delivered, or held to the standard of an expert's report. In Cir. Ct. R. 442., Schiller will not be provided with copies or the redacted reports or any portion thereof.[174]

218. On the Sept. 10, 2019 Transcript, Judge Anderson says what Commissioner Floater did was ultra vires, acknowledging the court had exceeded its power, which is a violation of the due process clause of the Constitution. Cir. Ct. R. 405 at 5.[175] The Sept. 10, 2019 Transcript reflects that the court ordered arbitration and private studies with assigned participants knowing it was unconstitutional. Cir. Ct. R. 405. The orders are a violation Wis. Const. art. 1. §§ 5 and 9. The order to binding arbitration inflicted an legal process on Schiller that is in violation of Wisc. Stat. § 822.22 and Wisc. Stat. § 802.12. The judge even slips and says the decision is subject to a constitutional judge's review.

> "THE COURT: And it seems like everybody has a right to have those de novoed. The court commissioner's decisions are always <u>subject to a constitutional judge doing it</u>. And if we didn't want -- I mean, I understand your feeling that that was the right way to go. But it sort of seems like having gone on that path, you know, this is what we're stuck with. It would have been okay if you guys had said -- you guys, you guys -- I've got to correct my slang -- if you folks had said this is not an emergency. We want it through arbitration or mediation/arbitration, and then Dan Floeter could have addressed that. And -- or if he wouldn't even have addressed it. You would have just asked for that.
> MR. MENTING: But then the child wouldn't -- wouldn't be in the situation that the commissioner was concerned about.
> THE COURT: Yeah. Yeah. So it's maybe what we call an emergency, yeah. You guys took the position. It was an emergency. I think today you've got to take the position at least was. And if we were to vacate it, it would again be an emergency.
> MR. MENTING: Correct.
> THE COURT: Yeah. There is no provision for the arbitrator to do a de novo review de novo hearing on an emergency motion, I don't think. So it seems to me I kind of

---

[174] Cir. Ct. R. 442
[175] Cir. Ct. R. 405 at 5. Sept. 10, 2019 Transcript, Jan. 06, 2020.

think the better procedure would be for us to do it. I agree with you. Why spend all that time and effort on two proceedings? Nevertheless, it's the box where we painted ourselves into, or I guess the corner we painted ourselves into. And Dan Floeter kind of ordered -- let's see what he ordered here. I know he ordered mediation.

MR. MENTING: The mediation was waived upon the agreement of the parties?

THE COURT: Okay. So arbitration?

MR. MENTING: Right.

THE COURT: Was that agreed to by the

MR. MENTING: They -- they agreed to Judge Sumi, but I do not believe they -- I -- I think it was almost a -- it needs to be arbitrated. It's Attorney Falk's position, my position, and the GAL's position, where anything afterward would be subject to arbitration...[176]

Schiller had not stipulated to Judge Sumi doing Arbitration, nor had she stipulated to undergoing Anday's study. Menting ordered an agreement and submitted it under a 7-day rule. There wasn't an emergency. There was truly no reason for the removal of the child from his home. The de novo was not withdrawn, but it was refused for hearing

MR. MENTING: We cannot do arbitration because the study order for Ms. Anday has not yet been signed. It was submitted under the 7-day rule.

THE COURT: To who, me? Or

MR. MENTING: Commissioner Floeter because he held the hearing.

THE COURT: Yeah.

MR. MENTING: So once that is signed, Ms. Anday can start her study process. Generally speaking, she asks for the same amount of time that FCS would ask for. But -- well, she is also able to expedite it because she's not under the case load.[177]

The judge mocks Schiller's August 30, 2019 orders, and misstates the law as follows:

"It says, additionally, the parties must provide the court with a certified written custody/physical placement study as stated in section -- in Wis. Stat. Section 767.405(14). And well, we can -- yeah, I'm sure, to be frank, I mean knowing Ms. Anday, she's new with FCS. And knowing FCS, I'm sure they're both competent to

---

[176] Cir. Ct. R. 405 at 8-10. Sept. 10, 2019 Transcript, Jan. 06, 2020.
[177] Cir. Ct. R. 405 at 11. Sept. 10, 2019 Transcript, Jan. 06, 2020.

1983 Complaint. Prepared by Plaintiff.

do the study. It's probably a question more of timing and availability is what she said but also some plus, some plus."[178]

The Wis. Stat. §767.405(14), to which the judge referred, actually says, "A county or 2 or more contiguous counties shall provide legal custody and physical placement study services. The county or counties may elect to provide these services by any of the means set forth in the sub. (3) with respect to mediation."[179]

219. Menting, Gurman, Friedrich, and Falk failed to intervene when Judge Anderson refused to hear motions for a denovo on temporary removal at the September 10, 2019 hearing.[180] Denial of hearing on the removal of the child is repugnant.[181] Refusal to hear an injunction results in

---

[178] Cir. Ct. R. 405 at 20. Sept. 10, 2019 Transcript, Jan. 06, 2020.

[179] Wis. Stat. § 767.405 (14) Legal custody and physical placement study. (a) A county or 2 or more contiguous counties shall provide legal custody and physical placement study services. The county or counties may elect to provide these services by any of the means set forth in sub. (3) with respect to mediation. Regardless of whether a county so elects, whenever legal custody or physical placement of a minor child is contested and mediation under this section is not used or does not result in agreement between the parties, or at any other time the court considers it appropriate, the court may order a person or entity designated by the county to investigate the following matters relating to the parties: 1. The conditions of the child's home. 2. Each party's performance of parental duties and responsibilities relating to the child. 2m. Whether either party has engaged in interspousal battery, as described in s. 940.19 or 940.20 (1m), or domestic abuse, as defined in s. 813.12 (1) (am). 3. Any other matter relevant to the best interest of the child. (b) 1. The person or entity investigating the parties under par. (a) shall complete the investigation, prepare a report of the results, and, at least 10 days before the report·is introduced into evidence under subd. 2., submit the report to the court and to both parties. The court may review the report, but may not rely upon it as evidence before it is properly introduced under subd. 2.
2. The report under subd. 1. shall be offered in accordance with the rules of evidence and shall be a part of the record in the action if it is so offered and admitted into evidence. (c) No person who provided mediation to the parties under this section may investigate the parties under this subsection unless each party personally so consents by written stipulation after mediation has ended and after receiving notice from the person who provided mediation that consent waives the inadmissibility of communications in mediation under s. 904.085.

[180] Cir. Ct. R. 315. Req. for the Court to Set a De Novo Hearing On The Temp. Order for Dimissal filed Aug. 30. Sept. 4, 2019.

[181] *Stanley v. Illinois*, 405 U.S. 645, 652-53 (1972).

"What is the state interest in separating children from fathers without a hearing designed to determine whether the father is unfit in a particular disputed case? We observe that the State registers no gain towards its declared goals when it separates children from the custody of fit parents. Indeed, if Stanley is a fit father, the State spites its own articulated goals when it needlessly separates him from his family.
    In *Bell v. Burson*, 402 U.S. 535 (1971), we found a scheme repugnant to the Due Process Clause because it deprived a driver of his license without reference to the very factor (there fault in driving, here fitness as a parent) that the State itself deemed fundamental to its statutory scheme. Illinois would avoid

liabilities under Wis. Stat. § 757.24. In family court temporary orders and emergency removals are used as a substitute for a restraining order, so they are functionally equivalent

220. Menting and/or Menting through his assistant Shari Blanke hand delivered circuit court documents in violation of mandatory eFile rules, which have required attorneys to submit family court (FA) documents via electronic filing since March of 2017.[182] The hand-delivered filings were opportunity for delivery of cash payment or other influence, and indicate an in-person conspiratorial meeting of the minds occurred between the delivery person and Dane County Circuit Court staff.

    a. Cir. Ct. R. 267. Jt. Pet. Husb.'s Br. July 25, 2019. was hand delivered, this is evident from the court's stamp, and it is not notarized. Other documents on that day do have electronic file stamps, but indicative of there being no technological failure at the large firm of Stafford and Rosenbaum. Further, the document is not notarized. This indicates the Cir. Ct. R. 267 was not turned into the circuit court clerks window as it ought to have been. The court staff at the window stamp and notarize the documents they receive, which necessitates notarization as this brief does. After documents are stamped and notarized, traditional filers make copies in the law library, and then the copies are turned-in back at the window. On occasion, the circuit court staff at the window have directed filers to bring their documents to the branch window on the upper floors after they have been notarized and/or stamped. Menting's filing has a stamp and is not notarized. The lack of a notarization indicates that this document

---

the self-contradiction that rendered the Georgia license suspension system invalid by arguing that Stanley and all other unmarried fathers can reasonably be presumed to be unqualified to raise their children."

[182] Wis. Ct. Sys. Wisconsin Court System eFile website, *Circuit Court Electronic Filing Implementation Timeline*, updated as of February 13, 2022, https://www.wicourts.gov/ecourts/efilecircuit/timeline.htm, (last visited 07-30-2022).

was filed by someone other than the clerk's window because the Dane Cty. Cir. Ct. clerks public window is personally known to be thorough.

b.  Corr. from Menting Re Ex. Placement Child Support was also hand-delivered. Cir. Ct. R. 339. This is evident from the document's hand delivery stamp. This letter requested termination of child support request as an issue not assigned to the arbitrator. This motion contained a new issue filed in the form of a letter. It was served to Schiller via U.S. Mail. If three days are permitted for delivery, then Schiller would have received it around October 25, 2019, and it was to be heard on November 5, 2019. That's only 9 days to prepare for a new issue on top of the existing issues of the request for relief from the orders resulting from the April 18, 2018 hearing. This should be contrasted with the 121 days provided to the respondent when Schiller filed her request for relief from judgment on March 29, 2019. This was another child-related filing tactically used by the respondent's attorney, which was abusive litigation.

c.  Summary of Pending Matters was also hand delivered as shown by its hand stamp. Cir. Ct. R. 347., Nov. 5, 2019.

221. During the April 18, 2018 hearing a variety of false claims were made. Here the court asks of Gurman's loan documents, "What explains their saying that it's free and clear of all adverse claims and encumbrances other than a restriction upon the transfer that may appear on the certificates." Menting makes the excuse, "They just grabbed the wrong form." Menting further claims, "But again it comes back to, in the letter from the person at BlueTree, they acknowledged it was an error. Ms. Schiller had that letter. All of this happened before they were divorced" April 18, 2018 Transcript Cir. Ct. R. 218 at 40. Truth of the matter is that Gurman

disclosed the loan after the financial agreement was full and final, and the security rights letter

written by Kent Schlienger, Neider and Boucher S.C., is dated November 21, 2017.  This letter

was sent 18 days AFTER Schiller had filed the motion for a finding of contempt. The letter

states:

> "You have pointed out that in Ted's pledge of his stock to the company, there is an incorrect representation that the shares are "free and clear of all adverse claims or encumbrances..."
> The shares were, in fact, subject to the pledge to you in your settlement agreement, and therefor were not "free and clear." This was simply an oversite error in drafting the document.... It was BlueTree's decision to take the financial risk that another pledge against the same shares already existed."
> April 18, 2018 Transcript Cir. Ct. R. 218 at 53.

This letter was part of Schiller's 2018 filings, but was removed by the Dane County Clerks of

Branch 17.  Menting read the letter at the hearing which is proof it was part of Victoria's

filings.

222. In ex parte portions of the July 31, 2019 hearing, now since retired Judge Anderson,

threatened to damage the property of Schiller if Schiller were to bring up the matter of securities

frauds. Then on July 31, 2019, Judge Anderson asked Menting if there was interest accruing in

the ITOLA account holding $2,293,199.30. Menting claimed there was NO interest accruing in

the trust account holding the funds owed to Schiller.

223. Menting, Falk,  Friedrich used court filings tactically and without regard to their own

standards of practice, outside the proper standards of legal process, without adherence the

Wisconsin Statutes for to method, form, or content of their filing.  The intention of their filings

was to inflict emotional distress and cause suffering, while affecting the care and custody of the

child and the property of the Schiller.   It was harassment, by the standards of Wis. Stat. §

947.013(1m)(b).  Though not permitted pending appeal in Wis. Stat. § 808.075, Gurman and

Menting submitted for binding an arbitration award on custody and placement.

224. In the 2019/2020 modification of custody and placement process, the opposition and the guardian ad litem would denied the bugs and poison were real and allege Schiller was suffering from some type of delusion. Schiller had proved that her story was real with her doctor's note, photographic evidence, and exhibit of the a few of the bugs. The illnesses remain to this day and the infestations are not entirely irradicated. Reality didn't matter because the defendants wanted to take the money and reach a certain outcome. The attacks were arranged for the purpose they served, which was to protect the corruptly procured orders to conceal the financial misdeeds of the corporate entities and to conceal the evidence of Gurman's sexual abuse of the child.

225. Menting, through legal assistant Blanke, submitted as the documents motioning for binding: Cir. Ct. R. 474.,[183] Cir. Ct. R. 475.,[184] Cir. Ct. R. 476.,[185] and Cir. Ct. R. 477.,[186]without proper service and without meeting Wis. Stat. § 788.14 requirements as to content, for contract/agreement to arbitrate or complete transcript. The documents were not served to the mother, until April 1, 2020, hearing held on April 7, 2020. This fact is sworn to by [legal assistant]'s, Certificate of Service:

> "1. I am employed by Stafford Rosenbaum LLP as a legal assistant, and make this statement on personal knowledge.
> 2. On March 20, 2020, I emailed a copy of correspondence addressed to Hon. Peter C. Anderson to [the mother]. This correspondence provided dial-in information for the parties who plan to participate in the telephonic motion hearing in the above matter scheduled to occur on April 7, 2020.
> 3. On March 27, 2020, I emailed a copy of correspondence addressed to Hon. Peter C. Anderson to [the mother]. This correspondence indicated that [the father] was in agreement with GAL [S.F.]'s request to proceed with the April 7, 2020 hearing over [the mother]'s request to adjourn.

---

[183] Cir. Ct. R. 474. Jt. Pet. Husband's Brief In Supp. of Req. to Confirm Arb. Decision. April 1, 2020.
[184] Cir. Ct. R. 475. Filing Letter. April 1, 2020.
[185] Cir. Ct. R. 476. Certificate of Service. April 1, 2020.
[186] Cir. Ct. R. 477. Jt. Pet. Husband's Amended Brief in Supp. of Req. to Confirm Arb. Decision. April 1, 2020.

1983 Complaint. Prepared by Plaintiff.

4. On April 1, 2020, I emailed a copy of the Joint Petitioner Husband's Brief in Support of Request to Confirm Arbitration Decision that was filed with the court on that date.
5. On April 1, 2020, I emailed a copy of the Joint Petitioner Husband's Amended Brief in Support of Request to Confirm Arbitration Decision and the coinciding correspondence to the court that were filed with the court on that date.
6. The documents were also emailed to [the mother] at the following email address: '[mother's]@gmail.com'.
7. Hard copies of each document referenced above, along with this Certificate of Service, have been mailed in a first-class, postage-paid envelope to [the mother] on April 1, 2020 at her mailing address of [address omitted], Madison, WI 53705. Dated this 1st day of April, 2020."[187]

TELEPHONE HEARING FOR THE BINDING WAS HELD ON APRIL 7, 2020.   [the mother] was required to be served 8 days prior to hearing, 5 days pursuant to Wis. Stat. § 788.09 plus 3 days for service by mail pursuant to Wis. Stat. § 801.145(5), for a sum of 8 days. At the hearing [the mother] expressed to all parties that she did not have a copy the arbitrator's award and transcript of the arbitration proceedings. Then Judge Anderson bound the corruptly procured arbitration award, in violation of Wis. Stat. § 808.075.  Wis. Stat. § 808.075 does not specifically allow proceedings under Wis. Stat. § 802.12 or Wis. Stat. §§ 788.10 or 788.11, those actions which Wis. Stat. § 808.075 is silent on are prohibited according to *Hengel v. Hengle* 120 Wis.2d 522 (1984), therefore the binding of an arbitrator's award pending appeal in a ch. 767 family court matter is prohibited by law.

226. Menting's filling Joint Petitioner Husband's Motion to Supplement the Appellate Record. Cir. Ct. R. 445. Feb. 28, 2020.,[188] was a conspiratorial communication, and that this motion was used to communicate with the Supreme Appeals Ct. Clerk's office, the strategic use of denying additional time as in the "the affidavit of Shari L. Blanke filed simultaneously with this Motion"

---

[187] Cir. Ct. R. 476. Certificate of Service. April 1, 2020.
[188] Cir. Ct. R. 445. Joint Petitioner Husband's Motion to Supplement the Appellate Record, Feb. 28, 2020.

1983 Complaint. Prepared by Plaintiff.

Cir. Ct. R. 445 at 2. as well as drawing the conspirators attention to the timing of the concurrent child related issues.

227. Menting is liable and responsible for the harm caused by his intentional and negligent acts as occurred herein.

228. Menting was party to a conspiracy to violate civil rights.

229. That as a result of the Menting's intentional and/or negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Count Three – Defendant Lisa Friedrich**

Plaintiff realleges paragraphs 1 through 229 as though set forth at length and in detail herein.

230. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Friedrich in her personal and official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

231. In conspiracy and scheme Friedrich sought payment of bills and expenses that did not occur as tactic and form of harassment by the standards of Wis. Stat. § 947.013(1m)(b).

232. In conspiracy and scheme Friedrich petitioned for Guardianship of Estate over Schiller as tactic and harassment by the standards of Wis. Stat. § 947.013(1m)(b).

233. Friedrich, Falk, and/or Anday violated the parameters of Wis. Stat. §51.30(4)(10) to gain access to registration and treatment records. Friedrich and/or Anday violated Wis. DHS 92.3(3) informed consent, and Wis. DHS 92.4 disclosure without informed consent, by accessing medical records they were not authorized to access.

234. Friedrich, Falk, and/or Anday caused the distribution of Anday's court ordered study to the child's treatment providers. This circulated invalid claims of their understanding of 'UNSUBSTANTIATED' as well as the misinterpretation and misuse of Schiller's medical records, the invalid Waldron study, all of which adversely affect the child's treatment and care in a therapeutic and medical setting. The study was obtained through the unconstitutional process of ordered binding arbitration and effected by judicial refusals to hear the denovo. The study was based upon invalid and unethical prior studies, and incorrectly meaning of CPS's terminology the defendants damaged the child's medical treatment record, violating the Wis. Stat. § 51.30(4)(dm) destruction, damage, falsification or concealment of treatment records. Circulation of study information by order of the court violates the terms of informed consent.

235. The Friedrich, Falk, and/or Anday used the absurd and inaccurate study to petition for guardianship of estate of Schiller in pursuit of scheme to generate excessive fees and conspiracy.

236. In conspiracy Friedrich's used Ken Waldron to implement deceptive tactics and form a recommendation in favor of Gurman.[189] This deception is clear in the Waldron contract, which

> **AGREEMENT FOR PURCHASE OF:**
>
> ## EVALUATION OR CONSULTATION PSYCHOLOGICAL SERVICES
>
> This agreement is between:
>
> Kenneth H. Waldron, Ph.D. and Victoria L. Gurman and Theodore H. Gurman,
>
> For purchase of the following psychological service(s):
> _____ Psychological evaluation        _____ Parenting assessment
> __X__ Psychological consultation      __X__ Child custody evaluation
> _____ Other _____
>
> In the marriage of:
>
> Victoria L. Gurman and Theodore H. Gurman Dane County Case No. 15 FA 788

---

[189] Cir. Ct. R. 311. Schiller's Objection to the Gal Request for Report, Sept. 4, 2019.

was a contract child custody evaluation and a psychological consultation. Monona Mediation and Counseling LLC., Agreement for Purchase of Evaluation or Consultation Psychological Services.[190] The contract shows a clear distinction between the services offered: Psychological examination, parenting assessment, psychological consultation, child custody evaluation, and other. And those accepted by Schiller and Gurman of psychological consultation and child custody evaluation. This means that Waldron had no authority or right to make any psychological evaluation of either Schiller or Gurman. Waldron's study alleges diagnosis of disorder which he himself determined, but Ken Waldron had no permission to make this determination, and neither Schiller or Gurman participated in psychological evaluation processes. Ken Waldron had not informed Schiller or Gurman of the inclusion of this service, so they could not have expected or participated in processes necessary for Ken Waldron to have properly make any diagnosis. Consultation is very different from evaluation. In 2016, Ken Waldron and Friedrich had not viewed the child's safe harbor interview while forming the custody evaluation and psychological consultation. Ken Waldron's report was issued prior to November 10, 2016, as evident by the email on the readiness of report.[191] The police logs only show the date of Friedrich's request to view the recordings on November 1, 2016. For other requests the dates of the viewing are separately noted. The guardian ad litem billings purport the viewing to have occurred on November 30, 2016. The 2019 expert opinions, their reports, and testimony obtained from sources impacted by and/or all built upon Ken Waldron's unethical and invalid report, and they are therefore also invalid.

---

[190] Ken Waldron, Monona Mediation and Counseling LLC., Agreement for Purchase of Evaluation or Consultation Psychological Services.

[191] Richard Jacobson. <RBJ@rbjassociates.com>. *Waldron Report and Recommendations*. To: <Vlschiller808@gmail.com>, November 10, 2016 at 4:48 pm. (" I have just obtained a copy of Waldron's Report and Recommendations.")

237. In furtherance of conspiracy Friedrich demanded supervision of the child's visits with his

mother to prevent the child from being taken to the doctor.  The supervision a form of stalking.

238. Friedrich negligently and/or intentionally misrepresented the Child Protective Service and the

Police Department's allegations of Gurman's perpetration of a 1st degree child sexual assault

of the child by purporting the word 'UNSUBSTANTIATED' to mean abuse did not occur.

Wisconsin, *Domestic Abuse Guidebook for Guardian Ad Litem*, explains child protective

services use of the term UNSUBSTANTIATED is not indicative of abuse non-occurrence.

*Domestic Abuse Guidebook for Guardian Ad Litem*, says:

> "Child Protective Service (CPS) Records: CPS records may show prior reports of
> abuse, neglect, or violence in the home. Under Wis. Stat. §48.981(7)(b), a guardian
> ad litem may review these child protective services records if one or both parents
> of the child have signed a release authorizing the disclosure of this information.
> Inquire with the county CPS agency as to the required form and procedure to avoid
> an unnecessary delay in obtaining the information. If the parents are unwilling to
> sign such an authorization, a guardian ad litem also has the option of filing a motion
> for an order allowing access to specific information. Many judicial officers, while
> careful to protect confidentiality, will be generous in allowing a guardian ad litem
> access to relevant information upon a careful showing of need and meeting the
> overriding standard of in the best interests of the children. Review CPS records
> carefully and acknowledge their limitations. At times, agencies will "screen out" or
> "unsubstantiate" reports of alleged maltreatment and not take any further action.
> This does not necessarily indicate that the alleged actions did not occur. The
> Wisconsin Access and Initial Assessment Standards requires the agency to
> determine whether there are present or impending threats that place the child at risk
> of harm when determining response times or if a report is to be "screened out.""[192]

---

[192] State of Wisconsin, Governor's Council on Domestic Abuse and End Domestic Abuse Wisconsin, *Domestic Abuse Guidebook for Guardian Ad Litem*, at 50-51, (2017).

"Child Protective Service (CPS) Records: CPS records may show prior reports of abuse, neglect, or violence in the home. Under Wis. Stat. § 48.981(7)(b), a guardian ad litem may review these child protective services records if one or both parents of the child have signed a release authorizing the disclosure of this information. Inquire with the county CPS agency as to the required form and procedure to avoid an unnecessary delay in obtaining the information. If the parents are unwilling to sign such an authorization, a guardian ad litem also has the option of filing a motion for an order allowing access to specific information. Many judicial officers, while careful to protect confidentiality, will be generous in allowing a guardian ad litem access to relevant information upon a careful showing of need and meeting the overriding standard of in the best interests of the children. Review CPS records carefully and acknowledge

1983 Complaint. Prepared by Plaintiff.

Wis. Governor's Council on Domestic Abuse and End Domestic Abuse Wisconsin. *Domestic Abuse Guidebook for Guardian Ad Litem,* at 50-51, (2017).

Dane Cty. Soc. Servs. Report Case 8429681 Master file, explains the case was screened out and provides the reason for the screen out as Schiller, the custodial parent was taking steps to protect the child from further abuse, was keeping the child from seeing the abuser, and was taking out a restraining order. Wis. Ct. of App. R. __ Objection at 35-47.[193] Friedrich purported the child made up the molestation game equivocating phrasing of "made up" to mean a lie instead of how the child used the phrase to mean created. The report states the child said he "made up the game and played it 100s of times" Wis. Ct. of App. R. __ Objection at 35-47.[194]

239. The events which gave rise to a serious a concern about the father's behavior with the child began on August 1, 2016. On that morning, Schiller casually raised the topic of safety and included the precaution, "grown-ups do not touch the private parts of children."

Then the child said to Schiller, "Mom," and paused, "I think you are wrong about that."

"Why do you think I am wrong about this?" Schiller inquired.

"Because dad does that," the child said, and then the child described instances of his father instigating mutual genital touching.

In the portion of the excited utterance, recorded by Schiller's phone, the child explained that how during a game, the child is rewarded for touching the father's privates. The game utilized a system that leads the child to touch and hold the father's penis, testicles, and anus.

---

their limitations. **At times, agencies will "screen out" or "unsubstantiate" reports of alleged maltreatment and not take any further action. This does not necessarily indicate that the alleged actions did not occur.** The Wisconsin Access and Initial Assessment Standards requires the agency to determine whether there are present or impending threats that place the child at risk of harm when determining response times or if a report is to be "screened out.""

[193] Wis. Ct. of App. R. __ Objection at 35-47. Jan. 12, 2023. (Dane Cty. Soc. Servs. Case 8429681 Master file).
[194] Wis. Ct. of App. R. __ Objection at 35-47. Jan. 12, 2023. (Dane Cty. Soc. Servs. Case 8429681 Master file).

The rules of this game incentivize the child to permit the father to molest his private parts in the bathtub. The child was being offered stuffed animals and other toys for his participation in the game.

When Schiller asked, "What is the difference between your body and Dad's body?" In response, the child explained the difference between how Gurman touches the child's private parts and how the child touches his father during this game. The child quickly touches, while the father touches "s-l-o-w-l-y." It was the way the child said "s-l-o-w-l-y" that was most concerning. The child said only his dad plays this game, and although the child said he only played the game once, when the child said, 'ONCE," his tone changed, indicating an untruth was told.

Schiller texted the father to delay the time of the informal parenting switch. The father reacted dramatically and called the police. Schiller explained to the officer that she had acted within her legal rights. In this phone conversation with the officer, Schiller revealed her location. Then the father tracked down the family and tried to abscond with the child. The police responded to the domestic disturbance created when Gurman tried to take the child by force, and Schiller reported the abuse to the responding officers.

240. On August 4, 2016, the child was interviewed by social services. According to the Social Services Report Master File, in the interview, the child stated:

> "[A]ll his mom told him about today is that he had an appointment, but she didn't tell him why. [...] [W]hen he is at his mom's house, no one helps him with his bath, and he plays with his Lego ships and boats. [...] [T]hat at his dad's house, he takes a bath with his dad. [...] [H]e has goggles and swims under the water. [...] [T]here is only one rule, and that is that he can't splash water outside the tub." [195]

> Wis. Ct. of App.__ Objection at 35-47.

---

[195] Wis. Ct. of App. R. __ Objection at 35-47. Jan. 12, 2023. (Dane Cty. Soc. Servs. Case 8429681 Master file.)

The social service report states, when asked about the bath game,

'[The child] said, it was a fun game that he and his dad played and it was whoever touches each other private parts the most, wins. [The child] said he made up the game, and he's played it with his father 100 times. [The child] went on to say there were numbers on the wall, fake ones, and he points to the numbers and whoever gets 10 first wins a prize toy light saber. [The child] was asked if his dad knew about the game, and his response was, "how could he not know it if we play it?" [The child] said that his dad lets him touch his personal are[a], and he thinks it tickles. When [The child] was asked what it felt like, he said, "a big blob of goo" and [The child] said he used his hand to touch it. [The child] said that his dad then touches his private parts, and to him, it feels weird and ticklish. [The child] said that his dad uses his hand to touch him too."[196]

Wis. Ct. of App.___ Objection at 35-47.

The father was prohibited from contact with the child. After the child's interview, the mother was issued a protective order that barred the father from contact with the child. Later the officers brought a VARDA alarm to the mother's home.

241. Social services supervised an interaction between the father and child in August 23, 2016. In the following days, the social services worker, Telfer, explained to the mother that the social worker's supervisor had told the social worker to end the case, though the social worker told Schiller that Schiller still needed to be very concerned. The social services report stated:

"[The child] was very consistent in his reporting of the "bath game" that he and [the father] played numerous times. [The child] participated in a forensic interview at Safe Harbor and disclosed that he would touch [the father's] penis and that [the father] would touch [the child's] penis and but[t] during the game when they bathed together. [The child] did not show any signs of being traumatized in any way by this game, and [the child] did not report anything that would suggest that [the father] was sexually gratified in any way by the game. [The father] denied the allegations and stated that [the child] did poke him in the "balls" twice in the bathtub, but [the father] clearly told [the child] that it's not okay to touch each other private parts. [The father] stated many times that [the child] makes up stories all the time and that [the child] is lying about the game. A protective plan was initially put into place,

---

[196] Wis. Ct. of App. R. ___ Objection at 35-47. Jan. 12, 2023. (Dane Cty. Soc. Servs. Case 8429681 Master file.)

and when this ended, [The mother] did not allow contact between [the father]and [the child], and [the mother] filed a restraining order. There is family court action still occurring to determine custody and placement. [The child] is involved in individual counseling at this time. This worker spoke to [the mother] about requesting services from the Department, and when this was discussed further with [the mother], [the mother] did not like the idea of the county taking custody of [the child]. The family refused an offer of additional services, and [the mother] is being protective, and therefore this case is closed.

Wis. Ct. of App. R. __ Objection at 35-47. [197]

Telfer, explained to Schiller that her supervisor told her to end the case. Social services told the mother to handle this herself, but the social worker told the mother to be very concerned. Dane Cty. Soc. Servs. Case 8429681 Master File, rationalizes the closing of the case because the mother was taking out a restraining order and was keeping the child from seeing his father. Dane Cty. Soc. Servs. Case 8429681 Master File, does not overtly recognize signs of trauma and anger, but describes them. Wis. Ct. of App. R. __ Objection at 35-47. The report may not overtly recognize sexual gratification, but relays the possibility in the child's description of touching "goo."[198] Wis. Ct. of App. R. __ Objection at 35-47.

242. The day the protective order ended the father came to the mother's house around 10 PM. Schiller called the police as the father approached the home from the driveway, and the police confirmed the father had been there. Schiller called Domestic Abuse Intervention Services (DAIS). DAIS suggested Schiller file a restraining order. The DAIS legal advocate met with Schiller at the courthouse and guided and instructed Schiller on filling out the form. The DAIS legal advocate told Schiller to write down every fear Schiller could imagine might have occurred, or Schiller wouldn't get the injunction. The DAIS representative had given the mother poor direction. The known aspects of the child's abuse disclosure and facts of the events

---

[197] Wis. Ct. of App. R. __ Objection at 35-47. Jan. 12, 2023. (Dane Cty. Soc. Servs. Case 8429681 Master file).
[198] Wis. Ct. of App. R. __ Objection at 35-47. Jan. 12, 2023. (Dane Cty. Soc. Servs. Case 8429681 Master file).

1983 Complaint. Prepared by Plaintiff.

on Aug. 1, 2016 and what had transpired the evening the protective order ended could have

sufficed. Schiller apologized and withdrew the restraining order request.

243. At this point in the divorce process, Sept. 21, 2016, the guardian ad litem began deviating

from legal standards on costs and payments by assigning payment of fees generated by the

father's abuse of the child as cost assessed to the mother.

> "Addendum to Stipulation and Amended Temporary Order Regarding Placement. The
> Guardian ad Litem shall use paid, professionals for supervision for up to 14 hours per week
> upon the following conditions: Victoria shall pay for the paid professionals; Victoria shall
> be responsible for scheduling paid professionals (previously approved by the GAL) one
> week prior to the time they will provide supervision; Victoria shall provide the GAL with
> the schedule referenced in paragraph 2 above one week prior to the scheduled placement
> times; The GAL shall fill all placement periods not scheduled by Victoria by lay
> supervisors." Cir. Ct. R. 048.[199]

244. The guardian ad litem also allowed the father to use lay supervisors who were strangers and

appeared to be employed through Breathe for Change Inc. a corporation funded by Gurman and

BlueTree Network Inc. The guardian ad litem allowed one of Gurman's business attorney's

Adam J. Woodford to be the initial supervisor. Adam J. Woodford had handled the proceeds

from the prior stock sale, which is an additional instance of the court and court appointed

guardian ad litem working to conceal the prior stock sale or protect Gurman from the

implications of having revealed the truth of the prior stock sale, Gurman had designated Adam

J. Woodford and spouse Erica Woodford as his initial lay supervisors, and having been asked

to select an individual for the task Schiller suggested Georgia Curry an acquaintance of both

Schiller and Gurman with a college education in social work. Cir. Ct. R. 47.[200]

245. In 2015 that the mother first became aware of the father's odd deviation from well-established

child care routines in his household. Schiller had expressed concern over the behavior as

---

[199] Cir. Ct. R. 048. Stipulation and Amended Order, Sept. 21, 2016.
[200] Cir. Ct. R. 047. Correspondence from Lisa Friedrich re Supervisors. Sept. 21. 2016.

1983 Complaint. Prepared by Plaintiff.

unhygienic.   The child had never had issues taking a bath independently and the mother could
see no logical reason for the father to change this child care practice.   The collaborative divorce
therapists both agreed with the mother, and they instructed the father not to continue bathing
with the child.   This fact was contained in emails exchanged between Gurman, Schiller, and the
therapist Chase-Geer.

246. In a therapy session with D. Hustad, the father admitted to an occasion in which private parts
were touched.   The father irrationally explained to D. Hustad the child dove under the water,
and the father had accidentally let him touch his balls and penis.   The father's explanation was
illogical because children do not "dive" in three inches of bath water.

247. The guardian ad litem reasoned "nobody" believed it, but nobody else other than the mother
truly knew anything about it.   Disbelief, as an initial reaction to a guardian ad litem's
presentation of abuse allegations is not evidence which should disprove what the child claimed.

248. The guardian ad litem negligently and/or intentionally used the child abuse allegations to
impugn the mother, as if the abuse was a delusion manifested by the mother though, in fact was
social services had formed the allegation, and the Madison Police Department had referred the
case to the district attorney as a first-degree sexual assault of a child.   Although the District
Attorney had declined to prosecute, they stated their decision was not a refection as to the nature
of the act itself, but a factor of their likelihood of succeeding at trial in front of a jury.   The DOJ
still considered the child to be a victim of a crime as was shown by grant of the award from the
Victim's Compensation Unit the email exchanges with the Victim's Compensation Unit which
was offered in Affidavit of Schiller Cir. Ct. R. 260 at 8-9.[201]

---

[201] Cir. Ct. R. 260 at 8-9. Aff. of Schiller. July 03, 2019.

§ 1983 Complaint. Prepared by Plaintiff.

249. Friedrich ignored the immediate retention of a criminal attorney as concerning. Gurman retained criminal defense Atty Hurley as early as August 5, 2016 as proven by letters sent from Hurley to the child's occupational therapist. In the letter from Atty Hurly it is revealed that Gurman had elected to use private investigator Drager, to prepare a defense to "948.02(1)(E) 1st DEGREE SEXUAL ASSULT -- CONTACT WITH PERSON UNDER 13."[202] [203]

250. When Gurman and Schiller were eventually divorced on July 12, 2017, the divorce included a stipulated joint custody agreement because of the insistence of the child's guardian ad litem. In the custody agreement, the parties agreed to remove Friedrich as the guardian ad litem. The joint custody agreement was inappropriate for the family, and the inappropriateness of the agreement resulted in extended post-divorce litigation.

251. That Friedrich was aware of the evidence and had notified the circuit court of use of the social services interview without further testimony from the child.[204] Hearing Request, Cir. Ct. R. 046, Sept. 20, 2016.

252. The guardian ad litem intentionally omitted the actual evidence of abuse.

253. That Friedrich is liable and responsible for the intentional and negligent acts that occurred herein.

254. That Friedrich was party to a conspiracy to violate civil rights.

255. That as a result of the Friedrich's intentional and/or negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes

---

[202] Madison Police Department case 2016-270509. Case Report Summary.
[203] Cir. Ct. R. 262 at 6. Letter Requesting the Ct. Review of; The Social Services Report Number 8429681, The Contents Of The Safe Harbor Interview From Aug. 4, 2016, MPD Case 2016-270509, Sun Prairie Incident Report. From Aug. 1, 2016 SP1600014645. July 15, 2019.
[204] Cir. Ct. R. 046. Hearing Request. Sept. 20, 2016.

1983 Complaint. Prepared by Plaintiff.

expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered

loss of her enjoyment of life; and has suffered actual monetary losses.

## Count Four – Defendant Shane Falk

Plaintiff realleges paragraphs 1 through 255 as though set forth at length and in detail herein.

256. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the

intentional and/or negligence of Falk in his personal and/or official capacity in violation of U.S.

Const. 14th amendment in one or more of the particulars alleged herein:

257. On July 31, 2019, Judge Anderson, appointed Falk as guardian ad litem for the pro se, family

court litigant, Schiller. Upon appointment, ordered the avenue for inquest by the GAL into

Schiller's medical record. Malicious use of medical records with intent thereby to extort money,

or any pecuniary advantage is actionable under Wis. Stat. § 943.30(5)(b).

258. Falk threatened, - if Schiller did not drop the financial dispute on contract interpretation, then

she would lose custody of her child. Falk repeated this threat on August 26, 2019, shortly before

the hearing on the emergency removal of the child from Schiller's home, where upon Falk

pulled Schiller aside and offered her a check for the settlement offer made by Menting,

indicating she should accept the settlement or loose the child.

259. As a stranger to Schiller in any circumstances other than is appointment, on July 31, 2019,

Falk petitioned for guardianship of estate. The petition was tactic and it was harassment by the

standards of Wis. Stat. § 947.013(1m)(b).

260. In violation of the Due Process Clause during forced binding arbitration in a hearing in which

the Judge had no subject matter jurisdiction, Falk participated as a guardian ad litem, as if

Schiller were a child. It was in the best interest of schiller to have the domestic abuse incident

in Sun Prairie Police Incident report from Aug. 1, 2016  SP1600014645, presented in which Gurman was the perpetrator, as well Madison Police Dep't case 2016-270509, the child was victim and Gurman was perpetrator.  The Madison Police Dep't case 2016-270509. Case Report Summary. states as "Incident Type: Sexual Assault of a Child" and under "Offenses" lists, "1, state, 11d, 948.02(1)(E) 1st DEGREE SEXUAL ASSULT – CONTACT WITH PERSON UNDER 13."[205]  Reporting child abuse is a non-discretionary ministrative task.[206] *Baumgardt v. Wausau School District Board of Education*, 475 F. Supp. 2d 800 (2007).   Plaintiff alleges that Falk knew of the abuse by failed to report it.  Although the determination that a child is being abused involves discretionary acts, once that determination is made, a duty bound individual such as a guardian ad litem must act. *Cf. Chart v. Divorak*, 57 Wis. 2d 92, 102, 203 N.W. 2d 673 (1973) (decision to post road sign was discretionary, but once this decision was made, defendant had ministerial duty to pose sign in manner that complied with the law).

261. Friedrich, Falk, and Anday negligently and/or intentionally purported the meaning of UNSUBSTANTIATED in a child protective services report to be the departments determination that there was no abuse. The task of guardian ad litem requires understanding of the terms and standards used by the department of social services.  Understanding of child protective services reports is constructive knowledge of a guardian ad litem and a social worker.

262. Falk negligently and intentionally overspent and overcharged in pursuit of conspiracy and scheme. Falk submitted a ledger of checks out of these accounts which held Schiller's property only after the hearings on his billings. The log shows Falk expended $189,999.02, but the accounting of expenses according to the orders, were $172,357.78, while the ordered payments

---

[205] Madison Police Department case 2016-270509. Case Report Summary.
[206] *Baumgardt v. Wausau School District Board of Education*, 475 F. Supp. 2d 800 (2007). "The duty to report abuse of children to authorities under s.48.981 is ministerial and not discretionary."

totaling $181,350.94. The orders for mandatory payments contain excessive costs and expenses that were not even incurred such as costs for supervision with Beth Lewis. Schiller has never even met Beth Lewis. [207]

263. The money spent by Falk was for mandatory court costs generated by constitutionally violative orders to binding arbitration on the modification on custody and placement, and on ordered private processes. Additional mandatory expenses were generated by the court's Dec. 19, 2019, order in which it invoked of its inherent power to create separate legal actions. The Dec. 19, 2019 order, was written by the judge, and entered as the results of the results of the Dec. 5, 2019 hearing.[208] The order was a retaliation for the Notice of Appeal Cir. Ct. R. 382. filed on Dec. 18, 2019.[209] Dec. 19, 2019, Confidential Order Concerning the Release of Funds Cir. Ct. R. 384 was starkly different from December 13, 2019, PROPOSED - Order on Motions and Releasing Funds Cir. Ct. R. 377.[210] The primary difference was that the judge ordered Falk to withhold Schiller's funds and instructed Falk to petition for guardianship of estate.[211]

---

[207] Cir. Ct. R. 586. Letter Correspondence. July 21, 2020.

[208] Cir. Ct. R. 384. Confidential Order Concerning Release of Funds from Guardian ad Litems Trust. Dec. 19, 2019.

[209] Cir. Ct. R. 382. Notice of Appeal. Dec. 18, 2019.

[210] Cir. Ct. R. 377. Proposed - Order on Motions and Releasing Funds from Atty Trust Account. Dec. 13, 2019.

[211] Cir. Ct. R. 384 at 2-3. Confidential Order Concerning Release of Funds from Guardian ad Litems Trust. Dec. 19, 2019.

> "The Court finds that it has the authority to raise the issue of whether Ms. Schiller would find it in her own best interests either to have a conservator appointed or to have a trust created to safeguard these funds; as well as the issue of whether Mr. Falk might petition for the appointment of a guardian of the estate for Ms. Schiller; as well as the issue of whether a different guardian ad litem can and should be appointed for the purpose of petitioning for appointment of a guardian of the estate. The Court finds that it has the inherent authority to continue its order directing Mr. Falk to hold the remaining funds ($678,897.17) in trust until it has had an opportunity to speak further with Ms. Schiller and Mr. Falk on these subjects in order to prevent the possible loss or dissipation of a significant portion of the funds prior to such discussion taking place. Accordingly, IT IS ORDERED that pending further order of the Court Mr. Falk continue to hold the remainder of the cash settlement balance in trust after first paying the $40,000.00 to Ms. Schiller from that balance. The remainder of the cash settlement balance to be held in trust at this time will be $678,897.17. The Court will schedule a confidential hearing in the near future with Mr. Falk and Ms. Schiller to discuss the matters outlined above."

264. Falk distributed medical information to Friedrich and Anday, with malicious use with intent thereby to extort money or any pecuniary advantage, actionable under Wis. Stat. §943.30(5)(b).

265. In hearing of issues on May 27, 2019, Menting, Gurman, and Falk conspired with Judge Anderson in furtherance of the conspiracy. Menting, Gurman, and Falk discussed ways to prevent Schiller from filing and discussed ways to control information entered onto the record including the excessive imposition of fees. The guardian ad litem had paid Dr. Black to find Schiller incompetent temporarily which he did without having met her during stay at home orders of the Covid Pandemic. After Dr. Blacks finding had been used to terrorize, control, and impede the appeal of the contract and child's custody. Schiller met with Dr. Black and was found to be fully competent and of above average intelligence. In response to that fact Falk says, "I will tell you that it was shocking when we received the report because not only did he issue a written report for the temporary guardianship, which again was just based on the records, he hadn't examined Ms. Schiller because she refused to show up for that examination, he found her incompetent, and it was more specific to the estate, but even there he did include the guardianship of the person items as well." May 27, 2019 Transcript Cir. Ct. R.__. Judge Anderson and Falk persisted in trying to cause distress and find support for what they had done. In so far as ising the proper submission of a specimen as reason to attack Schiller. The court searched and reached for renewed support for their sale of a child to his abusive parent in arbitration proceedings. This effort continued outside of court.

266. The individualized procedures crafted at that hearing were imposed on June 2, 2019, and were abridgments of Schiller's due process rights. This hearing resulting in Order from May 27,

2020 Hearing Cir. Ct. R. 549. June 11, 2020[212] and CCAP Case Summary 2019AP2419,

description:

> "Court orders that all filings must be received by the court at least 5 days prior to the
> hearing. If it is an emergency filing, it needs to be only 1 page filing. Parties each state
> what matters they would like to address today during the hearing. Court takes up Atty
> Menting's motion to limit Ms. Schiller's ability to directly file pleadings or other
> documents with the court. Atty Menting gives argument, Atty Falk gives argument, Ms.
> Schiller gives argument, Any filing by Ms. Schiller must only file a 1 page double spaced
> request with the 1st paragraph being the requires and the rest summarizing the request with
> law."[213]

267. Falk's arguments were not in Schiller's best legal interest on appeal or in any other

proceeding. At the Sept. 10, 2019 hearing, Falk stated, "The -- the problem I see with -- with

this situation is is that there were serious allegations of sexual abuse that ultimately, I believe,

based on my review of the record, ended up being unfounded. And I strongly…,"[214] Cir. Ct. R.

405 at 36. This is a conspiratorial statement that was formed with Friedrich. Falk had not

requested the police reports. Falk simply reiterates his co-conspirator's claims that there was

no evidence of abuse, and negligently does not define what record Falk purported to have

reviewed to reach this conclusion.

268. Falk is liable and responsible for the intentional and/or negligent acts that occurred here in

269. Falk was party to a conspiracy to violate civil rights.

270. That as a result of the intentional and/or negligence of Falk Schiller has incurred legal

expenses, was injured, has incurred expenses for medical treatment, and will incur further likes

---

[212] Cir. Ct. R. 549. Order from May 27, 2020 Hearing, June 11, 2020.
[213] Wis. Ct. Sys. *CCAP Case Summary 2019AP2419*, at 18 of 78.,
https://wcca.wicourts.gov/caseDetail.html?caseNo=2015FA00788&countNo=13&index=)#records (Last visited 05-27-2022).
[214] Cir. Ct. R. 405 at 36, Sept. 10, 2019 Transcript, Jan. 06, 2020.

expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered

loss of her enjoyment of life; and has suffered actual monetary losses.

### Count Five – Defendant Shelly Anday

Plaintiff realleges paragraphs 1 through 270 as though set forth at length and in detail herein.

271. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Anday in her personal and/or official capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

272. Anday's report occurred under Wis. Stat. § 767.405 (14). This report requires investigation and report as to abuse of the child or in the home. Anday had no discretion as to whether or not there was abuse because the designation had been made by the Madison Police Department. The abuse was existing. Reporting child abuse is a non-discretionary ministrative task.[215] *Baumgardt v. Wausau School District Board of Education*, 475 F. Supp. 2d 800 (2007). Plaintiff alleges that the defendant Anday knew of the abuse by failed to report it. Although the determination that a child is being abused involves discretionary acts, once that determination is made, a duty bound individual such as a guardian ad litem must act. *Cf. Chart v. Divorak*, 57 Wis. 2d 92, 102, 203 N.W. 2d 673 (1973) (decision to post road sign was discretionary, but once this decision was made, defendant had ministerial duty to pose sign in manner that complied with the law). Instances of domestic disturbance occurred in Sun Prairie Police Incident report from Aug. 1, 2016 SP1600014645, in which Gurman was the perpetrator, as well Madison Police Dep't case 2016-270509, the child was victim and Gurman was perpetrator. The Madison Police Dep't case 2016-270509. Case Report Summary. states as

---

[215] *Baumgardt v. Wausau School District Board of Education*, 475 F. Supp. 2d 800 (2007). "The duty to report abuse of children to authorities under s.48.981 is ministerial and not discretionary."

"Incident Type: Sexual Assault of a Child" and under "Offenses" lists, "1, state, 11d, 948.02(1)(E) 1st DEGREE SEXUAL ASSULT – CONTACT WITH PERSON UNDER 13."[216] Reporting child abuse is a non-discretionary ministrative task.[217] *Baumgardt v. Wausau School District Board of Education,* 475 F. Supp. 2d 800 (2007).

273. Anday didn't have many objective facts to support her subjective claims so Anday used far reaching details and items from the records that seemed to support the subjective claim regardless of actual relevance.  Restating information without context and presenting the information as relevant to the study is malicious misuse prohibited agreement and by law, Wis. Stat. § 943.30(5)(b).

274. Anday was paid to purposely smear Schiller and reach the outcome sought by the appointees and as conveyed to her by the appointees.

275. Anday is liable and responsible for the intentional and negligent acts that occurred herein.

276. Anday was party to the conspiracy to violate civil rights.

277. That as a result of Anday's intentional and negligent acts Schiller has incurred legal expenses, was injured, has incurred expenses for medical treatment, and will incur further likes expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered loss of her enjoyment of life; and has suffered actual monetary losses.

**Count Six – Defendant Theodore Gurman**

Plaintiff realleges paragraphs 1 through 277 as though set forth at length and in detail herein;

---

[216] Madison Police Department case 2016-270509. Case Report Summary.
[217] *Baumgardt v. Wausau School District Board of Education,* 475 F. Supp. 2d 800 (2007). "The duty to report abuse of children to authorities under s.48.981 is ministerial and not discretionary."

278. That the injuries and damages sustained by Schiller were caused, in whole or in part, by the intentional and/or negligence of Gurman in his personal capacity in violation of U.S. Const. 14th amendment in one or more of the particulars alleged herein:

279. Gurman conspired with Menting, Friedrich, Anday, and Falk to take Schiller's funds and disperse them Menting, Friedrich, Anday, and Falk, though disbursement was not necessarily limited to the aforementioned, so as to reach the outcome sought by Gurman.

280. In response to Schiller's November filings, Gurman's attorney filed to litigate motions on child-related issues, such as corrections to the vacation schedule.[218] [219] These were tactics to distract and delay, and the motions violated the stipulated child-related dispute resolution terms.[220]

281. When considering the failure to prosecute or comply with procedure statutes the court has found that, "Counsel's egregious acts may be imputed to the client." *Smith v. Golde*, 224 Wis. 2d 518, 592 N.W.2d 287 (Ct. App. 1998), 97–3404

282. In 2018 the judge then "clarified" the contractual agreement in a manner which violated the unambiguous terms and conditions, of due and payable, that precluded prepayment of the structured monthly payments, which the Judge reasoned based on his **WANT**.[221] The judge's

---

[218] Cir. Ct. R. 155. Theodore's Notice of Motion and Motion for Contempt and Clarification of Judgement, Nov. 22, 2017.

[219] Cir. Ct. R. 154. Aff. of Gurman in Supp. of Mot. for Cont. and Clarification, Nov. 22 2017.

[220] Cir. Ct. R. 134. Partial Marital Settlement Agreement Regarding Custody and Placement, June 12, 2017.
  "H, Dispute Resolution Procedure. In the event any dispute or disagreement arises regarding the terms of legal custody or physical placement as set forth herein, the parents agree to seek the services of a mutually-agreed upon mediator for resolution of the conflict. Absent an emergency related to the child's safety, neither party shall seek or institute proceedings for modification of this custody arrangement by litigation without first having sought and attempted to resolve their conflicts through mandatory mediation. Should mediation fail, the parties agree to both parents agree to submit their dispute to arbitration by a mutually agreeable arbitrator, who shall have the authority to make decisions which are binding unless not confirmed by the Court. (PMSAC)."

[221] Cir. Ct. R. 218 at 20:18 -21:2, April 18, 2018 Transcript, May 18, 2018.

1983 Complaint, Prepared by Plaintiff.

decisions based on what he wanted in the 2018 hearing were bias. April 18, 2018 Transcript, Cir. Ct. R. 218. at 20:18 -21:2, May 18. 2018.

283. At the end of April 18, 2018, hearing, the judge leveraged hefty payments of fees which Schiller would be forced to pay if she filed anything within one year, protecting his 2018 corrupt orders from requests for relief, objection, or appeal. Judge Anderson specifically said he would enter the order drafted by Menting regardless of Schiller's disapproval and warned he did not want to have any disagreement after the fact. This warning was indicative of how he would decide an objection. The court Order Dismissing Joint Petitioner Schiller's Orders to Show Cause and Other Motions and Holding Joint Petitioner Gurman's Fee Request in Abeyance by Menting without mutual agreement as to form and content. [222] Menting misstates the hearing results in his order when he writes: "9. The money [Gurman] borrows is used in some part to pay [Schiller]." Cir. Ct. R. 220. at 2, June 11, 2018. This proposed order was received 43 days after the hearing. [223] The record the process of forming Order Dismissing Joint Petitioner Schiller's Orders to Show Cause and Other Motions and Holding Joint Petitioner Gurman's Fee Request in Abeyance, order took an noticeably long time. The order was submitted on May 30, 2018, was electronically signed by Judge Anderson on June 8, 2018 and subsequently filed on June 11, 2018. [224] Cir. Ct. R. 220.

284. Order Dismissing Joint Petitioner Schiller's Orders to Show Cause and Other Motions and Holding Joint Petitioner Gurman's Fee Request in Abeyance, Cir. Ct. R. 220. was procured with influence. On July 31, 2019 Judge Andersons said, "Here's what I think we wrote. I think Mr.

---

[222] Cir. Ct. R. 220 at 2, Order Dis. Jt. Pet. Schiller's Orders to Show Cause and Other Mot. and Holding Jt. Pet. Gurman's Fee Req. In Abeyance, June 11, 2021.
[223] Cir. Ct. R. 219. Coverletter, May 5, 2019.
[224] Cir. Ct. R. 220. Order Dis. Jt. Pet. Schiller's Orders to Show Cause and Other Mot. and Holding Jt. Pet. Gurman's Fee Req. In Abeyance, June 11, 2021.

Menting probably drafted it for me, but I signed it. I don't sign these things unless I read and approve them."[225] Cir. Ct. R. 423. at 5:21-5:25. There was no proposed order submitted and Schiller had not signed the order.

285. After April 18, 2018, Schiller began to feel certain she was being subjected to a chemical attack. In May of 2018, Schiller had a radon mitigation system installed because many homes in the local area having systems installed upon resale indicating that they had positive radon tests upon resale. The system was installed in an accessible area of the unfinished basement so as to not mar the appearance of the front of the home. The radon removal system is located next to the backdoor and directly adjacent to the crawlspace. Schiller began avoiding the back deck as doing so would cause dizziness, and it was as though a pungent poison could be tasted in the air.

286. Later that month, in May 2018, there was a flood. The neighborhood experienced a sewage backup due to this flood. Materials needed to be removed from the basement. Schiller called the same demolition company, Environmental Construction Services, Inc., that she had hired to install the vapor barrier in the crawlspace in 2016 and had taken down a wall in the bathroom in 2017. They were surprisingly available to remove the flood-destroyed building materials immediately, and did so. Then on Sept. 20, 2018, while using a shop vac to clean up the basement from recent work of plumbers during the bathroom remodel, Schiller discovered a strange object left in the crawl space. The object was covered in a sort of white powdery dust which was disturbed by the shop vac, and Schiller began feeling very sick. Schiller called the police non-emergency number to ask for help, and they dispatched the fire department. The

---

[225] Cir. Ct. R. 423. at 5. July 31, 2019 Transcript, Feb. 14, 2021.

1983 Complaint. Prepared by Plaintiff.

fire department said it was a mop and a bucket and left. It was most definitely not a mop and a bucket or old farm equipment, the insulated wall board from which it was cut is visible.[226]

287. The city suggested the installation of a passive air vent. Schiller had the object better sealed by a construction worker and designed a system to ventilate the area. This Schiller installed this mitigation system herself accessing the area entirely from outside the crawl space. The mitigation system used two small in-line vents and one powerful woodshop vacuum system.

288. In 2018, a variety of tiny bugs invaded Schiller's home all at once, as if insect eggs had been sprayed throughout the home. The Orkin man didn't even know what they were. It became clear to Schiller that it was an attack of biological warfare which included use of a variety of midges or no-see-ums. The bites would get infected. One doctor made a diagnosis of fleas another diagnosed with MRSA. Generally, the doctors were hesitant to treat what they did not

---

[226]Schiller, Victoria. Photos of Crawlspace Object. Taken May 20, 2018.



expect and/or could not explain. Schiller had to dispose of every item in her home that could not be laundered on high heat or thoroughly disinfected.

289. The first unnatural arrival of bugs had occurred in 2017 with an unnatural invasion of what appeared to be brown marmorated stink bugs. Schiller only discovered the name of these foreign creatures through her child's use of the bug's name which he explained was relayed to him through Gurman's girlfriend, Stephanie Taylor. Stephanie Taylor's knowledge of the rare foreign bug indicates her involvement in their arrival. These are an invasives species from China, according to Wikipedia the stink bug was first found in Allentown, Montgomery County, PA in 1998, but it is believed that this pest was accidentally introduced into eastern Pennsylvania several years earlier. Gurman had been negotiating a business deal with a company from Montgomery County, HighPoint Solutions Inc., otherwise referred to as Project Hashtag. One of the bug bit Schiller on the jugular and she has been in a state of poor health since.

290. After months of inflicted illness and plague, Schiller sought relief from the results of the hearing held April 18, 2018, on March 29, 2019. This request for relief was filed in the form of a letter. The court scheduled a hearing scheduled for July 31, 2019, 121 calendar days from the date of the filing.

291. In 2019, Gurman was still in contempt for not paying or disclosing documents of receipt of proceeds redeemed from the stock but still seemed to have an income though he had quit his job at the company formed by the couple during the course of the marriage. Gurman had gone on many extravagant vacations and had bought a new house, and had received a comped $81,000,00 Tesla for his non-work at the company. This appeared on tax exchange documents as 1099 misc. non-employee income, Gurman claimed the misc. non-employee income 1099

was issued in error and thus not claimed on his tax return.  In fact, most of his 'loan' income

was not claimed.  Gurman later admitted to having borrowed $579,452.88.

292. July 31, 2019, in ex parte communications, Judge Anderson said if Schiller were to bring up

fraud, he would take excessive fees and legal costs.[227]  The judge was preventing Schiller from

raising the fact that as of May 23, 2019, Gurman admitted to misrepresenting the sale and

claimed to have divvied up the stock sale proceeds with Reggie Luedke, and had sent Schiller

an email with this confession.[228]

293. That Gurman is liable and responsible for the intentional and negligent acts that occurred

herein.

294. That Gurman was party to a conspiracy to violate civil rights.

295. That as a result of Gurman's intentional and/or negligent acts Schiller has incurred legal

expenses, was injured, has incurred expenses for medical treatment, and will incur further likes

expenses in the future, has suffered loss of earnings and loss of earnings capacity; has suffered

loss of her enjoyment of life; and has suffered actual monetary loss.


## Rule 11, Representations to the Court

Victoria Schiller, represents and certifies that to the best of her knowledge, information and belief, formed after an inquire reasonable under the circumstances:

(1) the motion is not being presented for any improper purpose, such as to harass, cause delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

---

[227] Cir. Ct. R. 424. at 17, July 31, 2019 Transcript with Ex Parte, Feb. 14, 2021.
[228] Gurman, Theodore. " FWD: Regent Tsunami Practice Thursday 5/23" <TGurms@gmail.com., E-mail to Schiller,< vlschiller808@gmail.com > Date: May 23, 2019.

1983 Complaint, Prepared by Plaintiff.

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.


Signature _____

Victoria Schiller
225 South Segoe Road
Madison, Wisconsin 53705
Email: V.S.palmer18@gmail.com
Ph: 608-692-4396

1983 Complaint. Prepared by Plaintiff.